COPY

1   **THE ROSEN LAW FIRM, P.A.**
2   Laurence M. Rosen, Esq. (CSB# 219683)
    355 South Grand Avenue, Suite 2450
3   Los Angeles, CA 90071
    Telephone: (213) 785-2610
4   Facsimile: (213) 226-4684
5   Email: lrosen@rosenlegal.com

6   Counsel for Plaintiff

7                   UNITED STATES DISTRICT COURT
8                   CENTRAL DISTRICT OF CALIFORNIA

9   PETER CHEUNG, INDIVIDUALLY AND
10  ON BEHALF OF ALL OTHERS
    SIMILARLY SITUATED,
11                                          CASE NO.: CV11-9495-PSG (JCGx)
12              Plaintiff,
                                            COMPLAINT
13              vs.
                                            CLASS ACTION
14
15  KEYUAN PETROCHEMICALS, INC.,
    CHUNFENG TAO, AICHUN LI,                JURY TRIAL DEMANDED
16  WEIFENG XUE, AND DELIGHT
    REWARD LIMITED,
17
18              Defendants.

19

20          Plaintiff Peter Cheung ("Plaintiff"), individually and on behalf of all other
21  persons similarly situated, by his undersigned attorneys, for his complaint against
22  Defendants, alleges the following based upon personal knowledge as to himself and
23  his own acts, and information and belief as to all other matters, based upon, *inter*
24  *alia*, the investigation conducted by and through his attorneys, which included,
25  among other things, a review of the defendants' public documents, conference calls
26  and announcements made by defendants, United States Securities and Exchange
27  Commission ("SEC") filings, wire and press releases published by and regarding
28

1

Keyuan Petrochemicals, Inc. ("Keyuan" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Keyuan between August 16, 2010 and October 7, 2011, inclusive, (the "Class Period") seeking to recover damages caused by Defendants' violations of federal securities laws.

2.     During the Class Period, Defendants issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's related party transactions and internal controls.

## JURISDICTION AND VENUE

3.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R.  §240.10b-5).

4.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

5.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C.  § 1391(b).

6.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

7.     Plaintiff Peter Cheung, as set forth in the accompanying certification, incorporated by reference herein, purchased Keyuan securities at artificially inflated prices during the Class Period and has been damaged thereby.

8.     Defendant Keyuan is a Nevada Corporation, headquartered in China. Keyuan through its subsidiaries engages in the manufacture and sale of petrochemical products in China.  Until October 6, 2011, Keyuan's stock was listed on the NASDAQ exchange under ticker "KEYP."  On October 6, 2011, the NASDAQ de-listed the Company stock, it began to trade on over-the-counter on the "Pink Sheets" under ticker KEYP.PK.

9.     Defendant Chunfeng Tao ("Tao"), was and is, Chairman of the Board and Chief Executive Officer of Keyuan.

10.     Defendant Aichun Li ("Li"), was the Chief Financial Officer of the Keyuan until her resignation from the Company on October 12, 2011.

11.     Defendant Weifang Xue ("Xue") was the Company Vice President of Accounting until August 2011.  In the Company's SEC filings, Xue was noted as a key and essential employee of the Company.

12.     Defendant Delight Reward Limited ("Delight Reward") is a British Virgin Islands Corporation, and at all times during the Class Period, a controlling shareholder of Keyuan.  According to Keyuan's annual report for the fiscal year ended December 31, 2010, Delight Reward beneficially owns more than 80% of Keyuan's common stock.

13.     Tao, Li, Xue, and Delight Reward, are herein referred to collectively, as the "Individual Defendants."

14.     During the Class Period, each of the Individual Defendants, as senior executive officers, agents, controlling shareholders and/or directors of Keyuan and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and

connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

15.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership, controlling ownership of, and/or executive and managerial positions with Keyuan, each of the Individual Defendants had access to the adverse undisclosed information about Keyuan's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Keyuan and its business issued or adopted by the Company materially false and misleading.

## SUBSTANTIVE ALLEGATIONS

16.     Throughout the Class Period, in violation of Generally Accepted Accounting Principles ("GAAP"), SEC rules and the federal securities laws, the Company failed to disclose numerous material related party transactions in the SEC filings and financial statements rendering them false and misleading.

17.     The Class Period begins on August 16, 2010 when the Company filed with the SEC a materially false and misleading Form 10-Q, signed by defendants Tao and Li, and separately certified by Tao and Li pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), attesting to the accuracy of the 10-Q, and stating that "[a]ny fraud, whether or not material" involving management or other employees who have a significant role in Keyuan's internal control over financial reporting has been disclosed. This 10-Q did not disclose any specific related party transactions.

