UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

| | |
|---|---|
| Present: | The Honorable Philip S. Gutierrez, United States District Judge |

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Lawrence M. Rosen | Robert D. Weber |

**Proceedings: (In Chambers): Order GRANTING in part and DENYING in part Defendant's motion to dismiss**

Before the Court is Defendant Keyuan Petrochemical, Inc.'s ("Defendant" or "Keyuan") motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). The Court heard oral arguments on the matter on October 29, 2012. After considering the arguments made in the moving papers and at oral argument, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.[1]

I. Background

On May 29, 2012, Plaintiffs Neil Vanleeuwen and Rodney Omanoff[1] (collectively "Plaintiffs") filed a class action complaint against Defendants Keyuan, Chungen Tao ("Tao"), Aichun Li ("Li"), Weifeng Xue ("Xue" and, collectively with Tao and Li, "Individual Defendants"), and Delight Reward Limited (collectively, "Defendants") alleging claims for (1) violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against all Defendants and (2) violation of § 20(a) of the Exchange Act against the Individual Defendants. *See* Dkt. # 32. Plaintiffs' claims are based on allegations that Defendants failed to disclose related-party transactions in Offering Documents disseminated in connection with the private sale of Keyuan stock in March 2010 and in SEC filings when the company's stock was being publicly traded. *FAC* ¶¶ 1-10, 77. Plaintiffs allege that Keyuan made sales to entities owned by

[1] Both parties have also submitted requests for judicial notice of various exhibits. *See* Dkts. # 33, 37. Because the exhibits attached to the requests for judicial notice do not affect the Court's conclusion on the motion, the Court declines to address either party's request for judicial notice.
[1] These Plaintiffs replaced the original named Plaintiff, Peter Cheung. *See* Dkt. 14.

Tao, Keyuan's Chairman and Chief Executive Office ("CEO"), in the amount of $21 million in 2009 and $100 million in 2010, and purchased raw materials from Tao in the same years, representing 36 and 47 percent of Keyuan's inventory for those years, respectively. *Id.* ¶ 4. Plaintiffs allege that Keyuan failed to disclose these related-party transactions in Offering Documents and accompanying financial statements from 2009 in connection with the private sale of the company's stock and in several SEC filings in 2010. *Id.* ¶¶ 1, 4, 9, 77. Plaintiffs further allege that on April 1, 2011, trading on Keyuan stock ceased due to the discovery of the related-party transactions, and the value of the stock fell by 69 percent when trading reopened in October 2011, causing investors substantial losses. *Id.* ¶¶ 9-10. Plaintiffs bring the claim on behalf of two classes: (1) "all persons other than Defendants who purchased the common stock of Keuyan between August 16, 2010 and October 7, 2011, inclusive, *FAC* ¶ 1(a); and (2) "all persons other than Defendants who purchased Keyuan securities pursuant to the confidential private offering memorandum dated March 22, 2010 ("Offering Documents"), consisting of purchasers in the first tranche that closed on April 22, 2010 and the second tranche, that closed on May 18, 2010 (collectively the Private Placement)." *FAC* ¶ 1(a). On July 27, 2012, Keyuan moved to dismiss Plaintiffs' §10(b) claim against it.

II. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts should be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim for relief. *See id.*

In evaluating a Rule 12(b)(6) motion, the court must engage in a two-step analysis. *See id.* at 1950. First, the court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Based upon these allegations, the court must draw all reasonable inferences in favor of the plaintiff. *See Doe v. U.S.*, 419 F.3d 1058, 1062 (9th Cir. 2005). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

plausible claim for relief. *See Iqbal,* 556 U.S. at 679. Despite the liberal pleading standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *See id.* at 678-79.

Through the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress has imposed heightened pleading standards on federal securities fraud actions. 15 U.S.C. §§ 78u-4(b)(l), (2). "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig*., 283 F.3d 1079, 1084 (9th Cir. 2002), *abrogation on other grounds recognized by South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008).* "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'" *Id.* at 1084-85 (quoting *In re Silicon Graphics Sec. Litig*., 183 F.3d 970, 973 (9th Cir.1999)). To meet the exacting standards of the PSRLA, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at 1085 (quoting 15 U.S.C. §§ 78u-4(b)(l)).

