1   HOWARD M. PRIVETTE (SB# 137216)
    howardprivette@paulhastings.com
2   D. SCOTT CARLTON (SB# 239151)
    scottcarlton@paulhastings.com
3   PAUL HASTINGS LLP
    515 South Flower Street
4   Twenty-Fifth Floor
    Los Angeles, CA  90071-2228
5   Telephone:  1(213) 683-6000
    Facsimile:  1(213) 627-0705
6
    Attorneys for Defendant
7   AICHUN LI

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        SOUTHERN DIVISION

12

13   NEIL VANLEEUWEN AND              CASE NO. CV-11-09495-PSG (JCGx)
     RODNEY OMANOFF,
14   INDIVIDUALLY AND ON BEHALF       Class Action
     OF ALL OTHERS SIMILARLY
15   SITUATED,                        **MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT OF
16                 Plaintiffs,        DEFENDANT AICHUN LI'S
                                      MOTION TO DISMISS
17        vs.                         PLAINTIFFS' SECOND AMENDED
                                      COMPLAINT**
18   KEYUAN PETROCHEMICALS,
     INC., CHUNFENG TAO, AICHUN       [Fed. R. Civ. P. 4(m), 9(b), 12(b)(3) and
19   LI, WEIFENG XUE, DELIGHT         12(b)(6)]
     REWARD LIMITED,
20                                    [Notice of Motion and Motion to
                 Defendants.         Dismiss Plaintiffs' Second Amended
21                                   Complaint; Declaration of Howard M.
                                     Privette with Exhibits 1 & 2; Request
22                                   for Judicial Notice; [Proposed] Order
                                     filed and served concurrently herewith]
23
                                     Hearing
24
                                     Date:  April 22, 2013
25                                   Time: 1:30 p.m.
                                     Place: Courtroom 880
26                                   Judge: Hon. Philip S. Gutierrez

27

28

**TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   ARGUMENT ................................................................................................... 3

      A.    The Elements of Plaintiffs' Exchange Act Claims and the
            PSLRA's Heightened Pleading Requirements ..................................... 3

      B.    Plaintiffs Cannot State a Claim against Ms. Li with Respect to
            the Private Placement.......................................................................... 6

            1.    The Alleged False Statements and Omissions Related to
                  the Private Placement Cannot Be Attributed to Ms. Li ............. 6

            2.    Plaintiffs Have Not and Cannot Plead that Ms. Li Acted
                  with Scienter in Connection with the Private Placement ........... 8

            3.    Plaintiffs Fail to Allege a Viable Theory of Reliance in
                  Connection with the Private Placement...................................... 9

            4.    Plaintiffs Fail to Allege Loss Causation in Connection
                  with the Private Placement ...................................................... 11

            5.    Plaintiffs Have Not and Cannot Plead a Control Person
                  Claim under Section 20(a) against Ms. Li ................................ 12

            6.    Plaintiffs Have Not Satisfied the Lead Plaintiff
                  Procedures of the PSLRA with Respect to the Private
                  Offering Claims ...................................................................... 12

      C.    Plaintiffs Do Not State a Claim against Ms. Li with Respect to
            Keyuan's 2010 SEC Filings................................................................ 14

            1.    Plaintiffs Do Not Plead the Elements of a Section 10(b)
                  Claim against Ms. Li Related to Keyuan's 2010 SEC
                  Filings .................................................................................... 15

            2.    Plaintiffs Do Not Plead a Control Person Claim against
                  Ms. Li with Respect to the 2010 SEC Filings .......................... 18

      D.    The SAC Should Be Dismissed against Ms. Li Because
            Plaintiffs Failed to Timely Serve Ms. Li in Compliance with
            Rule 4(m) ............................................................................................ 19

      E.    The SAC Should Be Dismissed as against Ms. Li Because
            Venue Is Not Proper in California ........................................................ 21

III.  Conclusion ...................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abell v. Potomac Ins. Co.*,
    858 F.2d 1104 (5th Cir. 1988)..................................................................10

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) .................................................................9, 10, 11

*Arim v. First Horizon Home Loans*,
    No. C 11-01544 LB, 2012 WL 6783559 (N.D. Cal. Dec. 12, 2012)...........19, 20

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .......................................................................7

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999)..................................................................9

*Bohara v. Backus Hosp. Med. Benefit Plan*,
    390 F. Supp. 2d 957 (C.D. Cal. 2005)...........................................21, 22

*Bolden v. City of Topeka, Kansas*,
    441 F.3d 1129 (10th Cir. 2006).......................................................19

*Caiola v. Citibank, N.A.*,
    295 F.3d 312 (2d Cir. 2002) ...........................................................7

*Chiarella v. United States*,
    445 U.S. 222 (1980) .......................................................................7

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009)..................................................................9

*Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004), *abrogated on other grounds by Matrixx
    Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011) ........................17

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...................................................................11

*Emp'rs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
    353 F.3d 1125 (9th Cir. 2004)..................................................................5

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ........................................................................ 8, 16

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .......................................................................... 5, 6

*Hemming v. Alfin Fragrances, Inc.*,
690 F. Supp. 239 (S.D.N.Y. 1988) ..................................................................... 18

*Holden v. Hagopian*,
978 F.2d 1115 (9th Cir. 1992) ............................................................................. 4

*Hope v. Otis Elevator Co.*,
389 F. Supp. 2d 1235 (C.D. Cal. 2005) ........................................................ 21, 22

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ........................................................................ 3, 12

*In re Coinstar Inc. Sec. Litig.*,
No. C11-133 MJP, 2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ............... 7, 8

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................................... 4

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ............................................................................. 3

*In re Cybertronics, Inc. Sec. Litig.*,
468 F. Supp. 2d 936 (S.D. Tex. 2006) ................................................................ 13

*In re Daou Sys. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) ........................................................................ 5, 16

*In re Duncan*,
No. NC-09-1372-KiSaH, 2011 WL 3300162 (9th Cir. BAP Feb. 4, 2011) ........ 9

*In re Eisen*,
31 F.3d 1447 (9th Cir. 1994) .............................................................................. 20

*In re GlenFed Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ............................................................................... 4

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*In re Hansen Natural Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007)........................................................15, 16

5

6

*In re LeapFrog Enters., Inc. Sec. Litig.*,
No. 03 Civ. 5421, 2005 WL 5327775 (N.D. Cal. July 5, 2005) ........................13

7

8

*In re Lockheed Martin Corp. Sec. Litig.*,
272 F. Supp. 2d 928 (C.D. Cal. 2002)...................................................................4

9

10

*In re Maxim Integrated Prods., Inc. Sec. Litig.*,
639 F. Supp. 2d 1038 (N.D. Cal. 2009)................................................................11

11

*In re Medicis Pharm. Corp. Sec. Litig.*
Nos. CV-08-1821-PHX-GMS, 2010 WL 3154863 (D. Ariz. Aug. 9, 2010).....16

12

13

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000)................................................................18

