**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (CSB# 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Lead Counsel for Plaintiffs and Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL VANLEEUWEN AND RODNEY OMANOFF, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>KEYUAN PETROCHEMICALS, INC., CHUNFENG TAO, AICHUN LI, WEIFENG XUE, DELIGHT REWARD LIMITED,<br><br>Defendants. | No.:  CV-11-09495-PSG (JCGx)<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT CHUNGENG TAO'S MOTION TO DISMISS<br><br>CLASS ACTION<br><br>Hon. Philip S. Gutierrez<br>Hearing date: March 25, 2013<br>Time: 1:30 p.m.<br>Location: Ctrm. 880 (Roybal) |

0

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ii

I.   INTRODUCTION ..............................................................................1

II.   STATEMENT OF FACTS ...............................................................2

    A.   Background ..................................................................................2

    B.   Court Rules On Keyuan's Motion to Dismiss .........................3

    C.   Tao's Undisclosed Material Related Party Transactions ...........4

    D.   Tao Personally Benefitted from the Undisclosed Material
        Related Party Transactions .........................................................5

    E.   Tao Prepared the Offering Documents ......................................6

    F.   Offering Documents Failed to Disclose Material Related
        Party Transactions .......................................................................8

    G.   Keyuan Commits Overt Acts In Furtherance of Tao's
        Undisclosed Related Party Transactions ....................................9

    H.   Markets Learn of the Truth Causing Keyuan's Stock Price to
        Lose More than 69% of Its Value ..............................................9

    I.   Regulators Take Action Against Tao and Others ....................10

ARGUMENT ...........................................................................................10

III.   PLAINTIFFS HAVE STATED A CLAIM AGAINST TAO ARISING
      FROM THE PRIVATE PLACEMENT .......................................10

    A.   Applicable Pleading Standard ..................................................10

    B.   Plaintiffs Have Adequately Alleged Material Omissions In the
        Offering Documents ..................................................................12

    C.   Plaintiffs Have Adequately Alleged Toa's Scienter ...............13

    D.   Plaintiffs Adequately Allege Loss Causation ..........................21

IV.   LAW OF THE CASE DOCTRINE PRECLUDES TAO'S
      CHALLENGE TO THE PUBLIC CLASS ALLEGATIONS ........22

V.   PLAINTIFFS HAVE ALLEGED TAO'S CONTROL PERSON
     LIABILITY ....................................................................................24

VI.   CONCLUSION ..............................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Brown v. China Integrated Energy, Inc.*,
  875 F.Supp.2d 1096 (C.D. Cal. 2012) ........................................................ 13, 14, 17

*Burritt v. Nutracea*,
  2010 WL 668806 (D. Ariz. Feb. 25, 2010) .................................................................. 21

*Cheung v. Keyuan Petrochemicals, Inc.*,
  2012 WL 5834894 (C.D. Cal. Nov. 1, 2012) ........................................................ passim

*de la Fuente v. DCI Telecommunications, Inc.*,
  259 F. Supp. 2d 250 (S.D.N.Y. 2003) ........................................................................ 20

*Dean v. China Agritech, Inc.*,
  2011 WL 5148598 (C.D. Cal. Oct. 27, 2011) ............................................................ 24

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................. 11, 25

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ...................................................................................... 20

*Hawaii Ironworkers Annuity Trust Fund v. Cole*,
  10-CV-371, 2011 WL 1257756 (N.D. Ohio March 31, 2011) ................................... 20

*Henning v. Orient Paper, Inc.*,
  2011 WL 2909322 (C.D. Cal. July 20, 2011) ...................................................... 18, 19

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir. 1990) .................................................................................... 24

*Howard v. Everex Systems, Inc.*,
  228 F.3d 1057 (9th Cir. 2000) .................................................................................... 24

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) ........................................................... 19

*In re Amgen, Inc. Sec. Litig.*,
  544 F.Supp.2d 1009 (C.D. Cal. 2008) ................................................................. 24, 25

*In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*,
  2012 WL 1983341 (C.D. Cal. May 31, 2012) ............................................... 15, 17, 19

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004) ....................................................................... 13

*In re Bradley Pharms. Inc. Sec. Litig.*,
  421 F.Supp.2d 822 (D.N.J. 2006) .............................................................................. 21

ii

*In re Countrywide Financial Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................................ 25

*In re Cylink Sec. Litig.*,
    178 F.Supp.2d 1077 (N.D. Cal. 2001) ......................................................... 13

*In re Daou Systems, Inc.*,
    411 F. 3d 1006 (9th Cir. 2005)........................................................... 12, 16

*In re Downey Sec. Litig.*,
    2009 WL 2767670 (C.D. Cal. Aug. 1, 2009)................................................ 16

*In re DRDGOLD Ltd., Sec. Litig.*,
    472 F.Supp.2d 562 (S.D.N.Y. 2007)........................................................... 13

*In re Gilead*,
    536 F.3d 1049 (9th Cir. 2008).................................................................... 21

*In re LDK Solar Secs. Litig.*,
    584 F. Supp. 2d 1230 (N.D. Cal. 2008) ..................................................... 11

*In re Medicis Pharmaceutical Corp. Sec. Litig.*,
    2010 WL 3154863 (D. Ariz. Sep. 20, 2010)................................................ 19

*In re Resource America Sec. Litig.*,
    2000 WL 1053861 (E.D. Pa. July 26, 2000)................................................ 18

*In re Silicon Storage Technology, Inc. Secs. Litig.*,
    2007 WL 760535 (N.D. Cal. March 9. 2007) .............................................. 15

*In re Sipex Corp., Sec. Litig.*,
    2005 WL 3096178 (N.D. Cal. Nov. 17, 2005)............................................. 13

*Liberty Mutual Ins. Co. v. EEOC*,
    691 F.2d 438 (9th Cir. 1982)..................................................................... 22

*Matrixx Initiatives, Inc. v. Siracusano*,
    131 S.Ct. 1309 (2011) ............................................................................... 17

*Milgard Temerping, Inc. v. Selas Corp. of Am.*,
    902 F.2d 703 (9th Cir. 1990)..................................................................... 22

*New Mexico State Investment Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011)............................................................. 11, 12

*No 84 Employer-Teamster Joint Counsel Pension Trust Fund v. Am. West Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003)...................................................................... 12

*Nursing Home pension Fund Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9ht Cir. 2004)..................................................................... 15

*Petrie v. Electronic Game Card, Inc.*,
    2011 WL 165402 (C.D Cal. January 12, 2011) ............................................ 25

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001)..................................................................... 23

*S.E.C. v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010) .................................................... 20

*S.E.C. v. Todd*,
    642 F.3d 1207 (9th Cir. 2011)................................................................. 24

*Snellink v. Gulf Resources, Inc.*,
    870 F.Supp.2d 930 (C.D. Cal. 2012)................................................ 13, 19

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...................................... 11, 12, 15, 20

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
    633 F.Supp.2d 763 (D. Ariz. 2009) ....................................................... 12