18.    On November 15, 2011, the Company filed with the SEC a materially false and misleading Form 10-Q, signed by defendants Tao, Li and Xue, and separately certified by Tao, Li, and Xue pursuant to SOX, stating that "[a]ny fraud, whether or not material" involving management or other employees who have a significant role in Keyuan's internal control over financial reporting has been disclosed. This 10-Q did not disclose any specific related party transactions.

19.    Prior to market open on April 1, 2011, trading in the Company's stock was inexplicably halted.  The last trade was at $4.88/share.

20.    Later in the morning, the Company filed a Form 12b-25 with the SEC announcing that it would not be able to timely file its annual report for the fiscal year ended December 31, 2010 due to issues raised by Keyuan's auditor, KPMG, LLP, relating "regarding certain cash transactions and recorded sales."   The announcement also revealed that the Audit Committee has also commenced an investigation.  The Form 12b-25 states:

> In connection with the Registrant's financial statements as at December 31, 2010 and for the fiscal year then ended, issues were raised by the Registrant's independent auditor, primarily relating to unexplained issues regarding certain cash transactions and recorded sales. The independent auditor reported these issues to the Registrant's Audit Committee. The Registrant's Audit Committee has engaged independent legal counsel and commenced an investigation of the issues raised by the Registrant's auditors. Inasmuch as completion of Registrant's 2010 financial statements is dependent, following completion of the Audit Committee's investigation, upon a satisfactory resolution of the issues raised and any other matters that may come to light as a result of further audit procedures, the Registrant was not able to complete its Form 10-K Annual Report by March 31, 2011. Although the Registrant believes that the Audit Committee shall undertake to complete its investigation as soon as practicable, and the Registrant shall use its best efforts to file the Annual Report by April 15, 2011, there can be no assurance that it will be able to do so by such date.

21.    During the afternoon on April 1, 2011, the Company filed an 8-K with the SEC reiterating the matters set forth in the SEC filings earlier that day, and

announcing that the Company has been informed by its auditor that the Company's previously issued financial statements cannot be relied upon.   The 8-K states in relevant part:

Item 4.02 Non-Reliance on Previously Issued Financial Statements

We are in the process of preparing our Annual Report on Form 10-K for the year ending December 31, 2010, which is due on March 31, 2011.  In connection with our consolidated financial statements as at December 31, 2010 and for the fiscal year then ended, issues were raised by   our independent auditor, primarily relating to the unexplained issues regarding certain cash transactions and recorded sales. The independent auditor reported these issues to our Audit Committee, and our Audit Committee has commenced an investigation of the issues raised.  Inasmuch as completion of our 2010 consolidated financial statements is dependent, upon a satisfactory resolution, following completion of our Audit Committee's investigation, of the issues raised and any other matters that may come to light as a result of further audit procedures, we were not able to complete our Form 10-K Annual Report by March 31, 2011. Although we believe that the Audit Committee has undertaken to complete its investigation as soon as practicable, and we will use our best efforts to file the Form 10-K Annual Report by April 15, 2011, there can be no assurance that we will be able to do so by such date.

In light of the investigation by our Audit Committee, our auditors have informed us that there is a possibility that we may be required to make certain adjustments to certain of our previously issued financial statements, and that such previously issued financial statements may not be relied upon. Although we are hopeful that the results of our Audit Committee's investigation will not require material adjustments or restatements of our historical financial statements, there can be no assurance that this will be the case.

As set forth above, our Audit Committee is conducting an investigation of the above referenced issues raised by our independent auditors during their audit of the financial statements that are to be included in the subject Annual Report.  The investigation has just commenced and no conclusions have been reached by the Audit Committee.  As it is possible that the issues raised may either result in material changes or restatements of our financial statements previously filed, or be resolved to the satisfaction of both the Audit

Committee and the auditors, at this time, we cannot estimate the type of or amount of change that may occur in connection with the audit of our 2010 consolidated financial statements or any financial statements previously filed.

22.     On May 31, 2011, the Company filed an 8-K with the SEC announcing that KPMG has resigned as the Company's auditor.