With respect to pleading scienter, the PSRLA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 USC § 78u-4(b)(2). As with any Rule 12(b)(6) motion, when assessing a Rule 12(b)(6) motion to dismiss a §10(b) action, courts must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issue & Rights, Ltd*, 551 U.S. 308, 324-26 (2007) (*citing Leatherman*, 507 U.S. at 164). In determining whether the allegations in the complaint give rise to a "strong inference" of scienter, "the court must take into account plausible opposing inferences." *Id.* at 323. After accounting for all plausible inferences in favor of and against the plaintiffs, "the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling," meaning a complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. Furthermore, under *Tellabs,* courts must inquire "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*

III. Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

Section 10(b) of the Exchange Act forbids the "use or employ, in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements § 10(b) by declaring it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In a typical § 10(b) private action, a plaintiff must prove (1) falsity, meaning a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

In this case, there are two classes of Plaintiffs: one class that allegedly purchased stock pursuant to the Private Placement ("Private Placement Class") and one class that allegedly purchased common stock on the public market ("Public Class"). *FAC* ¶ 1. The alleged fraud for the two classes is based on different allegedly inaccurate documents: the Private Placement Class purchased stock in alleged reliance on the Offering Documents while the Public Class purchased common stock in a market allegedly infected with fraud pursuant to incomplete disclosures in financial statements in 2010. *See id.* ¶¶ 1, 4, 9, 26-29, 106-107. As such, the Court finds it appropriate to discuss the two classes separately.

A. Private Placement Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

In regard to the Private Placement Class, Keyuan argues that Plaintiffs' claim fails because they have failed to adequately allege falsity, scienter, and reliance. Because the Court concludes that Plaintiffs have failed to plead scienter as to the Private Placement Class, the Court does not address falsity and reliance as to the Private Placement Class.

*i. Scienter*

Scienter refers to "'a mental state embracing the intent to deceive, manipulate, or defraud.'" *Tellabs*, 551 U.S. at 319 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n. 12 (1976)). In the Ninth Circuit, a plaintiff must plead that the defendant made "a highly unreasonable omission, involving . . . an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (quoting *Silicon Graphics*, 183 F.3d at 976). A corporation may be held to have scienter for fraud pursuant to § 10(b) if the individual corporate officer who made the statement or omission had the requisite level of scienter. *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) ("[A]ny direct corporate liability would be derivative of, or concurrent with [director and officer] liability."); *In re Apple Computer Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) ("A defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer has the requisite level of scienter, i.e., knows that the statement is false, or is at least deliberately reckless as to its falsity, at the time he or she makes the statement."). In this case, in order to plead that Keyuan had the requisite level of scienter, Plaintiffs must allege the requisite level of scienter with respect to at least one of the Individual Defendants.

In order to plead scienter as to the Individual Defendants, Plaintiffs must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(2)). Moreover, Plaintiffs must allege specific facts relating to each Defendant, indicating the role each Defendant played in perpetrating the fraud—"the who, what, when, where, and how" of the fraud. *Henning v. Orient Paper*, No. CV 10-5887-CFB (AJWx), 2011 WL 2909322, *2 (C.D. Cal. July 20, 2010). Because corporations act through their agents, the actions of the Individual Defendants must be pleaded with particularity, and allegations identifying the actions of the corporation generally are insufficient. *See Brown v. China Integrated Energy, Inc.*, No. CV 11-2559 MMM (PLAx), 2012 WL 2866462, at *15 (C.D. Cal. July 12, 2012). In other words, Plaintiffs may not meet the requisite pleading standard by making generalized allegations that group the Individual Defendants together or simply assert