14

15

*In re Read-Rite Corp. Sec. Litig.*,
335 F.3d 843 (9th Cir. 2003) .................................................................................5

16

17

*In re Select Comfort Corp. Sec. Litig.*,
No. 99 Civ. 884, 2000 WL 35529101 (D. Minn. Jan. 27, 2000) .......................13

18

19

*In re Silicon Graphics Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .................................................................................4

20

21

*In re Syncor Int'l Corp. Sec. Litig.*,
327 F. Supp. 2d 1149 (C.D. Cal. 2004), *rev'd in part on other grounds, In
re Syncor Intern. Corp. Sec. Litig.*, 239 F. App'x. 318 (9th Cir. 2007)..............4

22

23

*In re U.S. Aggregates, Inc. Secs. Litig.*,
235 F.Supp.2d 1063 (N.D. Cal. 2002)................................................................16

24

25

*In re Vantive Corp. Sec. Litig.*,
110 F. Supp. 2d 1209 (N.D. Cal. 2000)................................................................4

26

27

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ...............................................................4, 5, 16

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Verifone Holdings, Inc. Sec. Litig.*,
  No. C 07-06140 MHP, 2009 WL 1458211 (N.D. Cal. May 26, 2009).............. 16

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007)............................................................ 18

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ...................................................................... 15, 16

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
  416 F.3d 940 (9th Cir. 2005) ............................................................................ 5

*Looman v. Montana*,
  No. CV 11-143-M-DWM-JCL, 2012 WL 6775021 (D. Mont. Nov. 30,
  2012)................................................................................................................ 20

*McGuckin v. United States*,
  918 F.2d 811 (9th Cir. 2006) ............................................................................ 19

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .......................................................................... 11

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) .............................................................................. 7

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .................................................................................. 6

*Nissan Motor Co. v. Nissan Computer Corp.*,
  204 F.R.D. 460 (C.D. Cal. 2001) ...................................................................... 3

*No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding
  Corp.*,
  320 F.3d 920 (9th Cir. 2003) .............................................................................. 5

*Pagtalunan v. Galaza*,
  291 F.3d 639 (9th Cir. 2002) ............................................................................ 20

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ................................................................. 9, 10, 18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Piedmont Label Co. v. Sun Garden Packing Co.*,
   598 F.2d 491 (9th Cir. 1979) ........................................................................ 21, 22

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004) ............................................................................... 10

*Pratt v. Rowland*,
   769 F. Supp. 1128 (N.D. Cal. 1991) .................................................................... 21

*Reiger v. PricewaterhouseCoopers LLP*,
   117 F. Supp. 2d 1003 (S.D. Cal. 2000), *aff'd sub nom*, *DSAM Global*
   *Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) .................... 15

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ................................................................................. 5

*Rudolph v. UT Starcom, Inc.*,
   No. C 07-04578 SI, 2009 WL 248370 (N.D. Cal. Feb. 2, 2009) ........................ 19

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ................................................................................. 5

*Spectrum Fin. Cos. v. Marconsult, Inc.*,
   608 F.2d 377 (9th Cir. 1979) ......................................................................... 10, 11

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................. 6, 7

*TeleVideo Sys., Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) ............................................................................... 20

*Toscano v. Cambra*,
   No. C00-1164SI(PR), 2003 WL 21439219 (N.D. Cal. June 10, 2003) ............. 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .......................................................................................... 4, 5

*Waldman v. Wachovia Corp.*,
   No. 08 Civ. 2913(SAS), 2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009) ........... 13

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ................................................................ 3

*Wool v. Tandem Computers, Inc.*,
818 F.2d 1433 (9th Cir. 1987) ............................................................. 18

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
655 F.3d 1039 (9th Cir. 2011.) .......................................................... 11

*Yourish v. California Amplifier*,
191 F.3d 983 (9th Cir. 1999) ............................................................. 20

## STATUTES

15 U.S.C. §78t(a) ...................................................................................... 3

15 U.S.C. § 78u-4(b) ............................................................................... 4

15 U.S.C. § 78u-4(b)(2) .......................................................................... 4

15 U.S.C. § 78u4(a)(3)(A) ............................................................. 12, 13

28 U.S.C. § 1406(a) .............................................................................. 21

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5(b) ......................................................................... 7

Fed. R. Civ. Proc. 4(m) ........................................................................ 19

Federal Practice and Procedure § 3829 (2d ed. 1986) .......................... 21

H.R. Rep. No. 104-369 (1995) ............................................................. 12

## I.   PRELIMINARY STATEMENT

The Second Amended Complaint ("SAC") purports to represent a melding of two separate sets of claims:  (1) claims by persons who purchased units comprised of bundles of convertible preferred stock, warrants, and common stock of Keyuan Petrochemicals, Inc. ("Keyuan" or the "Company") in a private placement made pursuant to an allegedly misleading confidential private offering memorandum dated March 22, 2010 (the "Private Offering Claims" by the "Private Offering Purchasers"), and (2) claims by persons who purchased Keyuan common stock over the NASDAQ exchange between August 16, 2010 and October 7, 2011 (the "Public Claims" by the "Public Purchasers").

Both sets of claims are substantively and procedurally deficient and, as explained herein, should be dismissed as to Defendant Aichun Li ("Ms. Li").

With respect to the Private Offering Claims, Ms. Li was not even employed by Keyuan at the time it issued the allegedly misleading "Offering Documents" underlying the Company's early-2010 private placement transactions.  As alleged in the SAC, the private placement Offering Documents were dated *March 22, 2010* – but Ms. Li was not hired to serve as Keyuan's Chief Financial Officer until *May 7, 2010*.  Under the circumstances, unable to allege that Ms. Li had anything to do with the preparation of those Offering Documents, Plaintiffs necessarily fail to plead the elements of the Private Offering Claims against her under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), including the making of a false or misleading statement, violation of any alleged duty to disclose related party transactions, scienter, reliance, and loss causation.

*In addition*, the Private Offering Claims are fatally deficient in that Plaintiffs failed to follow the procedures necessary to establish a Lead Plaintiff with standing to bring such claims under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Without so much as leave of Court, Plaintiffs simply added these claims and a "named plaintiff" who allegedly purchased units in Keyuan's private

placement (Rodney Omanoff), *after* the Court established a Lead Plaintiff in relation to the Public Claims (Neil Vanleeuwen).  Unless and until the statutory notice and motion procedures required by the PSLRA are satisfied, such claims may not be pursued as a class action under the federal securities laws.

With respect to the Public Claims, Plaintiffs allege that Ms. Li should be liable for statements or omissions made in filings Keyuan made with the SEC soon after she started with the Company in mid-2010.  Echoing their claims about the private placement Offering Documents, Plaintiffs allege that the SEC filings did not disclose the full extent of Keyuan's related party transactions.  However, as discussed below in more detail, ***and as the Court already recognized in a prior order assessing a motion to dismiss filed by Keyuan in this case***, bare allegations about Ms. Li's new management role with the Company, coupled with an alleged violation of U.S. GAAP, are wholly insufficient to satisfy the PSLRA's requirement that Plaintiffs plead facts with particularity supporting a strong inference that Ms. Li acted with scienter.  For this reason alone, the Public Claims must be dismissed as against Ms. Li.