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
    690 F. Supp. 2d 959 (D. Ariz. 2010) ..................................................... 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................... 11, 12

*U.S. v. Alexander*,
    106 F.3d 874 (9th Cir. 1997) ................................................................. 22

*U.S. v. Cuddy*,
    147 F.3d 1111 (9th Cir. 1998) .............................................................. 22

*U.S. v. Lummi Indian Tribe*,
    235 F.3d 443 (9th Cir. 2000) ................................................................ 22

*U.S.* v. *York*,
    933 F.2d 1343 (7th Cir. 1991) ................................................................ 20

*Wilson* v. *Williams*,
    182 F.3d 562 (7th Cir. 1999) .................................................................. 20

*York v U.S.*,
    502 U.S. 916 (1991) ............................................................................... 20

*Zagami v. Natural Health Trends Corp.*,
    540 F.Supp.2d 705 (N.D. Tex. 2008) ............................................... 15, 18

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................................ 11, 16

**Statutes**

Private Securities Litigation Reform Act of 1995 (PSLRA) ........................ 24
Securities Exchange Act of 1934 ................................................................ 10, 24
Securities Exchange Act of 1934 Section 10(b) ..................................... passim
Securities Exchange Act of 1934 Section 20(a)...................................... 24, 25
17 C.F.R. § 230.405 ...................................................................................... 24
17 C.F.R. § 230.506(b)(2)............................................................................. 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rules**

Fed. R. Civ. P. 8(a).............................................................................................. 25
Fed. R. Civ. P. 9(b) ............................................................................................. 24

## I.     INTRODUCTION

In ruling on Keyuan's motion to dismiss, the Court already ruled on many of the issues presented by Tao here. As to the Private Placement, the Court previously held that it could infer that Tao had knowledge of the undisclosed related party transactions that Tao had with Keyuan (*Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at * 7 (C.D. Cal. Nov. 1, 2012) ("the Court may infer that Tao knew of the transaction between Keyuan and his own companies").  However, the Court held that Plaintiffs failed to allege specific details as to how Tao (and other individual defendants) were involved in preparing the Offering Documents.  *Id.*, at *5, *7.  As such, the Court dismissed the Private Placement claims against Keyuan for lack of scienter with leave to replead.  *Id.*, at *8, *12.

As to Class members that purchased on the stock exchange, the Court held that Plaintiffs had adequately alleged Tao's scienter with respect to Keyuan's SEC filings as he has knowledge of his undisclosed related party transactions with Keyuan and because he signed Keyuan's SEC filings that failed to disclose them. *See id.* at * 9, ("Plaintiffs have thus alleged facts from which the Court can infer that Tao must have known about the related party transaction and so he acted with scienter when he signed financial documents that failed to disclose those transactions.").

Hence, Tao's motion to dismiss turns on whether Plaintiffs have alleged facts to demonstrate that Tao was involved in preparing the Offering Documents for the Private Placement.  Here, Plaintiffs have alleged specific facts that demonstrate that Tao's material and knowing participation in preparing the Offering Documents.

The Private Placement was conducted pursuant to SEC Regulation D. Reg. D requires that the financial statements included in the Offering Documents had to be the same type of financial statements that would be included in a publicly filed 10-K or registration statement. They must be prepared in accordance with U.S. GAAP and SEC regulations and audited.  Thus, at a minimum Tao had the same level of involvement in preparing the financial statements contained in the Offering

1

Documents as he did in preparing the financial statements in the SEC filings the Court previously held that Tao had prepared with scienter.  In fact, Tao had even greater responsibility for preparing the Offering Documents than the SEC filings because at the time of the Private Placement Tao held every top management and directorship position in Keyuan—he was Chief Executive Officer, Chief Financial Officer, and Chairman of the Board; whereas at the time he prepared and signed the SEC filings, he was only CEO and Chairman.

Tao knew the financial statements in the Offering Documents omitted his related party transactions with Keyuan.  The placement agent for the Private Placement worked with Tao for one to two years on due diligence in preparing for the Private Placement.  Tao himself made presentations to prospective investors in the Private Placement at road show events in which he presented the information in the Offering Documents.  Tao even signed the securities purchase agreement in connection with the Private Placement.

Plaintiffs' investment banking expert, William Purcell, the former head of Dillon Read's private placement department, confirms that a placement agent always works very closely with a company's CEO and CFO in preparing and verifying the accuracy of offering documents for a private placement.

Tao's other arguments on this motion should be rejected because the Court has already rejected them on Keyuan's prior motion to dismiss and the law of the case doctrine applies; Tao has failed to demonstrate that it should not.

Defendant's motion should be denied.

## II.   STATEMENT OF FACTS

### A. Background

Plaintiffs bring this action on behalf of the following Class:

(a)   all persons other than Defendants who purchased the common stock of Keyuan between August 16, 2010 and October 7, 2011, inclusive, (the "Class Period"); and seeking to recover damages caused by Defendants' violations of federal securities laws (the "Public Class"); and

(b)     all persons other than Defendants who purchased Keyuan securities pursuant to the confidential private offering memorandum dated March 22, 2010 ("Offering Documents"), consisting of purchasers in the first tranche that closed on April 22, 2010 and the second tranche that closed on May 18, 2010 (collectively the "Private Placement" or "Private Placement Class").  ¶1.[1]

Defendant Keyuan is a Petrochemical company headquartered in the People's Republic of China ("PRC").  ¶2.  Keyuan became a public company through a reverse merger that commenced on April 22, 2010 and was completed on May 12, 2010.  ¶19.

Defendant Chunfeng Tao ("Tao") was and is, the Chairman of the Board, Chief Executive Officer and controlling shareholder of Keyuan. ¶20.  At the time of the Private Placement Tao was Keyuan's Chairman, President, CEO, and CFO. ¶33.

**B. The Court Rules On Keyuan's Motion to Dismiss**

On November 1, 2012 the Court issued a decision granting in part and denying in part Keyuan's motion to dismiss the first amended complaint.  *See Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894 (C.D. Cal. Nov. 1, 2012).

Private Placement Class: While the Court found that it could infer that Tao had knowledge of the related party transactions (*Cheung*, 2012 WL 5834894, at * 7 ("the Court may infer that Tao knew of the transactions between Keyuan and his own companies"), the Court stated that Plaintiffs had failed to allege specific details about how Tao and other individual defendants were involved in preparing the Offering Documents.  *Id.*, at *5, *7.  As such, the Court dismissed the Private Placement claims against Keyuan for lack of scienter with leave to replead.  *Id.*, at *8, *12.

---

[1] All reference to "¶__" or "¶¶___" refer to the paragraphs of the Second Amended Complaint, docket no. 48 (the "Complaint").