23.     On July 5, 2011, the Company announced the appointment of GHP Horwath, P.C. as the Company's new auditor.

24.     On August 25, 2011, the Company filed an 8-K with the SEC announcing that defendant Xue had resigned.

25.     On October 6, 2011, the Company filed an 8-K that the Company's stock would be delisted from the NASDAQ.

26.     On October 7, 2011, after having been halted since April 1, 2011, the Company's stock began trading over-the-counter on the "Pink Sheets." The Company's stock opened for trade at $1.05/share (down $3.83/share) and eventually closed at $1.50/share, a decline of $3.38/share or 69%.

27.     On October 20, 2011 the Company filed its annual report for the fiscal year ended December 31, 2010.  The 10-K revealed for the first time numerous previously undisclosed related party transactions.   The 10-K identified the following related parties:

| Name of parties | Relationship |
| --- | --- |
| Mr. Chunfeng Tao | Majority stockholder |
| Mr. Jicun Wang | Principal stockholder |
| Mr. Peijun Chen | Principal stockholder |
| Ms. Sumei Chen | Member of the Company's Board of Supervisors and spouse of Mr. Wang |
| Ms. Yushui Huang | Vice President of Administration, Ningbo Keyuan |
| Mr. Weifeng Xue | Vice President of Accounting, Ningbo Keyuan through August 2011 |
| Mr. Hengfeng Shou | Vice President of Sales, Ningbo Keyuan Petrochemical |
| Ningbo Kewei Investment Co., Ltd. (Ningbo Kewei) | A company controlled by Mr. Tao |
| Ningbo Pacific Ocean Shipping Co., Ltd (Ningbo Pacific) | 100% ownership by Mr. Wang |
| Ningbo Hengfa Metal Product Co., Ltd (Ningbo Hengfa, former name "Ningbo Tenglong") | 100% ownership by Mr. Chen |
| Shandong Tengda Stainless Steel Co., Ltd (Shandong Tengda) | 100% ownership by Mr. Chen |

Class Action Complaint for Violation of the Federal Securities Laws

| | |
|---|---|
| Ningbo Xinhe Logistic Co., Ltd (Ningbo Xinhe) | 10% ownership by Ms. Huang |
| Ningbo Kunde Petrochemical Co, Ltd. (Ningbo Kunde) | Mr. Tao's mother was a 65% nominee shareholder for Mr. Hu, a third party |
| Ningbo Jiangdong Jihe Construction Materials Store (Jiangdong Jihe) | Controlled by Mr. Xue's Brother-in-law |
| Ningbo Wanze Chemical Co., Ltd (Ningbo Wanze) | Mr. Tao's sister-in-law is the legal representative |
| Ningbo Zhenhai Jinchi Petroleum Chemical Co., Ltd (Zhenhai Jinchi) | Controlled by Mr. Shou |

28. The 10-K identified the following amounts involving related parties:

| | Year ended December 31, | |
|---|---|---|
| | 2010 | 2009 |
| Sales of products (a) | $111,860,732 | $21,491,643 |
| Purchase of raw material (b) | $ 25,014,808 | $ 4,730,580 |
| Purchase of transportation services (c) | $  3,659,000 | $ 1,437,411 |
| Credit line of guarantee provision for bank borrowings (d) | $159,775,200 | $79,206,053 |
| Short-term financing from related parties (e) | $ 30,839,377 | $18,550,629 |
| Short-term financing to related parties (e) | $ 30,949,048 | $18,550,629 |
| Amount due from related parties (f) | $  5,332,193 | $  261,493 |
| Amount due to related parties (g) | $   115,535 | $ 4,506,396 |

29. The 10-K also identified the related party nature of certain other transactions as follows:

| Name of parties | Relationship |
|---|---|
| Ningbo Litong Petrochemical Co., Ltd (Ningbo Litong) | Former 12.75% nominee shareholder of Ningbo Keyuan |
| Ningbo Jiangdong Haikai Construction Materials Store (Jiangdong Haikai) | Controlled by cousin of Mr. Weifeng Xue, Vice President of Accounting |
| Ningbo Jiangdong Deze Chemical Co., Ltd (Jiangdong Deze) | Controlled by cousin of Mr. Weifeng Xue, Vice President of Accounting |
| Ningbo Anqi Petrochemical Co., Ltd (Ningbo Anqi) | Controlled by cousin of Mr. Weifeng Xue, Vice President of Accounting |