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

what the company did without identifying the actors responsible for those actions. *See In re A-Power Energy Generation Sys. Ltd. Sec. Litig*., No. MDL 11-2302 GW (CWx), 2012 WL 1983341, at *12-13 (C.D. Cal. May 31, 2012) (finding allegations that grouped defendants together to be insufficient to establish scienter as to each of them individually); *In re Am. Apparel S'holder Litig.*, 855 F. Supp. 2d 1043, 1066 n. 154 (noting that the validity of group-pleading was "in question" post-PSLRA and citing numerous district courts in the Ninth Circuit that have declined to permit group pleading in securities fraud cases); *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 793 F. Supp. 2d 1138, 1145 (C.D. Cal. 2011) (noting that group pleading is not permissible under the PSLRA); *In re New Century*, 588 F. Supp. 2d 1206, 1223-24 (C. D. Cal. 2008) (noting that though the Ninth Circuit had not yet addressed the issue, all circuits and the majority of district courts that have addressed the issue have found that group pleading is impermissible under the PSLRA). Therefore, in order to survive Keyuan's motion to dismiss, Plaintiffs must make specific allegations regarding how the Individual Defendants were involved in the fraudulent scheme.

Plaintiffs have failed to make specific allegations regarding how the Individual Defendants were involved in the alleged fraud, instead relying almost exclusively on generalized "'everyone did everything' allegations [that] are . . . simply insufficient." *A-Power*, 2012 WL 1983341, at *11; *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming district court's dismissal of a § 10(b) claim based on "everyone did everything" allegations that were not accompanied with specific allegations of which defendants made which fraudulent statements or engaged in which fraudulent conduct). Plaintiffs repeatedly refer to actions taken by Keyuan and the defendants generally, but fail to identify which Individual Defendant or Defendants were responsible for the specific fraudulent act of preparing and distributing the Offering Documents produced in connection with the private sale of Keyuan stock in March 2010 without disclosing the related-party transactions at issue. *See FAC* ¶¶ 1, 4. Plaintiffs do not identify any specific facts relating to the preparation and dissemination of the Offering Documents that would connect them specifically to any of the Individual Defendants. In fact, Plaintiffs do not identify a single specific act by any one of the Individual Defendants in connection with the Offering Documents. All of the allegations refer to the Defendants collectively, grouping the Individual Defendants with the corporate Defendants or referring to what "Keyuan" did. Only twice in the Complaint do Plaintiffs identify by name the Individual Defendants and the specific conduct in which they engaged in relation to the Offering Documents, but even those allegations group two or more Individual Defendants together. Specifically, Plaintiffs allege that "[t]he failure to disclose the related party transactions herein was an oversight or misuse of facts that were actually known to Defendants Tao, Li and Xu at the time they signed and filed Keyuan's financial statements with the SEC." *FAC* ¶ 45. Plaintiffs also allege that "Tao and Li must have signed knowingly false management representation letters to Keyuan's auditors . . ." *FAC* ¶ 59.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

The FAC contains no other reference to the Individual Defendants by name that would give any indication as to how each individually was involved in the alleged scheme of disseminating false Offering Documents. In the absence of specific allegations relating to how each Individual Defendant was involved in the allegedly fraudulent omission, the Court cannot find that Plaintiffs have pleaded scienter with sufficient particularity. *See Destfino*, 630 F.3d at 958-59; *A-Power Energy*, 2012 WL 1983341, at *13 (dismissing claims against individual defendants who were simply "lumped" together with other defendants without specific details being pleaded against them).

Plaintiffs' allegations of scienter are strongest with regard to Tao, but even those allegations fall short of the heightened pleading standard required by the PSLRA. Plaintiffs allege that Tao was the Chairman and CEO of Keyuan and that Keyuan engaged in transactions worth millions of dollars with other companies owned by Tao. In some circumstances, a defendant's management role in a company may permit an inference of scienter, even in the absence of particularized allegations. The Ninth Circuit has identified three circumstances in which a defendant's management role is relevant in establishing scienter: first, such allegations may be read in light of other allegations to determine whether the allegations, read together, establish a strong inference of scienter; second, such allegations may be sufficient if they are particularized and suggest that the defendants had access to the allegedly-concealed or falsified information; and third, such allegations may be adequate without accompanying particularized allegations "in the rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008); *see also Zucco Partners*, 552 F.3d at 1001.