*In addition*, there are at least two additional, independent bases to dismiss Ms. Li from this action.  Plaintiffs inexplicably waited ***429 days*** after filing this action before serving Ms. Li, far beyond the 120-day limit established by Rule 4(m) of the Federal Rules of Civil Procedure and reiterated in this Court's Standing Order Regarding Newly Assigned Cases.  Because Plaintiffs cannot demonstrate good cause for the delay, the SAC should be dismissed against Ms. Li.  Similarly, Plaintiffs have not and cannot meet their burden to establish that venue is proper in the Central District of California for their purported claims against Ms. Li, because there is simply no alleged connection to this District that meets the requirements of 28 U.S.C. § 1391(b) or 15 U.S.C. § 78aa.  Under the circumstances, the SAC should be dismissed as against Ms. Li, who resides in North Carolina.

## II.   ARGUMENT

### A.   The Elements of Plaintiffs' Exchange Act Claims and the PSLRA's Heightened Pleading Requirements

Plaintiffs purport to bring two legal claims against Ms. Li with respect to both the Private Offering Claims and the Public Claims.  With respect to the first legal claim, under Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, a plaintiff in a private civil action like this one must plead and prove a number of separate elements, including: (1) falsity, meaning a material misrepresentation by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1107-08 (9th Cir. 2010).  Plaintiffs' second legal claim, under Section 20(a) of the Exchange Act, provides for a form of secondary liability for those who "control" another person's primary violation of the Securities Exchange Act of 1934.  15 U.S.C. § 78t(a).  As such, a Section 20(a) claim is necessarily dependent upon establishing a valid Exchange Act claim against the "controlled" person, as well as the defendant's culpable "control" over the violation.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

Particularly since Congress passed the PSLRA, motions to dismiss in private securities class actions serve an important gatekeeping function, intended to ensure that plaintiffs satisfy a high standard of fact pleading with respect to the elements of their claims, so as to demonstrate that it is appropriate to proceed with such claims against each particular defendant.  Thus, a motion to dismiss under Rule 12(b)(6) is based upon the facts alleged in the complaint, any documents attached to it, and matters appropriately subject to judicial notice.  But a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *Nissan Motor Co. v. Nissan Computer Corp.*, 204 F.R.D. 460, 463

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS SAC

n.5 (C.D. Cal. 2001) ("Under 12(b)(6), 'the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.'").[1]  The court tests the sufficiency of the SAC only after excising from consideration all unsupported conclusory allegations.  *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

As with all claims sounding in fraud, allegations in private civil securities lawsuits are subject to the stringent pleading requirements imposed by Rule 9(b) – as strengthened by Congress in the PSLRA.  *See* 15 U.S.C. § 78u-4(b); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002); *In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).  Thus, for example, specific statements alleged to be false or misleading must be pled with particularity.  This means that Plaintiffs are required to "list . . . all relevant circumstances in great detail."  *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999).[2]  Furthermore, Plaintiffs must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added).  In other words, the complaint should be rejected if it

---

[1]  When considering a motion to dismiss in securities cases, the Supreme Court has stated that courts should consider the allegations in the complaint, and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1076 (N.D. Cal. 2005) (Under "incorporation by reference" doctrine, Ninth Circuit considers content of SEC filings); *In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1213 n.8 (N.D. Cal. 2000) ("[P]ress releases, analyst reports and SEC documents alleged in the FCAC (and the SEC forms referenced in the press releases) are properly subject to judicial review at [motion to dismiss] stage of the litigation.").

[2]  Courts within the Ninth Circuit accept that prior case law allowing group pleading "did not survive the [the PSLRA.  As such, the individual defendants cannot be liable for the false statements found in the complaint on a group-pleading theory."  *In re Syncor Int'l Corp. Sec. Litig.*, 327 F. Supp. 2d 1149, 1172 (C.D. Cal. 2004), *rev'd in part on other grounds, In re Syncor Int'l. Corp. Sec. Litig.*, 239 F. App'x. 318, 321 (9th Cir. 2007); *see also In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 928, 936 (C.D. Cal. 2002).

MEMORANDUM OF POINTS & AUTHORITIES
                          IN SUPPORT OF MOTION TO DISMISS SAC

fails to "allege contemporaneous facts in sufficient detail and in a manner that would create a strong inference that the alleged adverse facts were known at the time of the challenged statements." *Vantive*, 283 F.3d at 1085 (citing *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001)); *see also In re Daou Sys. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005).

This statutory requirement that plaintiffs plead facts supporting a "strong" inference of scienter means that "the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (emphasis in original); *accord, e.g.*, *Emp'rs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1134 (9th Cir. 2004).  Indeed, the Supreme Court has emphasized that "[t]he strength of an inference cannot be decided in a vacuum." *Tellabs*, 551 U.S. at 323.  Accordingly, under the PSLRA, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*  This requires a showing of "knowing" or "intentional" conduct. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).[3]  Finally, although the Court must consider the allegations "as a whole" in assessing the required strong inference, the Court must also analyze scienter separately for each alleged misrepresentation and each defendant.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005); *No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 932 (9th Cir. 2003); *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003).

As set forth below, Plaintiffs in this case have not satisfied their pleading requirements, and the SAC does not state a legally cognizable claim against Ms. Li.

---

[3]  While the Ninth Circuit recognizes that some form of reckless conduct can meet this standard, it is only appropriate "to the extent that it reflects some degree of intentional or conscious misconduct, or what we have called 'deliberate recklessness.'" *South Ferry LP*, 542 F.3d at 782.

### B.   Plaintiffs Cannot State a Claim against Ms. Li with Respect to the Private Placement

Perhaps the most obvious and basic reason why Ms. Li cannot be liable for the Private Offering Claims is the fact that she did not work for Keyuan at the time it prepared the private placement Offering Documents, which were dated *March 22, 2010*.  (*See* SAC ¶ 1(b).)  The Offering Documents attached Keyuan's audited financial statements for the fiscal years ended December 31, 2008 and 2009, and a PowerPoint presentation prepared by TriPoint Global Equities, LLC.  (*Id.* at ¶ 27.) According to the allegations in the SAC, the Offering Documents were prepared by Keyuan's Chairman, President, and Chief Executive Officer, Defendant Chunfeng Tao ("Tao"), who at the time was also serving as the Company's Chief Financial Officer.  (*Id.* at ¶¶ 20, 33.)  Ms. Li was hired as Keyuan's CFO in the United States only *after* the Offering Documents were already prepared.  She started with the Company on *May 7, 2010*.  (Declaration of Howard M. Privette in Support of Motion by Defendant Aichun Li to Dismiss Plaintiffs' Second Amended Complaint ("Privette Decl."), Ex. 1 at 4 (Form 8-K (May 10, 2010)).)  Not surprisingly, Plaintiffs have not – and cannot – plead particular facts establishing the elements of the Private Offering Claims against Ms. Li.