<u>Public Class</u>: As to falsity, the Court held that Plaintiffs adequately alleged that the related party transactions constituted material omissions in the Company's SEC filings to investors. *Id.,* at * 8. The Court found that it "is in accord with other courts in this district in concluding that Plaintiffs' sufficiently pleading falsity by alleging that Keyuan failed to disclose transaction worth over $100 million with companied owned by Keyuan's CEO [Tao]. Therefore the element is met." *Id.*

As to scienter, the Court found that Plaintiffs alleged Keyuan's scienter through Tao. *Id.*, at * 9 ("Plaintiffs have thus alleged facts from which the Court can infer that Tao must have known about the related party transaction and so he acted with scienter when he signed financial documents that failed to disclose those transactions.").

The Court also held that Plaintiffs adequately pleaded loss causation. The Court explained that:

> Here, plaintiffs allege that as a result of Keyuan's failure to disclose the related-party transactions in the financial statements and Offering Documents, trading in Keyuan stock ceased on April 1, 2011, and that the value of the stock fell 69 percent when trading re-opened. *FAC* ¶¶ 9–10. Plaintiffs further allege that investors suffered a loss as a result of the decline in value. *Id* . ¶ 10. Therefore, Plaintiffs have adequately pleaded economic loss and loss causation.

*Id.*, at * 11. (citations omitted).

Lastly, the Court found that Plaintiffs adequately alleged reliance by invoking the fraud-on-the-market presumption of reliance (*id.*, at (*10-*11) and alleged the "in connection with" requirement of Section 10(b). *Id.*, at *9.

**C. Tao's Undisclosed Material Related Party Transactions**

Defendants failed to disclose numerous material related party transactions in Keyuan's financial statements for the years ended 2009 and 2010 and for the quarterly periods therein. *E.g.*, ¶¶75-84, & Ex. 6 thereto.[2]  The undisclosed related party transactions involved (a) sales of products; (b) purchase of raw materials; (c) purchase of transportation services; (d) guarantees for bank loans; (e) short-term

---

[2] All reference to "Ex. __" refer to the exhibits to the second amended complaint.

financing from related parties; (f) short-term financing to related parties; (g) amount due from related parties; and (h) amount due to related parties. *See* ¶ 105 & Ex. 6.

The bulk of these undisclosed transactions were with defendant Tao through entities he directly owned or controlled or controlled through his sister-in-law, or mother. ¶75. The value of Tao's related party transactions is staggering. For fiscal 2009—a period covered in audited financial statements contained in the Offering Documents, the related party transactions to Tao and his entities totaled over $83.1 million ($21.5 million in sales to Tao ¶75; $4.7 million in purchases of raw materials from Tao ¶78; $34.7 million in loan guarantees by Tao and his entities Ex. 6, at F-30; $18.5 million in short term financings Ex. 6, at F-30; and $3.7 million due to Tao's entity, Ex. 6 at F-30).

For fiscal 2010, Tao's related party transactions totaled $232.8 million ($101.7 million in sales to Tao ¶75; $25 million in purchases of raw materials from Tao ¶78; $79.9 million in loan guarantees by Tao Ex. 6, at F-30; $21 million in short term financings Ex. 6, at F-30; and $5.2 million due Tao' and his entities, Ex. 6 at F-30).

On a percentage basis, the undisclosed related party transactions to Tao were material as well. Sales to Tao amounted to 31% and 18.1% of the Company's total sales in 2009 and 2010, respectively. ¶76. Keyuan also bought 36% and 47% of its raw materials from Tao in 2009 and 2010 respectively. ¶¶78-79.

## D. Tao Personally Benefitted from the Undisclosed Material Related Party Transactions

Keyuan's auditor stated that "[i]t is possible that the terms of these [related party] transactions may not be the same as those that would result from transactions among unrelated parties." ¶88.

Indeed, Keyuan's sales to Tao in 2009 and 2010, totaling $123 million, were not arms' length transactions and personally benefited him. ¶85. The gross profit margins on Keyuan's related party sales were smaller than from non-related party sales. Stated differently, dollar-for-dollar- Keyuan was earning less profit from

sales to Tao than it was from sales to unrelated parties. ¶86. For example, in the third quarter of 2010, Keyuan had gross profit margins of 25.2% on sales to non-related parties, but only 11.4% on sales to related parties. ¶87; & Ex. 1 thereto.

Additionally, Tao personally benefited from Keyuan's purchases of raw materials from him totaling $30 million. ¶ 78.

Lastly, one of Tao's entities was owed $3.2 million from Keyuan. Ex. 6 at F-31.

### E. Tao Prepared the Offering Documents

The Complaint alleges specific facts demonstrating that Tao prepared the Offering Documents. According to Plaintiffs' investment banking expert, William Purcell,[3] the purpose of offering documents in a private placement is to provide relevant and accurate information about the company's financial position, performance and other significant factors that affect or will affect the company's future performance. ¶36(c). Not surprisingly, the best source for such information is the company's CEO, its President and its CFO. ¶36(d).

_____

[3] Mr. Purcell has over 45 years of experience as an investment banker. He started his career at the special bracket firm of Dillon, Read & Co. Inc. ("Dillon Read") after graduation from business school in 1966. He was elected a Managing Director in 1982. During his approximately 25 years at Dillon Read, he worked in all areas of corporate finance and the capital markets - - including for a number of years being co-head of Dillon Read's private placement department. He is currently a Senior Director of Seale & Associates, an investment banking firm in the Washington, DC area. During his career, Mr. Purcell has worked on over 100 financing transactions - - both debt and equity financings and both public and private financings. He has also worked on over 100 merger and acquisition related transactions. In addition, Mr. Purcell has been an expert witness over the years in over 100 cases, a number of which have involved disclosure and due diligence issues. Mr. Purcell graduated from Princeton University with a B.A. in economics in 1964, and from New York University Graduate School of Business with an MBA in 1966. ¶34.

At the time of the Private Placement, Tao held every top executive and directorship slot within Keyuan.  He was Keyuan's Chairman of the Board, President, Chief Executive Officer and Chief Financial Officer.  ¶33.

Moreover, "the responsibility for preparing an offering memorandum or private placement memorandum (or as in the case of Keyuan, the Offering Documents) is primarily that of the senior management of the company, especially the CEO and/or President of the company and CFO." ¶35(a).  In smaller companies such as Keyuan, the CEO and CFO, here Tao, would work directly with the placement agent to go over each page of the offering documents to ensure accuracy and completeness.   ¶33(b)-(c).   A company's CFO typically has the primary responsibility to make sure all financial statements presented to investors are accurate and complete.  ¶37(k).  The placement agent's due diligence would also include ensuring the accurate disclosure of related party transactions in the offering documents because such transactions can be manipulated by management and might involve fraud.  ¶37(g).

Indeed, Tao worked directly with the placement agent for the Private Placement, TriPoint, on due diligence.  "During road show events, TriPoint CEO Mark Elenowitz told investors that he worked directly with defendant Tao for one to two years performing due diligence on Keyuan and checking the accuracy of the company's financial statements and operations."   ¶38.   Tao even made presentations to prospective Private Placement investors by going over the information in the Offering Documents.  ¶37.