30. The amounts involving these parties are as follows:

| | Year ended December 31, | |
|---|---|---|
| | 2010 | 2009 |
| Sales of products (h) | $29,625,766 | $17,922,288 |
| Purchase of raw material (i) | $18,994,104 | $ 3,280,566 |
| Credit line of guarantee for bank borrowings (j) | $        - | $62,309,250 |
| Short-term financing from these parties (k) | $74,983,618 | $19,117,579 |
| Short-term financing to these parties (k) | $77,030,336 | $19,232,699 |
| Amounts due from these parties | $ 2,217,854 | $  115,191 |

| Advance from these parties for sales | $ | 110,134 | $ | - |

31.    The 10-K also revealed certain restatement adjustments and potential violations of law.  The 10-K states in relevant part:

> The Investigation identified possible violations of PRC laws and U.S. Securities laws, including the maintenance of an off-balance sheet cash account that was used primarily to pay service providers and other Company related expenses. Total activity in the off-balance sheet cash account amounted to approximately $800,000 through December 31, 2010 with a net income statement effect of approximately $12,000, and $400,000 for the period from January 1, 2011 to March 31, 2011, with a net income statement effect of approximately $192,000, at which time the Company ceased its use. The Investigation identified certain other issues that could result in potential violations of PRC or U.S. laws. The Company is working with its legal counsel to evaluate the matters identified in the Investigation and to determine the extent to which the Company may be exposed to fines and penalties.  In addition, the Company has retained a Foreign Corrupt Practices Act ("FCPA") expert to review potentially relevant transactions and to assist the Company with the design and implementation of a detailed FCPA program.  The Company has preliminarily concluded that the extent to which it may be exposed in the PRC is limited.  However, management is currently unable to determine the final outcome of these matters and their possible effects on the consolidated financial statements."

32.    On October 19, 2011, the Company filed an 8-K with the SEC that Keyuan's Q2 and Q3 2009 10-Qs would be restated, because of, among other things, to add "disclosures of our related party transactions to ensure that we include all of the disclosures required under US GAAP and the rules and regulations of the Securities Exchange Commission."

33.    On November 1, 2011, the Company filed its restated 10-Q of the second quarter ended June 30, 2010.   The 10-Q revealed the related party transactions, set forth in the 2010 10-K listed above, for the second quarter, and others.  The 10-Q states in relevant part:

Note 25 - Related Party Transactions and Relationships

The Company considers all transactions with the following parties to be the related party transactions.

| Name of parties | Relationship |
|---|---|
| Mr. Chunfeng Tao | Majority stockholder |
| Mr. Jicun Wang | Principal stockholder |
| Mr. Peijun Chen | Principal stockholder |
| Ms. Sumei Chen | Member of the Company's Board of Supervisors and spouse of Mr. Wang |
| Ms. Yushui Huang | Vice President of Administration, Ningbo Keyuan |
| Mr. Weifeng Xue | Vice President of Accounting, Ningbo Keyuan |
| Mr. Hengfeng Shou | Vice President of Sales, Ningbo Keyuan Petrochemical |
| Ningbo Kewei Investment Co., Ltd. (Ningbo Kewei) | A company controlled by Mr. Tao |
| Ningbo Pacific Ocean Shipping Co., Ltd (Ningbo Pacific) | 100% ownership by Mr. Wang |
| Ningbo Hengfa Metal Product Co., Ltd (Ningbo Hengfa, former name "Ningbo Tenglong") | 100% ownership by Mr. Chen |
| Shandong Tengda Stainless Steel Co., Ltd (Shandong Tengda) | 100% ownership by Mr. Chen |
| Ningbo Xinhe Logistic Co., Ltd (Ningbo Xinhe) | 10% ownership by Ms. Huang |
| Ningbo Kunde Petrochemical Co, Ltd. (Ningbo Kunde) | Mr. Tao's mother was a 65% nominee shareholder for Mr. Hu, a third party |
| Ningbo Jiangdong Jihe Construction Materials Store (Jiangdong Jihe) | Controlled by Mr. Xue's Brother-in-law |
| Ningbo Wanze Chemical Co., Ltd (Ningbo Wanze) | Mr. Tao's sister-in-law is the legal representative |
| Ningbo Zhenhai Jinchi Petroleum Chemical Co., Ltd (Zhenhai Jinchi) | Controlled by Mr. Shou |