In this case, however, none of these theories will save Plaintiffs' otherwise insufficient allegations. The first theory simply instructs the Court to examine the pleadings as a whole by considering the allegations regarding the defendant's management role in conjunction with other allegations in the complaint, which the Court has already done pursuant to the standards articulated by *Tellabs*. *Tellabs*, 551 U.S. at 324. The bare allegation that the defendant is in a management role will not save an otherwise insufficient complaint. *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 740, 745-47 (9th Cir. 2008) (finding allegations against the defendant company's president and CEO to be insufficient when the plaintiffs failed to plead any facts demonstrating that the individual personally knew about the illegal conduct); *A-Power*, 2012 WL 1983341, at *2, 11-13 (finding generalized allegations against directors of the defendant company to be insufficient to establish scienter). Indeed, a contrary conclusion would make this an exception that swallows the rule, as it would permit a plaintiff to survive a motion to dismiss merely by presenting generalized group allegations in addition to an allegation that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

one or more of the defendants was in a management role in the company. The PSLRA and the weight of caselaw in this district require more.

The second theory permits an inference of scienter when a complaint alleges specific details about the defendant's management role and connects those allegations with the specific statements or actions alleged to be fraudulent. *See South Ferry*, 542 F.3d at 785-86. For example, in *In re Daou Systems, Inc.*, the Ninth Circuit found that defendants' management role supported an inference of scienter because the plaintiffs had specifically alleged how defendants' role as high level executives in the defendant company related to the allegedly fraudulent conduct at issue. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022-23 (9th Cir. 2005). In that case, plaintiffs had "alleged with specificity that the top executives actually directed the improper revenue recognition in violation of both . . . accounting practices." *Id.* at 1023. There, plaintiffs alleged that the defendants were the top executives at the company, personally made decisions on revenue recognition, represented themselves as knowledgeable about all aspects of the company's finances, and personally directed the alleged violations. *Id.* The Ninth Circuit concluded that these allegations were highly probative of scienter and sufficient under the PSLRA. *Id.*

In this case, plaintiffs have alleged no specific details about how any of the Individual Defendants were involved in the preparation of the Offering Documents. Plaintiffs do not allege that Defendants oversaw the preparation of the Offering Documents or that they were familiar with, prepared, or approved the financial reports that were submitted with the Offering Documents. Plaintiffs only allege that Tao and Li "must have signed" false management representation letters submitted to Keyuan's auditors because they were top management at the company and it would have been standard practice for them to have done so. *FAC* ¶ 59. Plaintiffs base this conclusion on the reasoning that Keyuan was required to disclose related-party transactions in the management representation letters and they must have not done so because, if they had, the independent auditor would have learned of and disclosed the transactions. *Id.* Plaintiffs conclude that because no such transactions were disclosed, Tao and Li must have signed knowingly false documents in connection with their 2009 and 2010 financial reports. Such allegations, relying on several inferential steps, are insufficient under the heightened pleading standards of the PSLRA. Where courts have found scienter based on a defendant's management role, they have done so based on much more specific allegations of what the defendants actually did to perpetrate the fraud, not what they "must have" done. *See Daou*, 411 F.3d at 1022-23. The Ninth Circuit has specifically rejected complaints in which scienter is based on what defendants must have known or must have done when there were no accompanying allegations of specific information conveyed to management and related to the fraud. *See Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008)

(concluding that scienter could not be based on allegations that "principals must have had knowledge of the alleged fraudulent practices" based on their position in the company, when there were no additional allegations about what the defendants actually knew).