### 1.   The Alleged False Statements and Omissions Related to the Private Placement Cannot Be Attributed to Ms. Li

The first and most fundamental element of a Section 10(b) claim requires that the plaintiff allege with particularity that the defendant actually made the material misrepresentation or omission at issue.  *See Gompper*, 298 F.3d at 895 (statements must be pled with particularity).  If the plaintiff cannot attribute a misrepresentation or omission to the defendant, the claim must be dismissed.  *See Neubronner v. Milken*, 6 F.3d 666, 667-68 (9th Cir. 1993) (dismissing Section 10(b) claim for failing to attribute misrepresentations to the defendant); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ("In the context of a fraud

1  suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the
2  role of [each] defendant[ ] in the alleged fraudulent scheme.'").

3        According to the allegations in the SAC, the Private Offering Purchasers
4  were misled by material misrepresentations or omissions about related party
5  transactions made in the private placement Offering Documents.  (*See* SAC ¶¶ 1(b),
6  9, 27-30, 92.)  According to the allegations in the SAC, Defendant Tao prepared the
7  Offering Documents.  (*Id.* at ¶¶ 33, 138.)  Notably, there are no allegations in the
8  SAC that Ms. Li had any involvement with the preparation of the Offering
9  Documents.  *See, e.g., Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540
10 (9th Cir. 1989) (Rule 9(b) requires a plaintiff to attribute particular fraudulent
11 statements or acts to individual defendants); *In re Coinstar Inc. Sec. Litig.*, No.
12 C11-133 MJP, 2011 WL 4712206, at *3 (W.D. Wash. Oct. 6, 2011) (plaintiff must
13 plead with particularity facts that establish attribution).  In fact, Ms. Li did not
14 become associated with Keyuan until **May 7, 2010**.  (Privette Decl., Ex. 1 at 4
15 (Form 8-K (May 10, 2010) (emphasis added)).)  This was **after** the private
16 placement Offering Documents were prepared and distributed to investors.  For this
17 very basic reason, then, the Private Offering Claims fail as a matter of law, and
18 must be dismissed as to Ms. Li. [4]

19
20

_____

21 [4] To the extent Plaintiffs try to characterize their claims as based on omissions, the
   claims fail as against Ms. Li because Ms. Li had no duty of disclosure to Plaintiffs.  In
22 a securities case, there must be facts establishing some duty of disclosure on the part of
   the defendant.  *See Chiarella v. United States*, 445 U.S. 222, 228 (1980); *see also*
23 *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17, (1988) ("Silence, absent a duty to
   disclose, is not misleading under Rule 10b-5.").  A duty to disclose may only arise
24 "from a relationship of trust and confidence between parties to a transaction,"
   *Chiarella*, 445 U.S. at 230, or when one has made a prior statement that would be
25 rendered misleading without additional disclosure.  *See Caiola v. Citibank, N.A.*, 295
   F.3d 312, 331 (2d Cir. 2002) ("[U]pon choosing to speak, one must speak truthfully
26 about material issues."); 17 C.F.R. § 240.10b-5(b).  The SAC contains no factual
   allegations supporting Ms. Li's duty to speak under these circumstances.  There are no
27 allegations connecting Ms. Li to Keyuan, Plaintiffs, or the Private Purchasers at the
   time of the private placement, let alone a relationship of trust and confidence giving
28 rise to a duty to speak.

MEMORANDUM OF POINTS & AUTHORITIES
                IN SUPPORT OF MOTION TO DISMISS SAC

2.     **Plaintiffs Have Not and Cannot Plead that Ms. Li Acted with Scienter in Connection with the Private Placement**

Unable to attribute any alleged misstatements or omissions to her, it is not surprising that Plaintiffs also fail to allege any particularized facts that Ms. Li acted with scienter in relation to Keyuan's Offering Documents.  Notably, the Court already addressed this issue in its Order on Keyuan's Motion to Dismiss the First Amended Complaint ("FAC").  (Dkt. No. 46 at 8.)  With respect to the private placement, the Court stated:

> In this case, Plaintiffs have alleged no specific details about how any of the Individual Defendants were involved in the preparation of the Offering Documents. Plaintiffs do not allege that Defendants oversaw the preparation of the Offering Documents or that they were familiar with, prepared, or approved the financial reports that were submitted with the Offering Documents. Plaintiffs only allege that Tao and Li "must have signed" false management representation letters submitted to Keyuan's auditors because they were top management at the company and it would have been standard practice for them to have done so.  FAC ¶ 59 . . . Such allegations, relying on several inferential steps, are insufficient under the heightened pleading standards of the PSLRA.  Where courts have found scienter based on a defendant's management role, they have done so based on much more specific allegations of what the defendants actually did to perpetrate the fraud, not what they "must have" done.

(*Id.*)

The allegations in the SAC against Ms. Li are even less compelling.  Unlike the corporate scienter allegations against Keyuan, which relied on imputing Defendant Tao's state of mind to the Company at the time the Offering Documents were prepared, Ms. Li was not even associated with Keyuan at that time.  As noted above, Ms. Li was not hired by Keyuan until May 7, 2010, *after* the Offering Documents had already been prepared.  (Privette Decl., Ex. 1 at 4 (Form 8-K (May 10, 2010)).)  Under the PSLRA, allegations that an individual defendant had a role in management are, in and of themselves, patently insufficient to support a claim of scienter.  *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 740, 745-47 (9th

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS SAC

1  Cir. 2008) (allegations insufficient where plaintiffs failed to plead any facts

2  demonstrating that company's president and CEO personally knew about the illegal

3  conduct).  Here, Plaintiffs are unable to plead even that much with respect to Ms.

4  Li, who did not have ***any*** management role whatsoever at Keyuan at the time the

5  Offering Documents were prepared.  Under the circumstances, Plaintiffs have not

6  alleged any particularized facts sufficient to support a strong inference that Ms. Li

7  acted with the requisite level of scienter with respect to the Offering Documents.

8
9  ### 3.   Plaintiffs Fail to Allege a Viable Theory of Reliance in Connection with the Private Placement

10  A Section 10(b) claim requires a plaintiff to plead and prove justifiable

11  reliance.  *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999); *see also*

12  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996)

13  (*en banc*) (reliance is an essential element of a Section 10(b) claim).  Here,

14  Plaintiffs contend that they should be afforded a presumption of reliance at the

15  pleading stage because they purport to allege a material omission.  (SAC ¶ 120

16  (citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972).)[5]

17  While Plaintiffs are correct that a presumption of reliance may be afforded in

18  properly alleged omissions cases, this is not one of those rare cases.