Tao's material involvement in the offering is evidenced by the fact Tao signed the securities purchase agreement in connection with the Private Placement. Request for Judicial Notice filed herewith ("RJN"), Ex. 1.   Tao also pledged his own personal shares as an inducement for persons to invest in the Private Placement.  ¶29.

As part of a private placement, the auditor's work would form part of the due diligence, including management representation letters from the CEO and CFO to

the auditor.   ¶¶36(e)-(f).   Plaintiffs allege that defendants Tao (and Li) signed management representation letters stating to the Company's auditor that they had disclosed all material related party transactions to the auditors.   ¶¶67, 69; ¶70 ("Tao and Li signed knowingly false management representation letters to Keyuan's auditors prior to the issuance of the 2009 and 2010 Form 10-K annual reports…").[4]

### F. Offering Documents Failed to Disclose Material Related Party Transactions

The Offering Documents were uniformly presented to each prospective investor in the Private Placement.   ¶30.   The financial statements included in the Offering Documents were audited by a U.S. accounting firm pursuant to U.S. GAAP and SEC regulations.   ¶30, Ex. 1 at 83. ("The accompanying consolidated financial statements have been prepared in accordance with accounting principles generally accepted in the United States of America (US GAAP)").   Indeed, because the Private Placement was made pursuant to SEC Regulation D, the financial statements in the Offering Documents had to be prepared in accordance with US GAAP and SEC regulations.   ¶28.   Consequently, Keyuan was required to disclose the material related party transactions in the Offering Documents- but failed to do so rendering the Offering Documents materially misleading.   ¶¶27, 39-61.

Likewise, because the financial statements contained in the Offering Documents were required to be prepared in the same manner- in accordance with GAAP and SEC regulations - as those that are included in a registration statement or Form 10-K, the Offering Documents were required to disclose all related party transactions (¶28), Tao similarly approved, drafted and reviewed the financial statements contained in the Offering Documents as he did with the financial statements included in SEC filings made during the Public Class period.

---

[4] The Offering Documents contained audited financial statements for 2009.

### G. Keyuan Commits Overt Acts In Furtherance of Tao's Undisclosed Related Party Transactions

In addition to Tao's preparing and filing false SEC filings with scienter during the Public Class period (*Cheung,* 2012 WL 5834894, at * 8 - *12); ¶¶91-95, Keyuan admitted it committed overt acts in furtherance of Tao's undisclosed material related party transactions.  Keyuan admitted that it may have violated PRC banking laws by attempting to circumvent bank restrictions by engaging in short term financings with Tao's related entities.  ¶8, Ex. 6 at F-30.[5]  In 2009 the short term financings to Tao's entities involved nearly $18.5 million and in 2010 $21 million.  Ex. 6, at F-30.

Keyuan also lied to freight companies to benefit the related parties.  Keyuan admitted that "[i]n the past we sometimes accommodated requests from our customers to change the name of products so that our customers could save on freight costs."  ¶90.

### H. Markets Learn of the Truth Causing Keyuan's Stock Price To Lose More than 69% of Its Value

On April 1, 2011, all trading in Keyuan stock. was halted.  ¶96.  Later that day, the Company issued an announcement that its auditor, KPMG LLP, had informed the Company that its financial statements could not be relied upon and had to be restated because KPMG raised certain issues relating to, among other things, recorded sales.  ¶97. On May 20, 2011, KPMG resigned as Keyuan's auditor. ¶99. On October 7, 2011, after having been halted since April 1, 2011, Keyuan's stock began to trade over the counter on the "Pink Sheets" and immediately its stock price fell 69% or by $3.38/share.  ¶101.  On October 19, 2011 Keyuan announced that the restatement will include "disclosures of our related party transactions to ensure that we include all of the disclosures required under US

---

[5] The short term financings were with Ningbo Kewei- an entity controlled by Tao; Ningbo Kunde an entity where Tao's mother was a 65% nominee shareholder, and Ningbo Wanze an entity where Tao's sister-in-law is legal representative.  ¶75, fn. 1-3.

GAAP and the rules and regulations of the Securities Exchange Commission." ¶102.

### I.  Regulators Take Action Against Tao and Others

Keyuan's own internal investigation into the related party transactions identified possible violations of the U.S. securities laws.  ¶109.  Not surprisingly, on September 17, 2012 in connection with the undisclosed related party transactions, Keyuan announced that it and Tao had received a Wells Notices from the SEC.  ¶11.

On February 28, 2013 the SEC filed a civil action against Keyuan for violations of the anti-fraud provisions of the Exchange Act and against defendant Aichun Li, Keyuan's CFO, for financial reporting, record keeping, and internal control violations under the Exchange Act.  The action was based on, among other things, Keyuan's failure to disclose material related party transactions.  *See* RJN, Ex. 2.

Filed with the SEC complaint, were proposed consent judgments for Keyuan and Li settling the action.  *See* RJN, Exs. 3, 5.  Keyuan's consent was signed by defendant Tao. Keyuan agreed to pay a $1 million fine-- a large penalty given that Keyuan's most recent 10-Q reports only $7.2 million in cash.  *See* RJN Exs.4, 7.  Li agreed to pay a fine of $25,000 and agreed to the entry of an order banning Li from practicing before the SEC, with a right to apply for reinstatement in two years.  *See* RJN Ex. 6.  The SEC investigation is continuing.

### ARGUMENT

### III.  PLAINTIFFS HAVE STATED A CLAIM AGAINST TAO ARISING FROM THE PRIVATE PLACEMENT

#### A. Applicable Pleading Standards

To adequately allege a Section 10(b) violation, Plaintiffs must plead particularized facts demonstrating "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4)

transaction and loss causation, and (5) economic loss." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). A complaint pleads particularized facts when it specifies "the who, what, when, and by whom false statements were made." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003).

Just as on any other motion to dismiss, the Court must accept all well-pled factual allegations as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "The PSLRA in no way turns FRCP 12 into a trial-type, papers-only proceeding, much less one in which defendants get the benefit of every conceivable doubt, including credibility calls." *In re LDK Solar Secs. Litig.*, 584 F. Supp. 2d 1230, 1260 (N.D. Cal. 2008).

A complaint alleging violations of Section 10(b) of the Exchange Act must state facts giving rise to a strong inference that the defendants made false or misleading statements either intentionally or with deliberate recklessness. *Zucco Partners, LLC v. Digimarc*, 552 F.3d 981, 991 (9ht Cir. 2009). Deliberate recklessness is conduct that "reflects some degree of intentional or conscious misconduct." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). In assessing scienter the Ninth Circuit "has advised against developing separate [] rules of thumb for each scienter allegation." *New Mexico State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011) (internal quotes and citation omitted).