Related party transactions and amounts outstanding with the related parties as of and for the three months ended March 31, 2010 and 2009 are summarized as follows:

|  | Three months ended June 30, | |
|---|---|---|
|  | 2010 | 2009 |
| Sales of products (a) | $26,369,453 | $ - |
| Purchase of raw material (b) | $ - | $ - |
| Purchase of transportation services (c) | $ 1,593,080 | $ - |
| Credit line of guarantee provision for bank borrowings (d) | $ 4,400,700 | $43,238,150 |
| Short-term financing from related parties (e) | $ 2,934,200 | $ 5,247,767 |
| Short-term financing to related parties (e) | $ 2,934,200 | $ 5,247,767 |

34.

|  | Six months ended June 30, | |
|---|---|---|
|  | 2010 | 2009 |
| Sales of products (a) | $ 47,186,862 | $ - |
| Purchase of raw material (b) | $ 5,734,319 | $ - |
| Purchase of transportation services (c) | $ 3,044,389 | $ - |
| Credit line of guarantee provision for bank borrowings (d) | $124,686,500 | $52,032,350 |
| Short-term financing from related parties (e) | $ 4,400,700 | $ 6,639,621 |
| Short-term financing to related parties (e) | $ 4,400,700 | $ 6,639,621 |

35.     On November 1, 2011 the Company also filed its restated 10-Q for the third quarter ended September 30, 2010.   The 10-Q revealed the related party transactions, set forth in the 2010 10-K listed above, for the second quarter, and others.  The 10-Q states in relevant part:
.

The Company considers all transactions with the following parties to be the related party transactions.

| Name of parties | Relationship |
| --- | --- |
| Mr. Chunfeng Tao | Majority stockholder |
| Mr. Jicun Wang | Principal stockholder |
| Mr. Peijun Chen | Principal stockholder |
| Ms. Sumei Chen | Member of the Company's Board of Supervisors and spouse of Mr. Wang |
| Ms. Yushui Huang | Vice President of Administration, Ningbo Keyuan |
| Mr. Weifeng Xue | Vice President of Accounting, Ningbo Keyuan |
| Mr. Hengfeng Shou | Vice President of Sales, Ningbo Keyuan |
| Ningbo Kewei Investment Co., Ltd. (Ningbo Kewei) | Petrochemical A company controlled by Mr. Tao |
| Ningbo Pacific Ocean Shipping Co., Ltd (Ningbo Pacific) | 100% ownership by Mr. Wang |
| Ningbo Hengfa Metal Product Co., Ltd (Ningbo Hengfa, former name "Ningbo Tenglong") | 100% ownership by Mr. Chen |
| Shandong Tengda Stainless Steel Co., Ltd (Shandong Tengda) | 100% ownership by Mr. Chen |
| Ningbo Xinhe Logistic Co., Ltd (Ningbo Xinhe) | 10% ownership by Ms. Huang |
| Ningbo Kunde Petrochemical Co, Ltd. (Ningbo Kunde) | Mr. Tao's mother was a 65% nominee shareholder for Mr. Hu, a third party |
| Ningbo Jiangdong Jihe Construction Materials Store (Jiangdong Jihe) | Controlled by Mr. Xue's Brother-in-law |
| Ningbo Wanze Chemical Co., Ltd (Ningbo Wanze) | Mr. Tao's sister-in-law is the legal representative |
| Ningbo Zhenhai Jinchi Petroleum Chemical Co., Ltd (Zhenhai Jinchi) | Controlled by Mr. Shou |

Related party transactions and amounts outstanding with the related parties as of and for the three months ended June 30, 2011 and 2010 are summarized as follows:

| | Three months ended September 30, | |
| --- | --- | --- |
| | 2010 | 2009 |
| Sales of products (a) | $38,796,256 | $ 7,362,101 |
| Purchase of raw material (b) | $14,170,598 | $ 2,530,203 |
| Purchase of transportation services (c) | $    332,419 | $   313,349 |
| | | - |
| Credit line of guarantee provision for bank borrowings (d) | $33,097,500 | $ 4,367,225 |
| Short-term financing from related parties (e) | $12,479,262 | $ 5,421,870 |

Class Action Complaint for Violation of the Federal Securities Laws

| | | |
|---|---|---|
| Short-term financing to related parties (e) | $12,839,420 | $5,421,870 |

| | Nine months ended September 30, | |
|---|---|---|
| | **2010** | **2009** |
| Sales of products (a) | $ 85,983,117 | $ 7,362,101 |
| Purchase of raw material (b) | $ 19,850,135 | $ 2,530,203 |
| Purchase of transportation services (c) | $ 3,376,808 | $ 313,349 |
| Credit line of guarantee provision for bank borrowings (d) | $158,132,500 | $47,844,275 |
| Short-term financing from related parties (e) $ | 14,415,800 | $12,061,491 |
| Short-term financing to related parties (e) | $ 14,505,958 | $12,061,491 |