Here, Plaintiffs merely allege that the Individual Defendants "must have signed knowingly false" documents, without alleging that any of the Individual Defendants actually signed those documents or that any specific information related to the fraud was actually conveyed to them. *See FAC*. Therefore, the allegations are far less specific and detailed than the allegations that the Ninth Circuit has considered sufficient to support an inference of scienter. *See Daou*, 411 F.3d at 1022-23; *see also Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234-35 (9th Cir. 2004) (finding that because the defendants had admitted that they were "involved in every detail of the business" and personally monitored the company's databases it was permissible to infer that they were aware of the allegedly improper revenue recognition and find a strong inference of scienter). The allegations here are more akin to the "must have known" allegations in *Metzler* that the Ninth Circuit found insufficient. *See Metzler*, 540 F.3d at 1068. In the absence of more particularized allegations of how the Individual Defendants were involved in or knew about the allegedly fraudulent transactions, mere allegations regarding their status as senior management do not support a finding of scienter. *See id.*

Finally, this case is not one of the "rare circumstances" in which the Court can infer scienter absent specific allegations because "the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *See South Ferry*, 542 F.3d at 786. Plaintiffs allegations as to Tao come the closest to meeting this standard, as Plaintiffs have alleged that Tao was the Chairman and CEO of Keyuan and that Keyuan failed to disclose transactions worth over $100 million with companies owned by Tao and his relatives. *See FAC* ¶ 4, 19, 61-66.

When matters are so obvious from the operations of the company that the company officer "'must have known' about the falsity of the information they were providing . . . the defendants' awareness of the information's falsity can be assumed." *Zucco Partners*, 552 F.3d at 1001; *see also Brown*, 2012 WL 2866462, at * 16. Courts have found that this rule applies when officers of a company or their close relatives are involved in both sides of a related-party transaction. *See id*; *A-Power*, 2012 WL 1983341, at *1, 8-9. For example, Judge Morrow recently concluded that the court could properly infer that the CEO of a company was aware of transactions between his company and a company owned by his son. *See id.* at *19. Judge Morrow reasoned that "[i]t is natural to conclude that an executive is aware of the business dealings of his own son, particularly when those dealings were with the executive's own

company," and so allegations that the CEO signed statements concerning the transactions that omitted the information that his son stood to benefit from them were highly probative of scienter. *Id.* In another recent case, Judge Wu similarly concluded that it was natural for the CEO of a company to be aware of transactions between the company and other companies owned by the CEO and his family. *A-Power*, 2012 WL 1983341, at *8-9. Given that the court could infer knowledge from this relationship, the court further concluded that it could infer that the defendant acted with scienter when he signed documents that failed to disclose the related-party transactions. *Id.* at *1, 8-9.

Here, the Court may infer that Tao knew of the transaction between Keyuan and his own companies, but Plaintiff's FAC still lacks the second necessary ingredient: involvement in the transaction on behalf of Keyuan. In *Brown* and *A-Power*, the courts inferred scienter because the individual defendants must have known of the related-party transactions and were involved in the allegedly-fraudulent statement that failed to disclose the transactions. However, in this case, Plaintiffs have failed to allege how, if at all, Tao was involved in the preparation of the Offering Documents. *See FAC*. In order to permit an inference of scienter under this third theory, Plaintiffs must allege both that it would be absurd to conclude that Tao did not know of the transactions and that he was involved in statements that failed to disclose the transactions. *See Brown*, 2012 WL 2866462, at *16; *A-Power*, 2012 WL 1983341, at *8-9. For the reasons discussed above, the allegations that Tao "must have" signed documents submitted to Keyuan's auditors in preparing the 2009 financial reports, which were included in the Offering Documents, is not pleaded with sufficient particularity. Further, the allegations that Tao signed 2010 reports that failed to disclose the related-party transaction are irrelevant to the Court's conclusion because those documents were unrelated to the documents that are alleged to have misled Plaintiffs, as they were not prepared or used in connection with the Offering Documents. Because Plaintiffs have only alleged facts from which the court could infer that Tao knew of the related-party transactions but have not alleged how he was involved in preparing the Offering Documents that failed to disclose those actions, they have not pleaded facts sufficient to raise a strong inference of scienter.

*ii. Conclusion*

In sum, the Court concludes that Plaintiffs have failed to meet the heightened pleading standard for scienter required by the PSLRA as to the Private Placement Class. Therefore Plaintiffs' § 10(b) claim against Keyuan is DISMISSED as to that class.