19  The *Affiliated Ute* presumption of reliance "is limited to cases that 'can be

20  characterized as . . . primarily alleg[ing] omissions.'"  *Desai v. Deutsche Bank Sec.*

21  *Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009); *see also In re Duncan*, No. NC-09-1372-

22  KiSaH, 2011 WL 3300162, at *6 (9th Cir. BAP Feb. 4, 2011) ("In order to

23

24  ---
[5]  During the Local Rule 7-3 conference with Plaintiffs' counsel prior to filing this

25  motion, Plaintiffs' counsel conceded that Plaintiffs are not pursuing a "fraud-on-the-market" theory of reliance in connection with the Private Offering Claims.  (*See* SAC ¶ 121.) Indeed, the fraud on the market doctrine could not apply to these claims.  Among

26  other things, when investors purchased units in Keyuan's private placement, they were told that there was no active trading market for the units.  (SAC Ex. 1 at 25 (private

27  placement Offering Documents).)  Additionally, investors were informed that unit price "was not established in a competitive market, but was arbitrarily determined by

28  the Company and the Placement Agent."  (*Id.*)

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS SAC

1    determine whether the presumption applies, the court must analytically characterize

2    the action as either primarily a nondisclosure case or a positive misrepresentation

3    case."). Moreover, the *Affiliated Ute* presumption only applies where a duty to

4    disclose exists. *See Spectrum Fin. Cos. v. Marconsult, Inc.*, 608 F.2d 377, 384 (9th

5    Cir. 1979) (Ferguson, J., concurring).

6         In this case, Plaintiffs attempt to characterize Keyuan's allegedly incomplete

7    statements about related party transactions as "pure" omissions. This effort is

8    belied, however, by Plaintiffs' acknowledgement that Keyuan did disclose "certain

9    related party transactions" in the Offering Documents. (*See* SAC ¶ 92.) Thus, this

10   is not a "pure" omissions case, but one in which Plaintiffs complain that Keyuan's

11   affirmative disclosures were incomplete, and thus misleading. *See Abell v.*

12   *Potomac Ins. Co.*, 858 F.2d 1104, 1119 (5th Cir. 1988) ("[T]he *Ute* presumption is

13   limited to cases, like *Ute* itself, in which the plaintiffs have based their complaint

14   primarily upon alleged omissions. Such nondisclosure suits are those in which the

15   complaint is grounded primarily in allegations that the defendant has ***failed to***

16   ***disclose any information whatsoever relating to material facts*** about which the

17   defendant has a duty to the plaintiff to disclose." (emphasis added)). The SAC,

18   therefore, reflects allegations about misrepresentations, not simple omissions. (*See*

19   SAC ¶ 35(i) (Keyuan's related party transactions were "misrepresented"); *id. at* ¶

20   118(c) (Defendants "misrepresented material facts. . . ."); *id.* at ¶ 22 (Defendant

21   Xue was terminated "as a result of the Company's misstated SEC filings.").) Under

22   the circumstances, Plaintiffs are not afforded a presumption of reliance under

23   *Affiliate Ute*. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004)

24   ("[T]he presumption applies only in cases primarily involving 'a failure to disclose'

25   – that is, cases based on omissions as opposed to affirmative misrepresentations.").

26        But even assuming that this action could be properly characterized as an

27   omissions case, Plaintiffs still have not established that Ms. Li had a duty to

28   disclose. *See Paracor*, 96 F.3d at 1157. Ms. Li did not hold any management role

at Keyuan at the time the allegedly misleading statements or omissions were made in the Offering Documents.  The lack of any legal duty is equally fatal to the *Affiliated Ute* presumption of reliance.  *Spectrum*, 608 F.2d at 384.

### 4.    Plaintiffs Fail to Allege Loss Causation in Connection with the Private Placement

While Plaintiffs allege that they were damaged by "Defendants' violations of federal securities laws," they fail to provide any factual details supporting this claim.  (SAC ¶ 1.)  To satisfy the element of loss causation, Plaintiffs must allege that "the subject of the fraudulent statement or omission was the cause of the actual loss."  *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d 1038, 1044-45 (N.D. Cal. 2009).  A plaintiff must usually "allege that the defendant's 'share price fell significantly after the truth became known.'"  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).  Plaintiffs' SAC fails to plead any causal connection between any actions by Ms. Li and Plaintiffs' alleged losses in connection with the private placement.  *See Dura*, 544 U.S. at 342.

For private transactions in particular, the Ninth Circuit requires a plaintiff to "prove loss by showing that a misrepresentation or omission caused him or her to engage in a transaction and that the revelation of the truth is directly related to the economic loss alleged."  *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1053 (9th Cir. 2011.)  The SAC does not state any facts to support that the alleged fraud caused loss in the units that Plaintiffs purchased in the private placement.  Indeed, Plaintiffs' invocation of the *Affiliate Ute* presumption, expressly disclaiming the "need to prove reliance" (SAC ¶ 120), undermines any contention that "a misrepresentation or omission caused [Plaintiffs] to engage in a transaction."  *WPP Luxembourg*, 655 F.3d at 1053.  Plaintiffs' failure to plead facts supporting the element of loss causation warrants dismissal of the Private Offering Claims.

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS SAC

**5.**    **Plaintiffs Have Not and Cannot Plead a Control Person Claim under Section 20(a) against Ms. Li**

As set forth above, the core element of a so-called "control person" claim under Section 20(a) is that the defendant culpably controlled the wrongdoing of the person(s) who committed a primary violation of Section 10(b).  *See Howard*, 228 F.3d at 1065.  Here, Plaintiffs do not and cannot allege facts showing that Ms. Li was even affiliated with Keyuan at the time the Offering Documents were prepared, let alone facts showing that she "controlled" the preparation of the allegedly incomplete and misleading aspects of those documents.[6]  Accordingly, there is no basis whatsoever for a Section 20(a) claim against Ms. Li with respect to the private placement, and this claim must be dismissed as against her.

**6.**    **Plaintiffs Have Not Satisfied the Lead Plaintiff Procedures of the PSLRA with Respect to the Private Offering Claims**

Separate and apart from the fatal substantive deficiencies in the pleading of the Private Offering Claims against Ms. Li, Plaintiffs do not have standing to bring such claims as a class action under the federal securities laws because they have not complied with the statutory "Lead Plaintiff" requirements with respect to those claims.  The PSLRA requires "not later than 20 days after the date on which the complaint is filed . . . a notice advising members of the purported plaintiff class . . . of the pendency of the action, the claims asserted therein, and the purported class period."  15 U.S.C. § 78u-4(a)(3)(A).  The requirement is "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation[,] parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders."  (Privette Decl., Ex. 2 at 15

---

[6]  Indeed, Plaintiffs allege that, "[a]t the time of the Private Placement, [Defendant] Tao was Keyuan's Chairman, President, Chief Executive Officer and Chief Financial Officer [and, t]hus, Tao was **the** controlling person of Keyuan under Section 20(a) of the Exchange Act."  (SAC ¶ 33 (emphasis added).)

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS SAC

(Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369 (1995)).)