In *Tellabs* the Supreme Court held that a flexible, common-sense standard applies when determining whether the PSLRA's pleading requirement has been met. In determining whether a complaint meets this standard, "courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." 551 U.S. at 322. They are then to consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in

isolation, meets that standard.  *Id.*  The "totality of the allegations in a complaint may adequately establish scienter even where individual allegations" considered separately do not.  *In re Daou*, 411 F. 3d 1006, 1024 (9th Cir. 2005).

For an inference of scienter to be strong, "a reasonable person would deem [it]… cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  If the inference of scienter is equally as compelling as any innocent inference, the motion to dismiss must be denied.  *New Mexico State Investment Council*, 641 F.3d at 1095; *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 633 F.Supp.2d 763, 791-92 (D. Ariz. 2009) ("a tie goes to the Plaintiff in terms of competing inferences of scienter").  The Ninth Circuit permits a district court to evaluate altogether a series of less precise allegations to meet the PSLRA requirement.  *South Ferry*, 542 F.3d at 784.  Thus, "vague, ambiguous, or general allegations," which may have been dismissed under prior Ninth Circuit case law, "are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *Id.* Courts "need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective." *Id.*[6]

## B. Plaintiffs Have Adequately Alleged Material Omissions In the Offering Documents

Tao argues that the Plaintiffs have failed to meet the falsity prong by failing to adequately allege material omissions. Tao Opp. at 8:27-9:9.  This argument is without merit.  Plaintiffs have adequately identified the undisclosed material related party transactions, set forth specific reasons why those transactions were required to

---

[6]  The Ninth Circuit has emphasized that "dishonest insiders may be able to cover their tracks fairly well, …. [u]nless reasonable inferences from circumstances suffice to get a case to a jury." *No 84 Employer-Teamster Joint Counsel Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 946 (9th Cir. 2003).

be disclosed, and why the Offering Documents are rendered misleading without the disclosure of the material related party transactions.

The Offering Documents included Keyuan's audited financial statements for the fiscal years ended December 31, 2009 and 2008.  ¶27.  Those financial statements were required to be prepared in accordance with GAAP and SEC regulations.  ¶28.  GAAP and SEC regulations required Keyuan to disclose all material related party transactions.  ¶¶39-61.  For 2009 there were $21 million in undisclosed related party sales to Tao and his family amounting to 31% of all of Keyuan's sales.  ¶¶75-76.  Under SEC rules, financial statements that are not prepared in accordance with GAAP or SEC regulation are presumed to be misleading.  ¶43.  Keyuan restated its audited financial statements for fiscal 2009 for failure to disclose Tao's related party transactions. ¶¶49-50, 75-80.  "The mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,* 324 F. Supp. 2d 474,486 (S.D.N.Y. 2004) .[7]

Plaintiffs have also specifically identified all the undisclosed related party transactions included in the Offering Documents.  *See* ¶¶75-80 (setting forth the undisclosed material related party transactions in 2009); ¶¶92-93 (identifying specific portions of the Offering Documents where these undisclosed transactions should have been disclosed).  Tao disputes none of these facts.  Under these circumstances, Plaintiffs have more than adequately plead an actionable omission of material fact.  *See Snellink v. Gulf Resources, Inc.*, 870 F.Supp.2d 930, 939-940 (C.D. Cal. 2012) (holding falsity adequately alleged on undisclosed related party transactions when transactions were specifically identified and SEC rules requiring

---

[7] *See also In re Sipex Corp., Sec. Litig*., 2005 WL 3096178 * 1 (N.D. Cal. Nov. 17, 2005) ("Sipex's own public admission that its financial reports for the period in question should not be relied upon and would be 'restated' meant that the as-issued reports were materially inaccurate under GAAP."); *In re Cylink Sec. Litig.*, 178 F.Supp.2d 1077, 1084 (N.D. Cal. 2001) (same); *In re DRDGOLD Ltd., Sec. Litig.*, 472 F.Supp.2d 562, 569 (S.D.N.Y. 2007) (same).

disclosure are alleged); *accord Brown v. China Integrated Energy, Inc.*, 875 F.Supp.2d 1096, 1118-1119 (C.D. Cal. 2012).

## C. Plaintiffs Have Adequately Alleged Tao's Scienter

While the Court previously held that "the Court may infer that Tao knew of the transaction between Keyuan and his own companies", *Cheung*, 2012 WL 5834894, at * 7, the Court found that Plaintiffs had not alleged enough facts to show that Tao "was responsible for the fraudulent act of preparing and distributing the Offering Documents." *Id.*, at * 4 - * 5.

Plaintiffs have added specific facts that demonstrate that Tao actively and substantially participated in preparing, and issuing to investors, the Offering Documents which failed to disclose his material related party transactions.

<u>First</u>, that the financial statements in the Offering Documents did not contain a signature sheet signed by Tao, does not mean that Tao had no responsibility over or had no involvement in preparing or approving the 2009 financial statements. Because the Private Placement was conducted pursuant to SEC Regulation D, Keyuan's financial statements in the Offering Documents had to be prepared in accordance with US GAAP and SEC regulation just as is required for inclusion in a 10-K or registration statement filed with the SEC.  ¶28; 17 C.F.R. § 230.506(b)(2), *et. seq.*  Indeed, the financial statements included in the Offering Documents were prepared in accordance with U.S. GAAP and SEC regulations and were audited. ¶30, Ex. 1 at 83 thereto ("The accompanying consolidated financial statements have been prepared in accordance with accounting principles generally accepted in the United States of America (US GAAP)").  Thus, the absence of a signature sheet with Tao's signature in the Offering Documents does not absolve Tao of liability because Tao actually had more responsibilities at Keyuan at the time of the Private Placement (CEO, President, Chairman, and CFO ¶33) than during the Public Class period (CEO and Chairman ¶20), when he signed the Company's SEC filings. *See Cheung*, 2012 WL 5834894, at * 9 ("Plaintiffs have thus alleged facts from which the Court can infer that Tao must have known about the related party transactions

and so he acted with scienter when he signed financial documents that failed to disclose those transactions") (citing *Brown*, 875 F.Supp.2d at 1124; *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, 2012 WL 1983341, at * 8-*9 (C.D. Cal. May 31, 2012); *South Ferry*, 542 F.3d at 786).

Tao's substantial involvement in the Private Placement is further demonstrated by the fact that he signed the securities purchase agreement for the Private Placement. *See* RJN, Ex. 1. Tao also offered his personal shares of Keyuan as an inducement for Private Placement investors. ¶29. It is simply implausible that Tao did not have any material involvement in preparing the Offering Documents and in the Private Placement.

Nor is it plausible that Tao did not know that the Offering Documents contained the Company's 2009 audited financial statements given that during road show events he went discussed the Offering Documents with prospective investors. ¶37.

<u>Second</u>, it is undisputed that Offering Documents contained a section called "Certain Relationships and Related Party Transactions" which did disclose innocuous related party transactions but omitted to disclose the questionable related party transactions with Tao. ¶92. This selective disclosure of related party transactions demonstrate that when the Offering Documents were prepared, Tao was aware of the requirement to disclose related party transactions. *See Zagami v. Natural Health Trends Corp.*, 540 F.Supp.2d 705, 713 (N.D. Tex. 2008) (selective disclosure of innocuous related party transactions yet concealing others is evidence of scienter to management).