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Keyuan during the Class Period and who were damaged thereby.   Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Keyuan's securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Keyuan or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Keyuan; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### Applicability of Presumption of Reliance:
### Fraud-on-the-Market Doctrine

42.     At all relevant times, the market for Keyuan's common stock was an efficient market for the following reasons, among others:

(a)     Keyuan's met the requirements for listing on the NASDAQ, a highly efficient and automated market;

(b)     During the class period, on average, hundreds of thousands of shares of Keyuan stock were traded on a weekly basis, demonstrating a very active and broad market for Keyuan stock and permitting a *strong* presumption of an efficient market;

(c)     As a regulated issuer, Keyuan filed periodic public reports with the SEC;

(d)     Keyuan regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     Keyuan was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in Keyuan stock at all times during the Class Period;  and

(g)     Unexpected material news about Keyuan was rapidly reflected and incorporated into the Company's stock price during the Class Period.

43.     As a result of the foregoing, the market for Keyuan's common stock promptly digested current information regarding Keyuan from all publicly available sources and reflected such information in Keyuan's stock price.   Under these circumstances, all purchasers of Keyuan's common stock during the Class Period suffered similar injury through their purchase of Keyuan's common stock at artificially inflated prices, and a presumption of reliance applies.

**Applicability of Presumption of Reliance:**

### *Affiliated Ute*

44.     Neither Plaintiffs nor the Class need prove reliance – either individually or as a class because under the circumstances of this case, which involves a failure to disclose the material related party transactions described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United*

*States*, 406 U.S. 128 (1972).   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## FIRST CLAIM

### Violation of Section 10(b) Of

### The Exchange Act Against and Rule 10b-5

### Promulgated Thereunder Against All Defendants

45.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.   This claim is brought against Keyuan and all of the Individual Defendants.

47.   During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase Keyuan's common stock at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48.   Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Keyuan's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Keyuan as specified herein.

50.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Keyuan's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Keyuan and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Keyuan's common stock during the Class Period.

51.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of

information to the investing public which they knew or recklessly disregarded was materially false and misleading.

52.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Keyuan's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Keyuan's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Keyuan's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Keyuan common stock during the Class Period at artificially high prices and were or will be damaged thereby.

54.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known

17

the truth regarding Keyuan's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Keyuan common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

55.   By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

56.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

57.   This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of

### The Exchange Act Against the Individual Defendants

58.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.   The Individual Defendants acted as controlling persons of Keyuan within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.   The Individual Defendants were provided with or had unlimited access to copies of the

Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

60.    In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.    As set forth above, Keyuan and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

62.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

63.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and

expenses incurred in this action, including counsel fees and expert fees; and

        (d)     Awarding such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated:  November 11, 2011          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

_____
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel Plaintiffs

**Subject:** Confirmation of Receipt of Certification
**Date:** Saturday, May.7, 2011 9:16:53 PM ET
**From:** Administrator
**To:** █████████████

Dear Peter Cheung,

We have received your certification in the Keyuan Petrochemical Inc. class action litigation. Thank you for submitting your information. Below is a copy of your certification - please retain it for your records. If you have any questions, please feel free to contact us at 1-866-rosenlegal (866-767-3653) or via e-mail at info@rosenlegal.com.

With increasing frequency, we find that our new clients were victimized by more than one company. If you think you may have lost monies in the market due to the dishonest acts or statements of a different company and would like it to be investigated, free of charge, please email us at reportfraud@rosenlegal.com.

Sincerely,

The Rosen Law Firm P.A.

--------

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Keyuan Petrochemical Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Keyuan Petrochemical Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First name: Peter

Last name: Cheung

Address: 

City

State, Zip

Email:

Phone:

**REDACTED**

The Plaintiff Certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in

order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Shares Purchased:

Purchase Date(s): 3/31/2011
Number of shares: 3086
Price per Share: 4.8937

Shares Sold:

7. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: yes

By clicking on the button below, I intend to sign and execute this agreement: yes

Clicked to Submit Certification in the Keyuan Petrochemical Inc. Action

Signed pursuant to California Civil Code Section 1633.1, et seq. - Uniform Electronic Transactions Act

-------------

Confidential Information

The information in this e-mail message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (866-767-3653) and return the original message to the above e-mail address. Thank you.

-------------