B. <u>Public Class</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

Keyuan argues that Plaintiffs have failed to allege scienter as to the Public Class. Keyuan does not address the other elements with regard to the Public Class and, as such, the parties have not briefed those issues. However, the Court finds it necessary to address all six § 10(b) elements in regard to the Public Class.

*i. Falsity*

In order to prove the first element of a § 10(b) claim, a plaintiff must establish that the defendant made a material misrepresentation or omission. *Dura Pharm.*, 544 U.S. at 341. An omission is material if "a reasonable investor might have considered [it] important in making [the] decision" to invest. *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 152 (1972); *see also In re Apte*, 96 F.3d 1319, 1323 (9th Cir. 1996); *Plascencia v. Lending First Mortg.*, 259 F.R.D. 437, 447 (N.D. Cal. 2009). Here, the alleged material omission is Keyuan's failure to disclose several related-party transactions in its financial statements and Offering Documents. Plaintiffs allege that Keyuan made undisclosed sales to companies owned by Tao in the amount of $21 million in 2009 and $100 million in 2010, which represented 31 percent and 20 percent of the company's total sales in those years, respectively. *FAC* ¶ 4. Plaintiffs also allege that Keyuan failed to disclose purchases of raw materials from Tao in 2009 and 2010, which represented 36 percent and 47 percent of the company's inventory for those years, respectively. *Id.* Given the magnitude of these transactions, both in dollar terms and in proportion to the company's operations as a whole, these transactions are something "a reasonable investor might have considered . . . important" and so are material. *See Affiliated Ute*, 406 U.S. at 152.

Moreover, courts in this district have consistently found that failure to disclose related-party transactions constitutes a material omission under § 10, especially when the amounts involved are as large as they are in this case. *See, e.g.*, *Brown*, 2012 WL 2866462, at * 14-15 (concluding that allegations that the defendant company's failed to disclose transactions with entities owned by the defendant CEO's son from which the son received millions of dollars was adequate to plead falsity); *A-Power*, 2012 WL 1983341, at * 8 (finding falsity adequately pleaded when the plaintiffs alleged that the defendants engaged in transactions with companies with which officers had direct ties and from which officers received financial incentives); *Snellink v. Gulf Res., Inc.*, No. CV 11-3722 ODW (MRWx), 2012 WL 1693979, at *7 (C.D. Cal. May 15, 2012) (concluding that the failure to disclose related-party transactions adequately pleaded falsity). The Court is in accord with other courts in this district in concluding that Plaintiffs sufficiently pleaded falsity by alleging that Keyuan failed to disclose transactions worth over $100 million with companies owned by Keyuan's CEO. Therefore, this element is met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

*ii. Scienter*

Here, the Court finds it appropriate to apply the reasoning in *Brown* and *A-Power*, discussed in detail above, to support a conclusion that Plaintiffs have alleged scienter with regard to Tao, which may be imputed to Keyuan. For the reasons discussed above, the Court may infer that Tao knew of the related-party transactions, as they were transactions worth millions of dollars with his own companies and it would be absurd to suggest that he was not aware of them. *See South Ferry*, 542 F.3d at 786, *Brown*, 2012 WL 2866462, at *16; *A-Power*, 2012 WL 1983341, at *8-9. Further, Plaintiffs have alleged that Tao signed 2010 reports that failed to disclose the related-party transaction and that infected the market in which members of the Public Class purchased stock. Plaintiffs have thus alleged facts from which the Court can infer that Tao must have known about the related party transactions and so he acted with scienter when he signed financial documents that failed to disclose those transactions. *See Brown*, 2012 WL 2866462, at *16; *A-Power*, 2012 WL 1983341, at *8-9; *see also South Ferry*, 542 F.3d at 786. Tao's scienter may be imputed to Keyuan. *See Nordstrom*, 54 F.3d at 1424; *Apple Computer*, 243 F. Supp. 2d at 1023.