In this case, the original Complaint and the required early notice publication indicated that the putative class action sought relief on behalf of the Public Purchasers. (*See* Dkt. No. 1 at ¶ 1; Dkt. No. 7, Ex. 1.) Thereafter, Plaintiff Vanleeuwen moved and was appointed Lead Plaintiff for the Public Purchasers pursuant to the PSLRA. (Dkt. Nos. 19, 29.) On May 29, 2012, Plaintiffs filed the FAC, which added Plaintiff Omanoff as a new party and added the newly alleged class of Private Purchasers. (*See* Dkt. No. 32 at ¶ 1.) At no time did Plaintiffs issue early notice "advising members of the [class of Private Purchasers]" of their intent to bring federal securities claims on their behalf. 15 U.S.C. § 78u-4(a)(3)(A).

The PSLRA "does not contemplate the unapproved addition of new claims or new classes of plaintiffs after separate cases are consolidated or after a lead plaintiff or plaintiffs are appointed." *In re Select Comfort Corp. Sec. Litig.*, No. 99 Civ. 884, 2000 WL 35529101, at *7-8 (D. Minn. Jan. 27, 2000) (requiring new notice where "entirely new factual and legal allegations . . . affect[ed] a new class of plaintiffs"). Instead, "new class members are entitled to notice regarding their claims and potential lead plaintiffs are entitled to a reasonable opportunity to identify themselves and present themselves for the Court's consideration." *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913(SAS), 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009); *see also In re LeapFrog Enters., Inc. Sec. Litig.*, No. 03 Civ. 5421, 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005) (requiring republication where the consolidated complaint included new allegations and expanded the class period by nine months).

Plaintiffs' failure to comply with the Lead Plaintiff requirements of the PSLRA with respect to the Private Offering Claims is fatal to their claims. Without meeting those threshold requirements, Plaintiffs do not have statutory standing to pursue claims on behalf of the Private Purchasers. *See In re Select Comfort Corp.*,

No. 99 Civ. 884, 2000 WL 35529101, at *13; *see also In re Cybertronics, Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 939-40 (S.D. Tex. 2006) (requiring republication where the amended complaint "substantially expand[ed] the potential class of plaintiffs by adding new claims and significantly expanding the class period"). For this separate and independent reason, then, the Private Offering Claims must be dismissed.

### C.   Plaintiffs Do Not State a Claim against Ms. Li with Respect to Keyuan's 2010 SEC Filings

Keyuan, through its operating subsidiaries, is a manufacturer and supplier of petrochemical products in the People's Republic of China ("PRC"). (SAC ¶ 18.) Keyuan became publicly traded in the United States on April 22, 2010. (*Id.* at ¶ 19.) Shortly thereafter, beginning on May 7, 2010, Ms. Li was hired to serve as Keyuan's CFO in the United States. (Privette Decl., Ex. 1 at 4 (Form 8-K (May 10, 2010)).) On August 16, 2010, a few months after Ms. Li started with the Company, Keyuan filed with the SEC its first Form 10-Q, covering the second quarter of 2010, which ended just a few weeks after Ms. Li's arrival. (SAC ¶ 91(a).) The Company also filed, on October 15, 2010, a Form 10-Q containing interim financial information for the third quarter ending September 30, 2010. (*Id.* at ¶ 91(b).)

According to Plaintiffs, these SEC filings were false and misleading because, like the private placement Offering Documents, they allegedly misrepresented the full extent of Keyuan's related party transactions. (SAC ¶¶ 83-84.)[7] Plaintiffs allege that such transactions included sales of products and purchases of raw materials from companies affiliated with Defendant Tao and his family members. (*Id.*) Plaintiffs allege that the undisclosed related party transactions benefited Defendant Tao because those companies affiliated with him received better terms

---

[7] The SAC also references certain Form S-1 registration statements filed by Keyuan in 2010, but does not explain what, if any, misstatements of omissions were made in the registrations statements, or what, if any, connection that the registrations have with Ms. Li. (*See* SAC ¶ 91(c).) Even assuming that SAC pled a misstatement or omission in the registrations statements, the SAC fails to plead scienter as to Ms. Li.

from the Company than non-related parties.  (*Id.* at ¶¶ 85-88.)

As set forth below, Plaintiffs' allegations concerning these SEC filings are patently insufficient to state a cognizable claim against Ms. Li.

### 1. Plaintiffs Do Not Plead the Elements of a Section 10(b) Claim against Ms. Li Related to Keyuan's 2010 SEC Filings

Plaintiffs' allegations with respect to Keyuan's 2010 SEC filings suffer from similar deficiencies as those that mandate dismissal of the Private Offering Claims against Ms. Li.  While Ms. Li was an officer of Keyuan at the time of the SEC filings, there remains a dearth of allegations establishing Ms. Li's participation in the preparation of those filings, or establishing that Ms. Li acted with scienter.  (*See* SAC ¶¶ 62-73, 105-09.)  Indeed, the reasonable inferences drawn from the factual allegations strongly support the conclusion that Ms. Li acted with a non-culpable state of mind in connection with the allegations in the SAC.

At most, Plaintiffs allege Ms. Li held the title of the Company's CFO, and that a violation of U.S. GAAP occurred while Ms. Li held that title.  (SAC ¶¶ 21, 91-104.)  With respect to purported GAAP violations, the Ninth Circuit has emphasized repeatedly that "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1157 (C.D. Cal. 2007).  GAAP violations alone "merely suggest that either management or the accountant missed something and . . . may establish negligence but can never establish scienter under Rule 10b-5 and the Reform Act."  *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1010 (S.D. Cal. 2000), *aff'd sub nom*, *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).  Thus, courts require more:

> At the very least, the plaintiff must present facts demonstrating that the defendant was aware of the relevant GAAP principle and that this defendant knew how that principal was being interpreted.  The plaintiff must then plead facts explaining how the defendant's incorrect interpretation

was so unreasonable or obviously wrong that it should give rise to an inference of deliberate wrongdoing.

*In re Medicis Pharm. Corp. Sec. Litig.* Nos. CV–08–1821–PHX–GMS, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010).[8]

In this case, the Court already determined that cobbling together these kinds of allegations does not establish a strong inference of an individual's scienter. (Dkt. No. 46 at 7-8 (citing *Daou*, 411 F.3d at 1022-23, and *Glazer Capital Mgmt.*, 549 F.3d at 745-47.)  Indeed, even where a plaintiff can show that a person responsible for making accounting decisions both understood the relevant accounting standards and possessed information regarding the underlying facts, to state a claim against that person under Section 10(b), the plaintiff must plead facts showing "that the accounting judgments which were made were such that *no reasonable accountant* would have made the same decisions if confronted with the same facts." *Worlds of Wonder*, 35 F.3d at 1426 (emphasis added); *In re U.S. Aggregates, Inc. Secs. Litig.*, 235 F.Supp.2d 1063, 1073 (N.D. Cal. 2002) (referring to *DSAM* for the proposition that "even an obvious failure to follow GAAP does not [without more] give rise to an inference of scienter"); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1163 (C.D. Cal. 2007) ("even *deliberate* GAAP violations do not by themselves establish scienter" (emphasis in original)).[9]  Nothing in Plaintiffs' SAC even comes

---

[8]  Plaintiffs even admit that the failure to disclose the full extent of the related party transactions was at most "an oversight or misuse of facts . . . ." (SAC ¶ 54.) Negligence, "even inexcusable negligence is not equivalent" to the state of mind required by Section 10(b) and the PSLRA.  *See In re Verifone Holdings, Inc. Sec. Litig.*, No. C 07-06140 MHP, 2009 WL 1458211, at *8 (N.D. Cal. May 26, 2009).