<u>Third</u>, in the investment banking industry and financial community, the responsibility for preparing the offering memorandum (or in the case of Keyuan, the Offering Documents) is primarily the responsibility of senior management of the issuer, especially the CEO and/or President and the CFO. ¶35(a).[8] This is so,

_____

[8] Expert opinion alleged in a securities fraud complaint should be credited. *See Nursing Home pension Fund Local 144 v. Oracle Corp.*, 380 F.3d 1226, 133 (9ht

because offering documents are used by the placement agent to provide relevant and detailed information about the company's financial position, operating performance, and significant factors that will affect the company's performance in future years. ¶35(c). Of course, "[n]obody is better able to provide such important and relevant information that the CEO and/or the CFO of the company." ¶35(d). According to Mr. Purcell, the accurate disclosure of related party transactions "is an absolute must" given they have historically been a major problem, as related party transactions may be fraudulently manipulated by insiders. ¶ 35(g). Additionally, a placement agent (here Tripoint) has a duty of due diligence in assisting with the preparation of the offering documents. ¶33(h). As part of that due diligence Tripoint would have interviewed the CEO and the CFO to ensure the information in Offering Documents was accurate.

Here at the time of the Private Placement, Tao was Keyuan's President, CEO CFO, and Chairman. ¶33. Consistent with Mr. Purcell's opinion, Tao worked directly with the placement agent for one to two years to assist with its due diligence. ¶38 ("During road show events, TriPoint CEO Mark Elenowitz told investors that he worked directly with defendant Tao for one to two years performing due diligence on Keyuan and checking the accuracy of the company's financial statements and operations.").[9] Tao even made presentations to

_____

Cir. 2004) (crediting testimony of expert witness"); *In re Silicon Storage Technology, Inc. Secs. Litig.*, No. C-05-295-PJH, 2007 WL 760535, *30 (N.D. Cal. March 9. 2007) ("Accordingly, based on *Nursing Home* and *In re Daou*, it appears that district courts can consider allegations of data and information obtained from "experts"-but also that such factual allegations are subject to the same standard applied to evaluate facts alleged to have originated with any "confidential informant" (or other witness)."). Tao in his opposition does not challenge Mr. Purcell's opinions.

[9] Tao, citing *Zucco Partners*, 552 F.3d at 997, n. 4 and *In re Downey Sec. Litig.* 2009 WL 2767670 (C.D. Cal. Aug. 1, 2009) claims TriPoint's "statement is deficient and cannot be considered by this Court because it is a hearsay statement offered by Plaintiffs." Tao Opp. at 10:18-23. Tao's argument is without merit. *Zucco Partners*, only refers to hearsay in assessing the reliability *confidential witness* testimony. *Zucco* does not hold hearsay alleged in a complaint cannot be considered, nor does it say that a hearsay statement from a named witness should be rejected. *Id. Downey* is no different. *Downey*, 2009 WL 2767670, at * 5 n. 2 (not crediting confidential witness account as it was "based on hearsay, rumor and speculation.")

prospective investors by going over the information in the Offering Documents. ¶37.

Fourth, as part of a private placement, the auditor's work would form part of the due diligence, including management representation letters from an issuer's CEO and CFO to the auditor.   ¶¶36(e)-(f). As part of the audit of Keyuan's financial statements for the private placement, the auditors required Tao (and Li) to sign management representation letters stating to the Company's auditor that they had disclosed all material related party transactions.   ¶¶67, 69; ¶70 ("Tao and Li signed knowingly false management representation letters to Keyuan's auditors prior to the issuance of the 2009 and 2010 Form 10-K annual reports…").[10] *See, also, Brown*, 875 F.Supp.2d at 1124 ("The fact the that the company's CEO signed statement concerning the [related party] transactions that omitted the information that his son stood to benefit from the transactions creates a strong inference that the CEO, and therefore the corporation, was aware the statements were misleading. Plaintiffs have therefore sufficiently pled facts that give rise to a strong inference of scienter.").

Fifth, while motive is not required to adequately allege scienter, *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1324 (2011), Plaintiffs have alleged Tao's financial motive for the fraud.[11]   For example, Keyuan's related party transactions with Tao were not arm's length transactions.  Keyuan's own auditor stated that "[i]t is possible that the terms of these transactions may not be the same as those that would result from transactions among unrelated parties." ¶88.  In fact, Keyuan's sales to Tao resulted in lower profit margins than sales with unrelated parties.  "For example, for Q3 2010 the gross profit margin on the related party sales was 11.4%, yet it was 25.2% for the [unrelated] external sales." ¶87. Thus, this financial motive supports a strong inference of scienter.  *See, e.g., A-Power*,

---

[10] The Offering Documents contained audited financial statements for 2009.

[11] Tao argues these allegations are conclusory by citing to ¶5 and ¶85 of the Complaint (Tao Opp. at 15:6), yet he ignores the specific personal benefits he received that are alleged in ¶¶85-88.

2012 WL 1983341, at * 8 (strong inference of scienter alleged against company through failure to disclose related party transactions involving CEO where CEO had a financial incentive relating to the related party transactions).[12]

Keyuan had a motive as well, because it was able to raise over $26 million in the Private Placement.  ¶¶26-27.  The Offering Documents included  Keyuan's 2009 financial results.  In 2009, 31% of Keyuan's sales were to Tao.  ¶¶61-62.  Had Defendants disclosed the fact that nearly a third of Keyuan's sales were related party sales to Tao, Keyuan could not have sold its securities in the Private Placement at the artificially inflated prices it did.  Indeed, when the market learned of the related party transactions, the price of Keyuan stock fell more than 69%.  *See Zagami*, 540 F.Supp.2d at 711-712 (explaining that material related party transactions must be disclosed because "[d]isclosure is thus essential to enable investors to evaluate correctly the information they see on the balance sheet.").  This motive to raise $26 million supports a strong inference of scienter.  *See In re Resource America Sec. Litig.*, 2000 WL 1053861, at *6-7 (E.D. Pa. July 26, 2000) ("[Plaintiffs'] allege that all of the Resource America defendants were motivated to commit fraud in order to complete a $112 million public stock offering. In that context a lack of insider trading does not serve to negate the strong inference of scienter which the Court finds based on the allegations of the Amended Complaint.").

Sixth, while it is accurate that allegations of GAAP violations standing alone typically do not establish a strong inference of scienter, where, as here, the GAAP violations involve simple accounting rules, *i.e.* disclosing material related party transactions, supports a strong inference of scienter.  *See, e.g., Henning v. Orient Paper, Inc.*, 2011 WL 2909322, at * 6 (C.D. Cal. July 20, 2011) (holding that scienter adequately alleged against PRC defendants for failing to disclose related party transactions, and finding that the accounting rule relating to the disclosure

---

12

material related party transactions was a simple one that supported a strong inference of scienter); *In re Medicis Pharmaceutical Corp. Sec. Litig.*, 2010 WL 3154863, at * 5 (D. Ariz. Sep. 20, 2010) (simplicity and obviousness of accounting rule supports a strong inference of scienter).