*a. Adverse Interest*

Defendants argue that, even if Plaintiffs have adequately pleaded scienter as to Tao, that scienter cannot be imputed to Keyuan, pursuant to the adverse interest defense. *Mot.* 19:6-20:2; *Reply* 7:12-23. In support of this argument, Keyuan cites to two out of circuit cases: *E.D.I.C. v. Shrader & York*, 991 F.2d 215 (5th Cir. 1993), and *Wight v. Bankamerica Corp*., 219 F.3d 79 (2nd Cir. 2000). As a general matter, these cases stand for the proposition that courts will not impute an officer's knowledge to the corporation if the officer acts entirely in his own interest or for another's purpose and against his company. *See id.* ("Under the exception, management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation."); *E.D.I.C.*, 991 F.2d at 223 ("[A]n agent's knowledge falls within the exception only if the agent acts entirely for his own or another's purposes. In other words, knowledge is imputed in a case of 'joint' interests even though the agent's primary interest is inimical to that of the principal.") (internal quotation marks and citations omitted). The Court is not persuaded that the allegations in the FAC lead to the inference that Tao was acting entirely in his own interest such that his scienter cannot be imputed to Keyuan.

*iii. Connection Between Omission and Purchase or Sale*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

Here, the alleged omissions occurred in connection with the public sale of Keyuan stock. Therefore, they occurred in connection with the sale of a security and this element is met. *See Dura Pharm*, 544 U.S. at 341-48.

*iv. Reliance*

In order to succeed on a § 10(b) action, Plaintiffs must establish that they relied on the fraudulent omission in purchasing Keyuan stock. Here, Plaintiffs do not plead specific reliance, but allege that they are entitled to a presumption of reliance based on the "fraud-on-the-market" presumption or the *Affiliated Ute* presumption. *Compl.* ¶¶ 105-107; *Opp.* 8:17-9:21. Because the Court concludes that the fraud-on-the-market presumption applies, the Court does not address whether Plaintiffs may also be entitled to the *Affiliated Ute* presumption of reliance.

*a. Fraud-on-the-Market*

As adopted by the Supreme Court, the "fraud-on-the market" theory "is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (quoting *Basic Inc. v. Levinson*, 485 U.S. 223, 241-42); *see also Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1102-03 (9th Cir. 2010) (noting that a plaintiff may establish a presumption of reliance by showing that "the whole market is deceived by a misrepresentation"). The presumption of reliance is available "when a plaintiff alleges that a defendant made material representations or omissions concerning a security that is actively traded in an 'efficient market,' thereby establishing a 'fraud on the market.'" *Binder*, 184 F.3d at 1064 (citing *Basic*, 485 U.S. at 247). As the Court has already concluded, Plaintiffs have alleged a material omission concerning a security. Therefore, the question remaining is whether Plaintiffs have pleaded that the stocks were traded in an efficient market.

The Ninth Circuit uses a five-factor test to evaluate whether a market is an "efficient market:" (1) whether the stock trades at a high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file SEC registration form S-3, as opposed to S-1 or S-2; and (5) whether there is a cause and effect relationship between unexpected corporate events or releases and an immediate response in the stock market price. *Binder*, 184 F.3d at 1065; *In re Turbodyn Tech., Inc. Sec. Litig*, No. CV 99-000697-MMM-BQRx, 2000 WL 33961193, at * 13 (C.D. Cal. Mar. 15, 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