[9] The Ninth Circuit has likewise rejected allegations premised on the assumption that a corporate director or executive "must have known" certain information because of his position with the company.  *See Read-Rite*, 335 F.3d at 848.  Courts in this District have specifically found that "[i]t also is insufficient to demonstrate a strong inference of scienter for Plaintiff to allege that various of the Individual Defendants held positions on various committees, such as the executive, audit, and compensation committees." *Hansen*, 527 F. Supp. 2d at 1159.  Indeed, even unsupported allegations of "defendants' 'hands-on' management style, their 'interaction with other corporate officers and employees, their attendance at management and board meetings, and reports generated on a weekly and monthly basis . . . are insufficient . . . as a means of establishing knowledge." *Vantive*, 283 F.3d at 1087-88.

close to meeting this standard.  Rather, when viewed holistically, countervailing non-fraudulent inferences are much more plausible under the facts (or lack thereof) alleged against Ms. Li.[10]

Ms. Li is not alleged to have any association with any of the related companies, and was not employed by Keyuan until a few weeks after the Company became publicly traded on April 22, 2010.  Ms. Li was hired by Keyuan to assist with the transition from a privately-held Chinese company to a publicly-traded U.S. company.  Prior to Ms. Li's arrival at Keyuan, Keyuan issued historical *audited* financial statements that had allegedly failed to disclose the full extent of the same related party transactions challenged by Plaintiffs.  (SAC ¶ 27.)  Plaintiffs further allege that before Ms. Li arrived at Keyuan, "TriPoint CEO Mark Elenowitz, told investors that he worked directly with defendant Tao for one to two years performing due diligence," but did not discover the need to disclose related party transactions.  (*Id.* at ¶ 38.)

In light of Keyuan's allegedly incomplete disclosures in its audited financial statements ***before*** Ms. Li arrived at Keyuan and the failed due diligence efforts of both Keyuan's auditor and private placement agent to discover the full extent of the related party transactions (or to comprehend a need to disclose all such transactions), it is much more plausible that Ms. Li did not act with any fraudulent intent in connection with the SEC filings.  Indeed, only a few months after Ms. Li arrived at Keyuan the Company engaged a new "Big Four" audit firm and an audit investigation identified areas for more complete descriptions of the Company's related party transactions.  *See Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323-25 (2011) (hiring of independent accounting firm to

---

[10]  In the Court's order addressing Keyuan's Motion to Dismiss the FAC, the Court found sufficient allegations of Keyuan's scienter based on the imputation of Defendant Tao's conduct.  (*See* Dkt. No. 46 at 12.)

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS SAC

investigate accounting weighed against finding inference of scienter).  This non-fraudulent inference is especially cogent when Plaintiffs can offer no theory that Ms. Li had a personal motive to defraud investors or otherwise received any benefit from the alleged misstatements or omissions in the SEC filings.  *See, e.g.*, *Wet Seal*, 518 F. Supp. 2d at 1177-78 ("the lack of any tangible, personal benefit here further weighs against the Officer Defendants having scienter") (internal quotation marks omitted) (citations omitted)).

### 2.   Plaintiffs Do Not Plead a Control Person Claim against Ms. Li with Respect to the 2010 SEC Filings

Plaintiffs also fail to allege particular facts sufficient to support the conclusion that Ms. Li was a culpable "control person" with respect to the alleged Section 10(b) violations relating to Keyuan's 2010 SEC filings.

Boilerplate allegations of control based on Ms. Li's position at Keyuan fail because simply holding a corporate title is insufficient to be a "control person" under Section 20(a).  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987) ("the status or position of [the defendant], by itself, is insufficient to presume or warrant a finding of power to control or influence"); *accord Paracor*, 96 F.3d at 1163 ("being an officer of director does not create a presumption of control"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 1248, 1277 (N.D. Cal. 2000) (defendant must exercise a significant degree of "day-to-day" operational control for control person liability).  Instead, the question of control is "an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."  *Wool*, 818 F.2d at 1441.

Here, Plaintiffs fail to plead any facts regarding any "day-to-day" participation in Keyuan's affairs by Ms. Li, particularly in relation to related party transactions that Keyuan allegedly failed to disclose.  *See Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239, 245 (S.D.N.Y. 1988) (merely alleging a

defendant's "status as an officer, director or shareholder, absent more, is not enough"). This is particularly true here, where Plaintiffs do allege that "[d]uring the Class Period, . . . the Company had '[a] Chief Financial Officer (CFO) for Chinese operations that did not report to the Company's CFO' [*i.e.*, Ms. Li]." (SAC ¶ 108 (quoting Keyuan's 2010 Form 10-K).) [11] Therefore, even if one of the underlying Exchange Act claims were somehow to survive, Plaintiffs have failed to plead that Ms. Li meets the definition of a "controlling person" for purposes of a Section 20(a) claim.

### D.   The SAC Should Be Dismissed against Ms. Li Because Plaintiffs Failed to Timely Serve Ms. Li in Compliance with Rule 4(m)

Rule 4(m) requires a plaintiff to serve all defendants with a copy of the summons and complaint within 120 days of filing the complaint. *See* Fed. R. Civ. Proc. 4(m). The time period prescribed by Rule 4(m) expires 120 days after the first complaint naming the defendant is filed. *Rudolph v. UT Starcom, Inc.*, No. C 07–04578 SI, 2009 WL 248370, at *2 (N.D. Cal. Feb. 2, 2009). The filing of an amended complaint generally does not restart the 120-day period. *See, e.g.*, *Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1148 (10th Cir. 2006) (the 120-day period of Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint"); *McGuckin v. United States*, 918 F.2d 811, 813 (9th Cir. 2006). Under the Court's Standing Order Regarding Newly Assigned Cases, any defendant "not timely served" under Rule 4 "***shall*** be dismissed from the action without prejudice." (Dkt. No. 3 at ¶ 1 (emphasis added)); *see also Arim v. First Horizon Home Loans*, No. C 11-01544 LB, 2012 WL 6783559, at *1 (N.D. Cal. Dec. 12, 2012) ("A court may dismiss a

---

[11] Defendant Xue was terminated by Keyuan in August 2011 as a result of the purported misstatements. (SAC ¶ 22.)

1   case without prejudice if a plaintiff has not complied with Rule 4(m) unless the

2   plaintiff shows good cause for its failure to serve a defendant.").

3        In this case, the original complaint naming Ms. Li was filed with this Court

4   on November 15, 2011.  Ms. Li was not served with a copy of the summons and the

5   SAC until January 17, 2013 – approximately 429 days after the original complaint

6   was filed.  Under these circumstances, a rebuttable presumption of prejudice to Ms.

7   Li arises because Plaintiffs have unreasonably delayed prosecution of an action.

8   *See In re Eisen*, 31 F.3d 1447, 1452-53 (9th Cir. 1994).[12]  Nothing suggests that the

9   presumption of prejudice to Ms. Li is unwarranted here.

10       "The plaintiff, of course, bears the burden of showing the existence of good

11  cause or excusable neglect warranting" relief under Rule 4(m).  *Looman v.*

12  *Montana*, No. CV 11-143-M-DWM-JCL, 2012 WL 6775021, at *1 (D. Mont. Nov.

13  30, 2012).  A plaintiff may show good cause "where it attempted to serve a

14  defendant but has not yet completed it, was confused about the requirements for

15  service of process, or was prevented from serving a defendant because of events

16  outside of its control."  *Arim*, No. C 11-01544 LB, 2012 WL 6783559, at *1.[13]

17  However, it is ultimately the responsibility of the plaintiff to investigate and

18  provide the proper address for a defendant in order to effectuate service.  *Toscano*

19  *v. Cambra*, No. C00-1164SI(PR), 2003 WL 21439219, at *1 (N.D. Cal. June 10,

20  2003).  In this case, Plaintiffs made no meaningful attempt to promptly serve Ms.

21  Li, and otherwise have not shown good cause why they delayed for well over a year

22

---

23  [12]  "Unnecessary delay inherently increases the risk that witnesses' memories will fade
     and evidence will become stale."  *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir.
24   2002).  Moreover, "[c]ourts have inherent equitable powers to dismiss actions or enter
     default judgments for failure to prosecute, contempt of court, or abusive litigation
25   practices."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987).

26
     [13]  Where a party offers a poor excuse for failing to comply with a court rule, the
27   prejudice to the opposing parties is sufficient to favor dismissal.  *C.f. Yourish v. Cal.*
     *Amplifier*, 191 F.3d 983, 991-92 (9th Cir. 1999).
28

MEMORANDUM OF POINTS & AUTHORITIES
                          IN SUPPORT OF MOTION TO DISMISS SAC

to do so.  This is particularly odd given the fact that Ms. Li is a resident of North Carolina and has never attempted to evade service.  As such, the Court should dismiss the action against Ms. Li pursuant to Rule 4(m) and its Standing Order Regarding Newly Assigned Cases.

### E.   The SAC Should Be Dismissed as against Ms. Li Because Venue Is Not Proper in California

Rule 12(b)(3) of the Federal Rules of Civil Procedure permits a defendant to move for dismissal of the case on the basis of improper venue.  Venue in actions based on federal subject matter jurisdiction is governed by 28 U.S.C. § 1391(b), which provides:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiffs have "the burden of proving that venue is proper in the district in which the suit was initiated."  *Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235, 1243 (C.D. Cal. 2005); *see also Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 960 (C.D. Cal. 2005).[14]  Under Section 1406(a), upon failure to meet that burden, "[t]he district court of a district in which is filed the case laying venue in the wrong division or district shall dismiss, or if it be in the interest of

---

[14]  Although it does not appear that Keyuan or the other Defendants have objected to venue in this District, challenges to venue are personal, and thus cannot be waived for Ms. Li by another Defendant.  *See* Federal Practice and Procedure § 3829 (2d ed. 1986); *Pratt v. Rowland*, 769 F. Supp. 1128, 1132 (N.D. Cal. 1991).  Thus, Ms. Li retains this argument and may properly assert it on her own behalf.

1   justice, transfer such case to any district or division in which it could have been

2   brought."  28 U.S.C. § 1406(a).

3          Here, Plaintiffs assert that venue is proper in the United States District Court

4   for the Central District of California pursuant to the venue requirements of Section

5   1391(b).  (SAC ¶ 14.)[15]  This cannot be the basis for laying venue in this District.

6   First, none of the Defendants are alleged to reside or are domiciled in California.

7   Indeed, not a single fact or event alleged in the SAC occurred in California.

8   Absolutely no California property is involved in this action.  Absolutely none of the

9   Defendants is subject to personal jurisdiction in California.  Indeed, a review of the

10  salient allegations of the SAC reveal that Plaintiffs have failed to allege any

11  substantive factual assertions showing how or in what manner California is a proper

12  venue for this action.[16]

13         Second, venue is improper where a "substantial part of the events or

14  omissions giving rise to the claim occurred" outside of the district in which the

15  action was filed.  *See Piedmont*, 598 F.2d 491 at 493 ("It is undisputed that

16  Piedmont is not 'incorporated' or 'licensed to do business' in California, and that it

17  does not 'reside' in and is not 'found' in California.").  Plaintiffs' claims arise

18  directly and proximately out of allegations of misstatements that occurred outside

19  of California.  Plaintiffs, having the burden of proving that venue is proper in this

20  District, have failed to allege the appropriate facts satisfying their burden.  *See*

21  *Hope*, 388 F. Supp. 2d at 1243; *Piedmont*, 598 F.2d at 496; *Bohara*, 390 F. Supp.

22  2d at 960.

23  _____

24  [15]  Plaintiffs also cite 15 U.S.C. § 78aa, which, similar to Section 1391(b), states that an action "may be brought in any such district or in the district wherein the defendant

25  is found or is an inhabitant or transacts business."  (*See* SAC ¶ 14.)

26  [16]  A review of the applicable facts shows that the only two states connected to this matter are North Carolina and Nevada.  Keyuan is a Nevada corporation with its U.S. office in North Carolina.  *See Piedmont*, 598 F.2d 491 at 493 ("It is undisputed that

27  Piedmont is not 'incorporated' or 'licensed to do business' in California, and that it does not 'reside' in and is not 'found' in California.").  Further, Ms. Li was served and

28  resides in North Carolina.

MEMORANDUM OF POINTS & AUTHORITIES
                                     IN SUPPORT OF MOTION TO DISMISS SAC

**III.     CONCLUSION**

        For the foregoing reasons, Ms. Li respectfully requests that the SAC be dismissed with prejudice in its entirety against her.  Ms. Li asks the Court to award her such other and further relief as the Court deems just and proper.

DATED:  February 27, 2013          PAUL HASTINGS LLP


                                   By:_____/s/ Howard M. Privette_____
                                              HOWARD M. PRIVETTE

                                   Attorneys for Defendant
                                   AICHUN LI

MEMORANDUM OF POINTS & AUTHORITIES
                                   IN SUPPORT OF MOTION TO DISMISS SAC