Additionally, PRC accounting rules require disclosure of material related party transactions just the same as US GAAP. *See* ¶¶ 55-56, Ex. 2.  Tao is a sophisticated business person owning and controlling numerous companies that engaged in over $83 million and $232.9 million in undisclosed related party transactions with Keyuan in 2009 and 2010, respectively.  Thus it is implausible Tao did not understand the significance of related party transactions and the need to disclose them.  *See Snellink*, 870 F.Supp.2d at 941 (rejecting argument that there was no scienter for failure to disclose related party transactions involving the Company's CEO because company was new to the U.S. markets and could not appreciate the requirement to disclose related party transactions).  Other courts in this District and elsewhere have refused to dismiss cases against reverse merger Chinese companies, such as Keyuan, for failing to disclose material related party transactions.  *Henning*, 2011 WL 2909322, at * 8 (sustaining complaint alleging undisclosed related party transactions by reverse merger PRC company); *In re A-Power*, 2012 WL 1983341, at * 8 (same); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 2012 WL 3758085, at * 9 (S.D.N.Y. Aug. 29, 2012) (same).

Seventh, the competing inference of ignorance or mistake is undercut by the overt acts to assist the related parties owned by Tao. Keyuan admitted that it may have violated PRC banking laws by attempting to circumvent bank restrictions by engaging in short term financings with Tao's related entities.  ¶8, Ex. 6 at F-30 paragraph (e).  In 2009, the short-term financings with Tao's entities amounted to nearly $18.5 million and in 2010 were $21 million. Ex. 6, at F-30.

Keyuan also lied to freight companies to benefit the related parties.  Keyuan admitted that "[i]n the past we sometimes accommodated requests from our

customers to change the name of products so that our customers could save on freight costs."  ¶90.

These previously undisclosed overt acts that were done to support the undisclosed related party transactions weigh against any notion that the failure to disclose the material related party transactions was anything other than fraud.  *See, South Ferry*, 542 F.3d at 776 ("the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective.").[13]

<u>Lastly</u>, Tao asserts that the SEC's serving him with a Wells Notice indicating a formal SEC investigation against him does not support an inference of scienter. Tao Opp. 15-16.  This argument is without merit.

It is clear that the SEC investigation concerns the undisclosed related party transactions.  Keyuan is in the process of settling the SEC's securities fraud complaint for failing to disclose the material related party transactions in exchange for its payment of $1 million civil penalty (RJN Ex. 4)—a large penalty given that Keyuan in its most recent SEC filing reported only $7.2 million in cash.  *See* RJN Ex. 7.  Keyuan's consent was signed by defendant Tao. Moreover, defendant Aichun Li, Keyuan's CFO, has agreed to a suspension from practicing before the SEC and her payment of a $25,000 penalty.  *See* RJN Ex. 6.  These are not the types of penalties one agrees to if there is no fraud.  Instead, these facts support a strong inference of fraud.  *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999) ("existence of an ancillary lawsuit charging fraud by a company and he company's quick settlement of the suit" is evidence of scienter).[14]

---

[13] *U.S.* v. *York*, 933 F.2d 1343, 1350 (7th Cir. 1991), *cert. denied*, 502 U.S. 916, *overruled on other grounds by Wilson* v. *Williams,* 182 F.3d 562 (7th Cir. 1999)("Dean Wigmore's 'doctrine of chances' tells us that highly unusual events are unlikely to repeat themselves; the recurrence of a similar result … tends to establish … the presence of the normal, i.e. criminal, intent accompanying such act.")(quotation marks and citation omitted).

[14] *See also, Hawaii Ironworkers Annuity Trust Fund v. Cole*, 10-CV-371, 2011 WL 1257756, at *9 (N.D. Ohio March 31, 2011) ("[T]here is nothing improper about

### D. Plaintiffs Adequately Allege Loss Causation

In this Circuit, to plead loss causation, Plaintiffs need only plead a specific economic loss tied to revelation that a particular misstatement is false. *In re Gilead*, 536 F.3d 1049, 1056 (9th Cir. 2008). Here Plaintiffs allege that the true facts began to enter the market through several partial corrective disclosures, which caused the price of Keyuan's stock to fall. The partial disclosures began on April 1, 2011, when, without warning, trading in Keyuan's stock was halted. ¶96. Later in the day on April 1, 2011 Keyuan announced that it had commenced an investigation relating to certain cash transactions and recorded sales – which turned out to be the related party transactions it disclosed in a later press release. ¶97. Keyuan issued another announcement on April 1, 2011 stating that the Company's previously issued financial statements for 2010 could no longer be relied upon. ¶98. On May 20, 2011 KPMG resigned as Keyuan's auditor. Keyuan's stock remained halted at $4.88/share until October 7, 2011. ¶96. On October 7, 2011, when the trading halt was lifted, Keyuan's stock fell to $1.50/share or a 69% decline. ¶101. Partial corrective disclosures that are linked to a stock price decline are adequate to plead loss causation. *See, e.g.*, *Burritt v. Nutracea*, 2010 WL 668806, at * 9 (D. Ariz. Feb. 25, 2010) (crediting partial disclosures and explaining "loss causation may be premised on partial revelations that do not cover the complete extent of the falsity of specific prior statements" and rejecting argument there is no loss causation when additional partially corrective information entered the market that had no price impact) (citation omitted); *In re Bradley Pharms. Inc. Sec. Litig.*, 421 F.Supp.2d 822, 828-29 (D.N.J. 2006) (that partial disclosures do not have a price impact does not mean there is no loss causation).

---

utilizing information contained in an SEC complaint as evidence.") (quoting *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 340-41 (S.D.N.Y. 2010).; *see, also de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003) ("it would have been irresponsible for plaintiff to have ignored the SEC's highly relevant allegations and findings.").

Lastly, the October 7, 2011 price decline is adequate to establish loss causation for the Private Placement because each unit in the Private Placement was priced at $35/unit, which effectively represented 10 shares of common stock. A unit consisted of 9 shares of Series A preferred stock that was converted to common stock one for one, one share of common stock, and three year warrants to purchase Keyuan stock at $4.50/share and $5.25/share. Ex. 1, at 1-2. Thus, the effective cost basis was $3.50/share for shares purchased in the Private Placement. Plaintiffs allege that the fraud caused Keyuan common stock to fall to $1.50/share on October 7, 2011. Thus, Private Placement purchasers lost $2.00/share or $20/unit.

## IV. LAW OF THE CASE DOCTRINE PRECLUDES TAO'S CHALLENGE TO THE PUBLIC CLASS ALLEGATIONS

"The law of the case doctrine is a judicial intervention designed to aid in the efficient operation of court affairs." *U.S.v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (quoting *Milgard Temerping, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). The doctrine provides that "a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *Id.* To apply in a case, "the issue in questions must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *Id.* (quoting *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)). The application of the doctrine is discretionary. *Id.*

A court may only depart from the law of the case if:

> (1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result.

*U.S. v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998). The "[f]ailure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id* (quoting *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir.

1997)).   Tao has failed to present any argument or facts that compel this Court to deviate from law of case as to the following elements of Plaintiffs' 10(b) claim.

Falsity: Tao asserts that "Plaintiffs fail to plead any facts to evidence that Keyuan's omission of the related party transaction made any statement in … the Company's filings false or misleading."  Tao Opp. at 9:16-20.  In the Court's prior decision, the Court held that Plaintiffs had adequately alleged that the related party transactions constituted material omissions in the Company's SEC filings to investors.  Citing case authorities from 2012, the Court explained that it "is in accord with other courts in this district in concluding that Plaintiffs' sufficiently pleading falsity by alleging that Keyuan failed to disclose transaction worth over $100 million with companied owned by Keyuan's CEO [Tao].   Therefor the element is met." *Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at * 8 (C.D. Cal. Nov. 1, 2012).

Scienter:  Tao variously argues he was "not responsible" for the omission of the related party transactions in the Company's SEC filings (*e.g.*, Tao Opp. at 9:27-10:6), he lacked knowledge (*e.g.*, Tao Opp. at 13-14), and thus he did not act with scienter.[15]   As to scienter the Court previously held that Plaintiffs have adequately alleged "scienter with regard to Tao, which may be imputed to Keyuan."   *See Cheung*, 2012 WL 5834894, at * 9 ("Plaintiffs have thus alleged facts from which the Court can infer that Tao must have known about the related party transaction and so he acted with scienter when he signed financial documents that failed to disclose those transactions."

Loss Causation: The Court also held that Plaintiffs adequately pleaded loss causation.  The Court explained that:

> Here, plaintiffs allege that as a result of Keyuan's failure to disclose the related-party transactions in the financial statements and Offering Documents, trading in

---

[15] While Tao couches his argument that he was "not responsible" under falsity it is the same argument he has made for lack of knowledge under scienter, i.e., he did not act with scienter because he was not responsible for the material omissions.  *See Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001) (observing that the falsity and scienter inquiries overlap significantly).

1
2
3

Keyuan stock ceased on April 1, 2011, and that the value of the stock fell 69 percent when trading re-opened. *FAC* ¶¶ 9–10. Plaintiffs further allege that investors suffered a loss as a result of the decline in value. *Id* . ¶ 10. Therefore, Plaintiffs have adequately pleaded economic loss and loss causation.

*Id.*, at * 11. (citations omitted).

4
5

## V.   PLAINTIFFS HAVE ALLEGED TAO'S CONTROL PERSON LIABILITY

6
7
8
9
10
11

Section 20(a) of the Exchange Act confers liability on "every person who, directly or indirectly, controls any person [who violates Section 10(b) of the Exchange Act]."  To allege a violation of Section 20(a), a plaintiff must allege (1) a primary violation of the securities laws; and (2) that the defendant exercised actual power or control over the primary violator.  *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

12
13
14
15
16
17
18

Preliminarily, the Court has already held that Plaintiffs have pled a primary violation against Keyuan with respect to the Public Class.  *See Cheung*, 2012 WL 5834894, at * 11.  Following the filing of the Complaint, Keyuan opted not to file a motion to dismiss the Private Placement claims against it, and has thus effectively conceded that a primary violation of the Exchange Act has been stated against Keyuan for the Private Placement.   Thus, Tao's motion turns on the control element.

19
20
21
22
23
24
25
26

Control includes the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person." *Howard,* 228 F.3d 1057, n.9, (quoting 17 C.F.R. § 230.405). Control can also be shown through "actual authority over the preparation and presentation to the public of financial statements…."  *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).  The control element is not subject to the particularized pleading requirements of FRCP 9(b) or the PSLRA as the claim is not grounded in fraud.  *Dean v. China Agritech, Inc.*, 2011 WL 5148598, at *6 (C.D. Cal. Oct. 27, 2011).  Culpable participation is not necessary to make out a prima facie case.  *Howard*, 228 F.3d at 1065.[16]  Scienter is

27
28

---

[16] It is defendant's burden to prove his or her defense of good faith and absence of culpable participation. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th

not an element of control person liability.  *In re Amgen, Inc. Sec. Litig.*, 544 F.Supp.2d 1009, 1037 (C.D. Cal. 2008).

The weight of authority provides that control person status need only be pled according to Rule 8(a).  *E.g. Petrie v. Electronic Game Card, Inc.*, 2011 WL 165402, at *6 (C.D Cal. January 12, 2011).  Whether a defendant is a control person is a fact question rarely appropriate for motion practice.  *See In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008).

Plaintiffs allege that at the time of the Private Placement Tao was Keyuan's CEO, Chairman, CFO and President (¶33) and thereafter the CEO, Chairman and controlling shareholder of Keyuan (¶20); Tao prepared the Offering Documents, participated in road shows promoting the Private Placement, and made presentations of the Offering Documents to investors (¶¶33-38); Tao "had the power to influence and control, and did influence and control the content and dissemination of the various statements that plaintiffs contend are misleading.", Tao had "day-to-day control of Keyuan's business and operations" and "ultimate authority over the Offering Documents" ¶137, at all relevant times Tao "had direct and supervisory involvement in the day-to-day operations of the Company."  ¶139; and Tao signed certain SEC filings alleged to be false ¶91.  This is sufficient.  *See, e.g., Amgen*, 544 F.Supp.2d at 1037 (crediting similar allegations).

## VI.   CONCLUSION

For the foregoing reasons Defendant's motion should be denied.  If the Court finds the Complaint insufficient or disagrees for any reason with Plaintiff's arguments in this memorandum, Plaintiff respectfully seeks leave to amend. Leave to amend a complaint should be freely given, unless the Court is convinced that it could not be saved by any amendment. *See Eminence Capital*, 316 F.3d at 1053.

---

Cir. 1990); *accord Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 690 F. Supp. 2d 959, 971 (D. Ariz. 2010).

1

Dated:          March 4, 2013          Respectfully submitted,

2

3          **THE ROSEN LAW FIRM, P.A.**

4

5          /s/ Laurence Rosen
           Laurence M. Rosen, Esq. (SBN 219683)

6          355 South Grand Avenue, Suite 2450
           Los Angeles, CA 90071

7          Telephone: (213) 785-2610
           Facsimile: (213) 226-4684

8          Email: lrosen@rosenlegal.com

9

10         Lead Counsel for Lead Plaintiff and Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On March 4, 2013, I electronically filed the following PLAINTIFFS' OPPOSITION TO DEFENDANT CHUNFENG TAO'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on March 4, 2013.


/s/ Laurence Rosen
Laurence M. Rosen