Here, Plaintiffs have adequately alleged fraud-on-the-market under this test. Plaintiffs have adequately alleged all five factors. In regard to the first factor, Plaintiffs allege that, on average, over 175,000 shares of Keyuan stock were traded weekly, which represents more than 2 percent of the publicly owned shares available for trading. *FAC* ¶ 106. The 175,000 figure is low compared to the volume of weekly trading that other courts have found to support a finding of an efficient market. *See, e.g.*, *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 269 (N.D. Cal. 2011) (finding fraud-on-the-market when the company traded over 14 million shares weekly); *Cammer v. Bloom*, 711 F. Supp. 1264, 1283 n. 30 (D.N.J. 1989) (finding fraud-on-the-market when, on average, 750,000 shares of company stock traded per week). However, the case from which the Ninth Circuit drew the test that it currently applies to determine whether to apply the fraud-on-the-market presumption noted that "[t]urnover measured by average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for a security is an efficient one; one percent would justify a substantial presumption." *Id.* at 1286 (citing Bromberg & Lowenfels 4, *Securities Fraud and Commodities Fraud*, § 8.6 (1988)); *see also Binder*, 184 F.3d at 1065 (relying on the "*Cammer* factors" in articulating the test now used by the Ninth Circuit to evaluate whether a market is efficient). Given that Plaintiffs have alleged that more than two percent of the outstanding shares were traded per week, this factor weighs in favor of a finding of an efficient market. Moreover, the volume of 175,000 shares traded weekly, on average, is not so low as to require the Court to find that there was no efficient market, given that the number is still substantial and that all the other factors weigh in Plaintiff's favor, as discussed below.

Plaintiffs have also alleged facts supporting a finding of fraud-on-the-market based on the other four factors. Plaintiffs allege that several security analysis from major brokerage firms followed Keyuan stock and wrote reports that were distributed to customers of those firms and made publicly available, thus satisfying the second factor. *See FAC* ¶ 106. Plaintiffs have also alleged that numerous members of the National Association of Securities Dealers ("NASD") were active market-makers in Keyuan stock and that the company was eligible to file, and actually did file, an S-3 form, thus satisfying the third and fourth factors. *See FAC* ¶¶ 77, 109. Plaintiffs have also satisfied the fifth factor, as they allege that news about Keyuan stock was rapidly reflected and incorporated into Keyuan's stock price, such as when trading in Keyuan stock was halted in April 2011 and traded at a significantly reduced rate in October 2011. *See FAC* ¶¶ 9-10, 106. The Court concludes that Plaintiffs have adequately alleged fraud-on-the-market with these allegations, permitting Plaintiffs to rely on a presumption of reliance. *See Cammer*, 711 F. Supp. at 1283, n.30 (finding fraud on the market when the average weekly trading was 750,000 shares, market-makers issued competing price quotations, analysis followed the stock, and the stock reacted quickly to news of the fraud).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

*v. Economic Loss and Loss Causation*

To prove loss causation, a plaintiff must show that there is a "causal connection between the deceptive acts that form the basis for the claim or securities fraud and the injury suffered by plaintiffs." *Daou Sys.*, 411 F.3d at 1025; *see also Dura Pharm.*, 544 U.S. at 346 ("[A] plaintiff must prove the defendant's misrepresentation (or other fraudulent conduct) proximately caused plaintiff's economic loss."). Loss causation may be found when the plaintiffs allege an economic loss and "the misrepresentation is one substantial cause in the investment's decline in value." *Daou Sys.*, 411 F.3d at 1025.

Here, Plaintiffs allege that as a result of Keyuan's failure to disclose the related-party transactions in the financial statements and Offering Documents, trading in Keyuan stock ceased on April 1, 2011, and that the value of the stock fell 69 percent when trading re-opened. *FAC* ¶¶ 9-10. Plaintiffs further allege that investors suffered a loss as a result of the decline in value. *Id.* ¶ 10. Therefore, Plaintiffs have adequately pleaded economic loss and loss causation. *See Daou Sys.*, 411 F.3d at 1025; *Affiliated Ute*, 406 U.S. at 152 ("This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.").

*vi. Conclusion*

The Court concludes that Plaintiffs have alleged all of the elements of a § 10(b) claim as relates to the Public Class. Therefore, the Court DENIES Keyuan's motion to dismiss as to the Public Class.

VI. <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss, with leave to amend. Plaintiffs may submit a Second Amended Complaint no later than **November 22, 2012.**

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/39**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-9495 PSG (JCGx) | Date | November 1, 2012 |
| Title | *Cheung v. Keyuan Petrochemicals, Inc., et al.* | | |

______ : ______

Initials of Deputy Clerk ______

cc: