1

2

3

4

5

6

7

8

9

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (CSB# 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Lead Counsel for Plaintiffs and Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| NEIL VANLEEUWEN AND RODNEY OMANOFF, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>        vs.<br><br>KEYUAN PETROCHEMICALS, INC., CHUNFENG TAO, AICHUN LI, WEIFENG XUE, DELIGHT REWARD LIMITED,<br><br>        Defendants. | No.:  CV-11-09495-PSG (JCGx)<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT AICHUN LI'S MOTION TO DISMISS<br><br>CLASS ACTION<br><br>Hon. Philip S. Gutierrez<br>Hearing date: April 22, 2013<br>Time: 1:30 p.m.<br>Location: Ctrm. 880 (Roybal) |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...........................................................................i

TABLE OF AUTHORITIES ....................................................................ii

I. INTRODUCTION ...............................................................................1

II. STATEMENT OF FACTS .................................................................2

    A.  Li Knowingly Turned a Blind Eye to Keyuan's Undisclosed Related Party Transactions.................................................................2

    B.  Keyuan Lists a PRC Address for Li. Plaintiffs Promptly Served Li After Learning of Her Residence in the U.S. .............................4

ARGUMENT...............................................................................................4

III. PLAINTIFFS HAVE ADEQUATELY ALLEGED CERTAIN ELEMENTS OF THE PRIVATE PLACEMENT CLAIMS UNDER THE EXCHANGE ACT .......................................................................4

    A.  Applicable Pleading Standards................................................4

    B.  Reliance is Presumed Under *Affiliated Ute* ...............................5

    C.  Loss Causation is Adequately Alleged .........................................7

IV.  PLAINTIFFS HAVE ADEQUATELY ALLEGED LI'S SCIENTER AS TO THE PUBLIC CLASS ...................................................................8

    A.  Scienter Pleading Standards .........................................................8

    B.  Li Acted With Scienter .................................................................9

V.  PLAINTIFFS HAVE ALLEGED LI'S CONTROL PERSON LIABILITY ........................................................................................12

VI. THE PSLRA DOES NOT REQUIRE ADDITIONAL NOTICES ...........................................................................................................14

VII. RULE 4(M) DOES NOT WARRANT DISMISSAL .......................17

VIII. VENUE IS PROPER IN THE CENTRAL DISTRICT .................18

IX. CONCLUSION ...............................................................................20

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Affiliated Ute Citizens of Utah  v. United States*,
   406 U.S. 128 (1972) ........................................................................5, 6

*Binder v. Gillespie*,
   184 F.3d 1059 (9th Cir. 1999)................................................................5

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975).................................................................6

*Cheney v. Cyberguard Corp.*,
   213 F.R.D. 484 (S.D. Fla. 2003) ....................................................14, 15

*Cheung v. Keyuan Petrochemicals, Inc.*,
   2012 WL 5834894 (C.D. Cal. Nov. 1, 2012)...................................9, 12

*de la Fuente v. DCI Telecomms., Inc.*,
   259 F.Supp.2d 250 (S.D.N.Y. 2003)....................................................10

*Dean v. China Agritech, Inc.*,
   2011 WL 5148598 (C.D.Cal. 2011)..................................................9, 13

*Desai v. Deutsche Bank Securities, Ltd.*,
   573 F.3d 931 (9th Cir. 2009).................................................................6

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) ..............................................................................7

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003)........................................................5, 20

*Greebel v. FTP Software, Inc.*,
   194 F.3d 185 (1st Cir. 1999) ...............................................................11

*Greenberg v. Bear Stearns & Co, Inc.*,
   80 F. Supp. 2d 65 (E.D.N.Y. 2000).....................................................15

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ............................................................................18

*Hawaii Ironworkers Annuity Trust Fund v. Cole*,

   2011 WL 1257756 (N.D. Ohio March 31, 2011).....................................................10

*Henning v. Orient Paper, Inc.*,

   2011 WL 2909322 (C.D. Cal. July 20, 2011) .........................................................11

*Hollinger v. Titan Capital Corp.*,

   914 F.2d 1564 (9th Cir. 1990)...............................................................................13

*Howard v. Everex Systems, Inc.*,

   228 F.3d 1057 (9th Cir. 2000)..................................................................9, 12, 13

*In re AES Corp. Sec. Litig.*,

   240 F. Supp. 2d 557 (E.D. Va. 2003).....................................................................18

*In re Amgen, Inc. Sec. Litig.*,

   544 F.Supp.2d 1009 (C.D. Cal. 2008) ...........................................................13, 14

*In re Countrywide Financial Corp. Sec. Litig.*,

   588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................................13

*In re Crocs, Inc. Sec. Litig.*,

   774 F.Supp.2d 1122 (D. Colo. 2011) ......................................................................6

*In re Cyberonics Inc. Sec. Litig.*,

   468 F. Supp. 2d 936 (S.D. Tex. 2006) ...................................................................16

*In re Daou Systems, Inc.*

   411 F. 3d 1006, 1024 (9th Cir. 2005)......................................................................8

*In re Dynex Capital, Inc. Sec. Litig.*,

   2011 WL 781215 (S.D.N.Y. March 7, 2011) ..........................................................7

*In re Intern. Rectifier Corp. Sec. Litig.*,

   2008 WL 4555794 (C.D. Cal. May 23, 2008) ......................................................15

*In re Laidlaw Sec. Litig.*,

   1991 WL 170837 (E.D. Pa. Aug. 27, 1991)..........................................................18

*In re LDK Solar Secs. Litig.*,

   584 F. Supp. 2d 1230 (N.D. Cal. 2008) ..................................................................5

*In re Leapfrog Enterprises, Inc. Sec. Litig.*,

2005 WL 5327775 (N.D. Cal. July 5, 2005)........................................................16

*In re Select Comfort Corp. Sec. Litig.*,

2000 WL 35529101 (D. Minn. Jan. 27, 2000)....................................................16

*In re Select Comfort Corp. Sec. Litig.*,

No. 99-184, Slip Op. at 4 (D. Minn. May 12, 2000)...........................................15

*In re Thornburg Mortg., Inc. Sec. Litig.*,

629 F. Supp. 2d 1233 (D.N.M. 2009) .................................................................14

*In re Worlds of Wonder Secs. Litig.*,

694 F. Supp. 1427 (N.D. Cal. 1988) ...................................................................13

*Lemoge v. U.S.*,

587 F.3d 1188 (9th Cir. 2009)..............................................................................17

*New Mexico State Investment Council v. Ernst & Young LLP*,

641 F.3d 1089 (9th Cir. 2011)................................................................................8

*No. 84 Employer-Teamster Joint Counsel Pension Trust Fund v. Am. West Holding Corp.*,

320 F.3d 920 (9th Cir. 2003)..................................................................................9

*Oppenheimer Fund, Inc. v. Sanders*,

437 U.S. 340 (1978) ............................................................................................18

*Petrie v. Electronic Game Card, Inc.*,

2011 WL 165402 (C.D Cal. January 12, 2011) ..................................................13

*Poulos v. Caesars World, Inc.*,

379 F.3d 654 (9th Cir. 2004)..................................................................................7

*S.E.C. v. Lee*,

720 F.Supp.2d 305 (S.D.N.Y. 2010)...................................................................10

*S.E.C. v. Todd*,

642 F.3d 1207 (9th Cir. 2011)..............................................................................13

*Securities Investor Protection Corp. v. Vigman*,

764 F.2d 1309 (9th Cir. 1985).............................................................................18

*South Ferry LP, No. 2 v. Killinger*,

   542 F.3d 776 (9th Cir. 2008)........................................................................8, 9, 10

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,

   633 F.Supp.2d 763 (D. Ariz. 2009)...........................................................................9

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,

   690 F. Supp. 2d 959 (D. Ariz. 2010)......................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

   551 U.S. 308 (2007).........................................................................................5, 8, 10

*Turner v. ShengdaTech, Inc.*,

   2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011)..........................................................14

*Waldman v. Wachovia Corp.*,

   2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009)........................................................16

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,

   655 F.3d 1039 (9th Cir. 2011)...................................................................................5

*Zucco Partners, LLC v. Digimarc Corp.*,

   552 F.3d 981 (9th Cir. 2009)................................................................................5, 8

## RULES

Fed. R. Civ. P. 4(m)............................................................................................1, 17

Fed. R. Civ. P. 8(a).................................................................................................13

Fed. R. Civ. P. 9(b).................................................................................................10

Fed. R. Civ. P. 12(b)(6)..........................................................................................10

## STATUTES

15. U.S.C. §78aa.....................................................................................................18

15 U.S.C. § 78u-4(a)(3)(A)(i)..................................................................................14

15 U.S.C. § 78u-4(a)(3)(A)(ii).................................................................................14

17 C.F.R. § 230.405.................................................................................................12

Securities Act of 1933 Section 11 ..........................................................................16

Securities Exchange Act of 1934 Section 10(b).................................................passim

1

Securities Exchange Act of 1934 Section 20(a) ................................................ 12, 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

The crux of Li's motion is her scienter. She argues that the allegations in the Second Amended Complaint (the "Complaint") at most present a strong inference of non-culpable conduct as the undisclosed related party transactions did not involve Li and Li served as Keyuan CFO for a limited amount of time.

The problem for Li is that there are specific facts in the record demonstrating that Li knowingly turned a blind eye to the undisclosed material related party transactions.  Li was specifically hired for, and was the most knowledgeable at Keyuan about U.S. accounting and financial reporting compliance.  Li was aware of the undisclosed related party transaction at the time she signed-off on Keyuan's SEC filings that failed to disclose those same related party transactions.  The SEC even states that during the preparation of Keyuan's second quarter 2010 10-Q, Li was informed of certain of the undisclosed related party transactions on several occasions.  Yet, Li signed-off on Keyuan's second quarter 10-Q that failed to disclose the material related party transactions.  Li also provided knowingly false Management Representation letters to Keyuan's auditors that concealed the material related party transactions in Keyuan's 2010 second and third quarter 10-Qs.

Li's other arguments lack merit. The Private Placement claims do not require an additional lead plaintiff nor does the PSLRA require dismissal because no early notice was issued for the Private Placement claims.

Federal Rule of Civil Procedure 4(m) does not warrant dismissal because Plaintiffs reasonably believed that Li was a resident of the People's Republic of China ("PRC") and there is no evidence of the requisite "willfulness" or "deviousness."  Indeed, once Plaintiffs were provided discovery responses that identified a North Carolina address for Li, Plaintiffs caused Li to be served within three days.

Venue is proper in the Central District because Keyuan's false statements were transmitted into this District.   Moreover, plaintiff Rodney Omanoff

1

maintained (and continues to maintain) a residence in California at the time he invested in the Private Placement.   Mr. Omanoff also reviewed the Offering Documents in California.

Li's motion should be denied.

## II.    STATEMENT OF FACTS

Plaintiffs incorporate by reference the Statement of Facts set forth in Plaintiffs' Opposition to Defendant Chunfeng Tao's Motion to Dismiss (Dkt. # 73)("Tao Opposition"), as if fully set forth herein.[1]

### A. Li Knowingly Turned a Blind Eye to Keyuan's Undisclosed Related Party Transactions

As CFO of Keyuan, Li knowingly signed false Management Representation letters.  ¶¶70-71.[2]  The Management Representation letters required Li to certify that she disclosed all related party transactions to Keyuan's auditors.  ¶67.  While Li was providing false Management Representation letters to Keyuan's auditors, she separately signed Keyuan's quarterly reports for the second and third quarters of 2010 filed with the SEC on August 16, 2010 and November 15, 2010, respectively.  ¶¶91(a)-(b);  71 (setting forth rule requiring management representation letters for forms 10-Q).   Li also signed various registration statements that failed to disclose the material related party transactions that were filed during the Public Class: September 2, 2010, October 15, 2010, November 3, 2010, December 29, 2010, and January 14, 2011. ¶91(c).

According to the SEC, Li "was the Keyuan employee most knowledgeable about U.S. GAAP and responsible for ensuring compliance with its requirements." *See* Tao Opposition Request for Judicial Notice ("Tao RJN"), Ex. 2, ¶32. "In or about April or May 2010" Li spoke with an audit manager for Keyuan's auditor, informed her that "the company was engaged in related party transactions and that

---

[1] Plaintiffs also incorporate the Notice of Errata (dkt. #78) that corrected certain paragraph references to the Complaint.
[2] All reference to "¶" or "¶¶" refer to the paragraphs of the Complaint.

those transactions should be separately identified and disclosed as related party transactions in the company's financial statements." *Id.*, ¶33. The SEC claims that despite receiving this information, "Li failed to take reasonable steps to ensure that the company was properly identifying and disclosing related party transactions." *Id.*

Among other things, the SEC identified the following misconduct:

- "[I]n August 2010, during the preparation of the second-quarter 2010 10-Q, the Chairman of Keyuan's Audit Committee asked Li to determine whether the company was engaged in related party transactions. He specifically noted that the company's loans were guaranteed by various unidentified third parties and asked whether any of those guarantors were related parties. Li thereafter followed up with Individual A, the company's Vice President of Accounting, as well as the company's Deputy Accounting Manager, **and she was expressly told that the loans were guaranteed by related parties. In that communication, Li acknowledged her understanding that the loans were guaranteed by related parties**." Tao RJN, Ex. 2, ¶34.

- "Li was also copied on four e-mails which attached summary schedules of Keyuan's bank debt. **These schedules identified loan guarantors (including Tao, Chen, Wang, and entities affiliated with those individuals) that were related parties**." *Id.*, at ¶35.

- "The information provided to Li took place in an environment where the issue of related party disclosures warranted heightened scrutiny. For instance, **in connection with the preparation of the second quarter 2010 10-Q, in July 2010, Keyuan's Audit Committee Chairman specifically asked Li for a 'detailed listing of all related party transactions.' The same Audit Committee Chairman directed Li on two subsequent occasions to ensure proper disclosure of related party transactions.**" *Id.*, at ¶36.

- At the same time other members of Keyuan's senior management submitted questionnaires, which specifically asked for the identification of related party transactions. "**None of the questionnaires that Li received, however, disclosed any such transactions, including the related party loan guarantees of which she had been expressly made**

**aware of and which the Audit Committee Chairman had asked her to identify.**" *Id.*, at ¶38.

### B. Keyuan Lists A PRC Address for Li. Plaintiffs Promptly Served Li After Learning of Her Residence in the U.S.

Li's Form 3 filed with the SEC lists an address in China as her address. *See* Further Request for Judicial Notice, filed herewith ("Further RJN") Ex. 1. Additionally, it is not disputed that Keyuan is headquartered in China and engages in business throughout China. ¶18; *see also* Ex. 1[3] at 31 ("Substantially all of our sales are generated from China.").

In moving for leave to serve defendants through alternative means, Plaintiffs sought, among other things, Li's address and PRC government identification number so that Plaintiffs could serve Li through the Hague Convention, as Plaintiffs continued to believe that Li was a resident of China. *See gen.*, dkt. # 42. During the conferral process for that motion pursuant to L.R. 7-3 and thereafter, Keyuan never indicated that Li was a resident of North Carolina. *See* Declaration of Phillip Kim, filed herewith ("Kim Decl."), ¶¶ 2-3.

On December 12, 2012 Plaintiffs served Keyuan interrogatories seeking the address, PRC government identification numbers for Li. *See* Kim, Ex. 2. In its responses, dated January 11, 2013, Keyuan identified a North Carolina residential address for defendant Li. *See*, *id.*, Ex. 3. On January 14, 2013 Li was served with the summons and Complaint. *See,* dkt. #66.

### ARGUMENT

### III. PLAINTIFFS HAVE ADEQUATELY ALLEGED CERTAIN ELEMENTS OF THE PRIVATE PLACEMENT CLAIMS UNDER THE EXCHANGE ACT

#### A. Applicable Pleading Standards

To adequately allege a Section 10(b) violation, Plaintiffs must plead particularized facts demonstrating "(1) a material misrepresentation or omission of

---

[3] All reference to "Ex. __" or "Exs. __" refer to the exhibits to the Complaint.

fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). A complaint pleads particularized facts when it specifies "the who, what, when, and by whom false statements were made." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003).

Just as on any other motion to dismiss, the Court must accept all well-pled factual allegations as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "The PSLRA in no way turns FRCP 12 into a trial-type, papers-only proceeding, much less one in which defendants get the benefit of every conceivable doubt, including credibility calls." *In re LDK Solar Secs. Litig.*, 584 F. Supp. 2d 1230, 1260 (N.D. Cal. 2008).

Preliminarily, Plaintiffs do not oppose Li's contention that the Offering Documents cannot be attributed to her as they were prepared prior to her joining Keyuan.  However, if discovery reveals otherwise, Plaintiffs will seek to amend the complaint and seek appropriate remedial measures. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1059 (9th Cir. 2011) (a district court may allow a plaintiff to amend a complaint to replead previously dismissed claims if "discovery should reveal evidence indicating that previously dismissed Defendants were in fact involved in the alleged fraudulent misconduct."). However, Li does make other generalized arguments about the Private Placement Class that Plaintiffs address below.

## B. Reliance is Presumed Under *Affiliated Ute*

Plaintiffs have invoked the presumption of reliance provided by *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972).   ¶120.   "Such a presumption is generally available to plaintiffs alleging violations of section 10(b) based on omissions of material fact." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). The Ninth Circuit has explained that the *Affiliated Ute* presumption of

reliance will apply in cases that can be "characterized as one that primarily alleges omissions." *Id.*

Here, with respect to both the Private Placement and the Public Class, Plaintiffs do not allege any affirmative misstatements but allege that Defendants failed to disclose material related party transactions in their financial reports.  Thus, Plaintiffs have adequately invoked the *Affiliated Ute* presumption.  *E.g, Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir. 1975) (affirming application of *Affiliated Ute*, because "class members' substantive claims either are, or can be, cast in omission or non-disclosure terms the company's financial reporting failed to disclose the need for reserves, conditions reflecting on the value of inventory, or other facts necessary to make the reported figures not misleading.").   Nor are Plaintiffs complaining about the nondisclosure of manipulative conduct "designed to affect the price of a security artificially by simulating market activity that does not reflect genuine investor demand."  *See Desai v. Deutsche Bank Securities, Ltd.*, 573 F.3d 931, 940-41 (9th Cir. 2009).

Li cites to *three words* out of the 35 page 143 paragraph Complaint (Li Opp. at 10:17-21) to suggest that the claims alleged herein are not "primarily" omissions.  Those paragraphs, however, are not substantive paragraphs that address the actual claims in this case.

Li also argues that because some related party transactions were disclosed in the Offering Documents, the undisclosed related party transactions (Li Opp. 10:6-11) constitute affirmative misstatements.  That the Offering Documents contained some related party transactions, but not the undisclosed related party transactions, merely demonstrated the duty to disclose material related party transactions.  Moreover, assuming *arguendo* that Plaintiffs' claims are alleging both affirmative misstatements and omissions, Plaintiffs' claims are primarily omissions based.  *In re Crocs, Inc. Sec. Litig.*, 774 F.Supp.2d 1122, 1141-42 (D. Colo. 2011) is instructive. There, the court found Plaintiffs claims to be primarily based on omissions, because the alleged misstatements were deemed untruthful because of

numerous specific undisclosed material facts.  *See, also, In re Dynex Capital, Inc. Sec. Litig.*, 2011 WL 781215, at * 7 (S.D.N.Y. March 7, 2011) (in a "mixed" case, holding that the *Ute* presumption applied as omissions were "most central" to the fraud allegations, explaining "The *Affiliated Ute* presumption applies here because the alleged omissions played an independent, or at least interdependent, role in the alleged fraud.").[4]

### C. Loss Causation is Adequately Alleged

Li argues that Plaintiffs "fail to plead any causal connection between any actions by Ms. Li and Plaintiffs' alleged losses… ."  Li Opp. at 11:14-15.  Li is merely repeating her argument that the Offering Documents cannot be attributed to her as she was not with Keyuan when they were prepared but couching it in terms of loss causation. As noted above, Plaintiffs do not oppose her motion to dismiss the 10(b) claims against her relating to the Private Placement on her assertion she was not employed by Keyuan when the Offering Documents were prepared.

Li also argues that "Plaintiffs' invocation of the *Affiliate [sic] Ute* presumption, expressly disclaiming the 'need to prove reliance' undermines any contention that "a misrepresentation or omission caused [Plaintiffs] to engage in a transaction."  Li Opp. at 11:23-26. Plaintiffs do not know what to make of this argument. Whether "a misrepresentation or omission caused [Plaintiffs] to engage in a transaction" is reliance; it is also known transaction causation.  *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Simply, that one relies on a presumption of reliance, whether its *Affiliated Ute* or the fraud-on-the-market, does not undermine loss causation.

To the extent Li's opposition can be construed as a general attack on loss causation, Plaintiffs incorporate by reference herein Section III.D. of the Tao Opposition at 21.

---

[4] Li's reliance on  *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) is off the mark.  *Poulos* was a RICO case where plaintiffs "concede[d] that their video poker machine claims were not primarily claims of omission." *Id.,* at 666-67.

## IV.   PLAINTIFFS HAVE ADEQUATELY ALLEGED LI'S SCIENTER AS TO THE PUBLIC CLASS

### A. Scienter Pleading Standards

A complaint alleging violations of Section 10(b) of the Exchange Act must state facts giving rise to a strong inference that the defendants made false or misleading statements either intentionally or with deliberate recklessness. *Zucco Partners, LLC v. Digimarc*, 552 F.3d 981, 991 (9th Cir. 2009). Deliberate recklessness is conduct that "reflects some degree of intentional or conscious misconduct." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). In assessing scienter, the Ninth Circuit "has advised against developing separate rules of thumb for each scienter allegation." *New Mexico State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011) (internal quotes and citation omitted).

In *Tellabs,* the Supreme Court held that a flexible, common-sense standard applies when determining whether the PSLRA's pleading requirement has been met.  In determining whether a complaint meets this standard, "courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true."  551 U.S. at 322.  They are then to consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.  *Id.*  The "totality of the allegations in a complaint may adequately establish scienter even where individual allegations" considered separately do not. *In re Daou Systems, Inc.,* 411 F. 3d 1006, 1024 (9th Cir. 2005).

For an inference of scienter to be strong, "a reasonable person would deem [it]… cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  If the inference of scienter is equally as compelling as any innocent inference, the motion to dismiss must be denied.  *New Mexico State Investment Council*, 641 F.3d at 1095; *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 633 F.Supp.2d 763, 791-92

(D. Ariz. 2009) ("a tie goes to the Plaintiff in terms of competing inferences of scienter").  The Ninth Circuit permits a district court to evaluate altogether a series of less precise allegations to meet the PSLRA requirement.  *South Ferry*, 542 F.3d at 784. Thus, "vague, ambiguous, or general allegations," which may have been dismissed under prior Ninth Circuit case law, "are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *Id.* Courts "need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective." *Id.*[5]

### B. Li Acted With Scienter

Preliminarily, Li does not dispute, and thus concedes that Keyuan's SEC filings issued during the Public Class were materially misleading as they omitted material related party transactions.  Indeed, the Court previously found that the Plaintiffs had adequately alleged the falsity of Keyuan's SEC filings for failure to disclose material related party transactions.  *Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at * 8 (C.D. Cal. Nov. 1, 2012).  Additionally, there is no dispute that the SEC filings Li signed are attributable to her.  *See Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000) (a corporate officer or directors who sign financial disclosures are the makers of that statement); *Dean v. China Agritech, Inc.*, 2011 WL 5148598, at * 4 ("SEC filings containing misrepresentations may be attributed to corporate officers that sign them.").

Li's scienter can be summed up as: "the reasonable inferences drawn from the factual allegations strongly support the conclusion that Ms. Li acted with a non-culpable state of mind in connection with the allegations in the SAC."  Li Opp. at 15:11-13.  Thus, Li's argument turns on whether the "complaint in its entirety, as

---

[5]  The Ninth Circuit has emphasized that "dishonest insiders may be able to cover their tracks fairly well…. [u]nless reasonable inferences from circumstances suffice to get a case to a jury." *No 84 Employer-Teamster Joint Counsel Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 946 (9th Cir. 2003).

well as other sources court ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court can take judicial notice" give rise to a strong inference of scienter. *Tellabs,* 551 U.S. at 322-23.

One way to adequately demonstrate scienter is to rely on a defendant's position within a company and to present specific facts that show that the "defendant[] had actual access to the disputed information." *South Ferry*, 542 F.3d at 785-86. Plaintiffs have done so for Li.

Li was Keyuan's CFO until her resignation on October 12, 2011. ¶21. Li is a CPA with an MBA and MS in Accounting. *Id.* Li "was the Keyuan employee most knowledgeable about U.S. GAAP and responsible for ensuring compliance with its requirements." Tao RJN Ex. 2, ¶32.[6]

Li signed Keyuan's second quarter 2010 10-Q that was filed with the SEC on August 16, 2010, which failed to disclose the material related party transactions. ¶91(a). The SEC states that in preparing the 10-Q, "the Chairman of Keyuan's Audit Committee asked Li to determine whether the company was engaged in related party transactions" particularly whether the company's loans were guaranteed by related parties. Tao RJN, Ex. 2 ¶34. "Li thereafter followed up …. and she was expressly told that the loans were guaranteed by related parties. In that communication, Li acknowledged her understanding that the loans were guaranteed by related parties." *Id.* Li also was copied on four e-mails that identified related parties on summary scheduled on Keyuan's bank debt. *Id.*, at ¶35. The SEC states

---

[6] Li may argue that Plaintiffs cannot rely on the allegations contained in the SEC complaint against her. However, the allegations in an SEC complaint may be relied upon in meeting Rule 9(b) and PSLRA pleading standards. *See, Hawaii Ironworkers Annuity Trust Fund v. Cole*, 2011 WL 1257756, at *9 (N.D. Ohio March 31, 2011) ("[T]here is nothing improper about utilizing information contained in an SEC complaint as evidence."); *S.E.C. v. Lee,* 720 F.Supp.2d 305, 340-41 (S.D.N.Y. 2010) ("There is no rule barring a private plaintiff from relying on government pleadings and proceedings in order to meet Rule 9(b) and PSLRA thresholds."); *de la Fuente v. DCI Telecomms., Inc.*, 259 F.Supp.2d 250, 260 (S.D.N.Y. 2003) ("SEC complaint may provide more evidentiary support then similar claims based upon media reports").

that when Li was provided this related party transaction information it was "in an environment where the issue related party disclosures warranted heightened scrutiny." *Id.*, at ¶36.

At the same time, Li received questionnaires from other members of senior management that specifically asked to identify related party transactions. However, "[n]one of the questionnaires that Li received, disclosed any such transactions, including the related party loan guarantees of which she had been expressly made aware of and which the Audit Committee Chairman had asked her to identify." *Id.*, at ¶38. The second quarter 2010 10-Q failed to disclose the loan guarantees and any of the other related party transactions. ¶83, 91(a), and Ex. 2.

That Li concealed the material related party transactions is further bolstered by the fact that in connection with the second and third quarter 2010 10-Qs that Li signed, Li knowingly signed false management representation letters that failed to disclose the material related party transactions.  ¶¶71-73.

There are additional facts in the record when considered holistically with the facts discussed above, support a strong inference of scienter.

    •    Li's quick settlement of the SEC civil action with an agreed suspension from practicing before the SEC and a cash fine of $25,000.  The agreed suspension effectively makes Li unemployable as an officer of a publicly traded company. *See* Tao RJN, Exs. 4,6; *see Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999) ("existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of the suit" is evidence of scienter).

    •    Simplicity of the GAAP violations at-issue.  *See, e.g., Henning v. Orient Paper, Inc.*, 2011 WL 2909322, at * 6 (C.D. Cal. July 20, 2011) (holding that scienter adequately alleged against PRC defendants for failing to disclose related party transactions, and finding that the accounting rule relating to the disclosure material related party transactions was a simple one that supported a strong inference of scienter).

- Pervasiveness of the fraud. The related party transactions totaled over $232 million in 2010 alone. ($101.7 million in sales to Tao ¶75; $25 million in purchases of raw materials from Tao ¶78; $79.9 million in loan guarantees by Tao Ex. 6, at F-30; $21 million in short term financings Ex. 6, at F-30; and $5.2 million due Tao' and his entities, Ex. 6 at F-30). Keyuan also lied to freight companies to benefit the related parties. ¶90 ("In the past, we sometimes accommodated requests from our customers to change the name of products so that our customers could save on freight costs."). Keyuan may have violated banking laws. *See* ¶8, Ex. 6 at F-30 paragraph (e) (Keyuan admitted that it may have violated PRC banking laws by attempting to circumvent bank restrictions by engaging in short term financings with the related entities).

## V. PLAINTIFFS HAVE ALLEGED LI'S CONTROL PERSON LIABILITY

Section 20(a) of the Exchange Act confers liability on "every person who, directly or indirectly, controls any person [who violates Section 10(b) of the Exchange Act]." To allege a violation of Section 20(a), a plaintiff must allege (1) a primary violation of the securities laws; and (2) that the defendant exercised actual power or control over the primary violator. *Howard*., 228 F.3d at 1065.

Preliminarily, the Court has already held that Plaintiffs have pled a primary violation against Keyuan with respect to the Public Class. *See Cheung*, 2012 WL 5834894, at * 11. Following the filing of the Complaint, Keyuan opted not to file a motion to dismiss the Private Placement claims against it, and has thus effectively conceded that a primary violation of the Exchange Act has been stated against Keyuan for the Private Placement. Thus, Li's motion turns on the control element, that is, was she a control person from the time she joined Keyuan?

Control includes the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person." *Howard,* 228 F.3d 1057, n.9, (quoting 17 C.F.R. § 230.405). Control can also be shown through

"actual authority over the preparation and presentation to the public of financial statements…." *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).  The control element is not subject to the particularized pleading requirements of FRCP 9(b) or the PSLRA as the claim is not grounded in fraud.  *Dean*, 2011 WL 5148598, at *6.  Culpable participation is not necessary to make out a prima facie case.  *Howard*, 228 F.3d at 1065.[7]   Scienter is not an element of control person liability.  *In re Amgen, Inc. Sec. Litig.*, 544 F.Supp.2d 1009, 1037 (C.D. Cal. 2008).

The weight of authority provides that control person status need only be pled according to Rule 8(a).  *E.g. Petrie v. Electronic Game Card, Inc.*, 2011 WL 165402, at *6 (C.D Cal. January 12, 2011).  Whether a defendant is a control person is a fact question rarely appropriate for motion practice.  *In re Worlds of Wonder Secs. Litig.*, 694 F. Supp. 1427, 1435 (N.D. Cal. 1988); *accord In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008).

Plaintiffs allege that Li was the CFO of Keyuan. ¶21.  Li signed the SEC filings that are admittedly misleading.  ¶91(a)-(c).  Li "had the power to influence and control, and did influence and control the content and dissemination of the various statements that plaintiffs contend are misleading.", Li had "day-to-day control of Keyuan's business and operations" and "ultimate authority over the Offering Documents" ¶137, and at all relevant times Li "had direct and supervisory involvement in the day-to-day operations of the Company."  ¶139.  Indeed, according to the SEC, Li "was hired to ensure the company's compliance with U.S. Generally Accepted Accounting Principles ("GAAP") and oversee the SEC reporting process." Tao RJN, Ex. 2, ¶ 3.  Li was also specifically involved and had knowledge of the undisclosed related party transactions. *Id.*, at ¶¶ 34-38.  These

---

[7] It is defendant's burden to prove his or her defense of good faith and absence of culpable participation. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990); *accord Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 690 F. Supp. 2d 959, 971 (D. Ariz. 2010).

kinds of allegations are adequate to allege Li's control under Section 20(a).  *See, e.g., Amgen*, 544 F.Supp.2d at 1037 (crediting similar allegations).

## VI.   THE PSLRA DOES NOT REQUIRE ADDITIONAL NOTICES

The purpose of the PSLRA notice provision is to ensure that the most adequate plaintiff represents the class -- presumptively, the person who has suffered the largest losses -- to ensure that the claims are pressed with the greatest possible vigor. *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 502-03 (S.D. Fla. 2003). Here, however, the motion is not brought by a plaintiff who has a claim under the amended but not the original complaint, but by a defendant who seeks to prevent the claims from ever being aired.

As one court has noted, the PSLRA contemplates a single notice period triggered when "'*the* complaint'" is filed. *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1239 (D.N.M. 2009) (*quoting* 15 U.S.C. § 78u-4(a)(3)(A)(i)) (emphasis added). And "where a later action asserts substantially the same claim as a first-filed action, 'only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published.'" *Turner v. ShengdaTech, Inc.*, 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011) (*quoting* 15 U.S.C. § 78u-4(a)(3)(A)(ii)). The statutory text thus suggests that there will be only one notice in each action even if various complaints alter the scope of the class:

> While the PSLRA does not foreclose the possibility of republication and additional notices, the language of the statute cautions against imposing such requirements in all but unusual situations. *Requiring republication in certain situations, as some courts have done, seems to be mostly a matter of judicial gloss on the statute, rather than a requirement firmly rooted in the PSLRA's text*.

*Thornburg*, 629 F. Supp. 2d at 1239 (emphasis added).[8]

---

[8] Just as in *Thornburgh*, it is not clear from Li's papers what relief she wants from the Court, or why she thinks she is entitled to it. Does she want the Court to dismiss the claims for what she believes is a failure to adhere to the PSLRA, as in *Select Comfort*, order republication, as in *Waldman* or *LeapFrog*, or stay the case?

Hence, so long as the amended complaint is "substantially similar" to the original complaint, no action is required by plaintiffs, and no relief available to defendants. *Id.* Courts recognize that an amended complaint that merely extends a class period is "substantially similar". *In re Intern. Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *23 (C.D. Cal. May 23, 2008); *Cheney*, 213 F.R.D. at 502-03. Similarly, notice is not required where an amended complaint names a new defendant. *Greenberg v. Bear Stearns & Co, Inc.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000). Finally, notice is not required where an amended complaint brings new claims. *In re Select Comfort Corp. Sec. Litig.*, Civil No. 99-184 (DSD/JMM), Slip Opinion at 4 (D. Minn. May 12, 2000) (reversing magistrate judge opinion cited by Li).

The initial complaint in this action brought claims for securities fraud (i.e., violations of Section 10(b) and 20(a) of the Exchange Act) against Keyuan, Tao, Li, Xue, and Delight Reward Limited, on behalf of persons who bought Keyuan shares between August 16, 2010, and October 7, 2011. Dkt. # 1, at 1. The Second Amended Complaint brings the *same claims* against the *same parties*, based on the *same* misrepresentations, by a class that is expanded to include investors who bought units in a private placement closing on April 22, 2010, and May 18, 2010. ¶27. The private placement units are convertible bonds convertible into, and options that referred to, the same Keyuan common stock that the remainder of the class bought. ¶31. Hence, here, lead plaintiffs' amended complaint merely extended the relief sought to new purchasers, just like an amended complaint that extends a class period. And hence, lead plaintiffs were not required to republish notice.

Defendants have cited some outlier cases in which courts allowed some relief (typically merely republication of notice). The cases Li principally relies on are distinguishable. In *Select Comfort*, the plaintiff needed leave to amend to include the claims at issue. The magistrate judge recommended dismissal because the

plaintiff had failed to obtain that leave. *In re Select Comfort Corp. Sec. Litig.*, 2000 WL 35529101, at *6-8 (D. Minn. Jan. 27, 2000).[9]

And *Select Comfort* is not good law, as it was reversed by the District Court, which held that plaintiffs "have cited to sound authority that lead plaintiffs are not automatically required under the PSLRA to republish notice where a consolidated complaint is amended  to allege new, closely related claims or a different class period." Slip Opinion, at 4.  *See* Kim Decl. Ex. 4.

In *Cyberonics* and *Leapfrog*, the motions were brought by allegedly aggrieved plaintiffs, not defendants, and so were more closely connected to the purpose of the notice provision. *In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 939-40 (S.D. Tex. 2006); *In re Leapfrog Enterprises, Inc. Sec. Litig.*, 2005 WL 5327775, at *1 (N.D. Cal. July 5, 2005). Here, the only private placement purchaser who has stepped forward -- Mr. Omanoff, who bought $35,000 of units in the private placement -- has retained Plaintiffs' counsel.

In *Waldman*, an auction rate securities case, the only securities held by the lead plaintiff were repurchased by the defendant, eliminating lead plaintiff's damages and the damages suffered by the class. *Waldman v. Wachovia Corp.*, 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009). The law firm representing lead plaintiff sought to substitute other lead plaintiffs that had not been vetted by the court, and to extend the class to a vast number of other cases. *Id.* at *1. The court held that republication of notice was required, as the action would be taken over entirely by this new lead plaintiff, and involved completely different classes. It was, in essence, a new lawsuit.

---

[9] Li's claim that Plaintiffs lack statutory standing is wrong, which is based entirely on *Select Comfort*, is wrong. The only statutory standing requirements for Section 10(b) claims is purchase of stock. The case Li cites involved new Section 11 claims, which requires that purchasers trace their shares to an offering. This is not clear from the magistrate judge's opinion, but the district court's opinion reversing the magistrate judge clarifies that statutory standing under Section 11 and republication are different issues. Slip Opinion, at 2-5. In any case, the district judge reversed the magistrate on both issues. *Id.*

Hence, the Court should find that the notice provided to the class was adequate. Should the Court find that the notice was not adequate, it should require republication, but it should not dismiss Li's claims -- the only authority Li has provided that allows dismissal as relief is a magistrate judge's opinion that was reversed by the district court.

## VII.   RULE 4(M) DOES NOT WARRANT DISMISSAL

Dismissal pursuant to Rule 4(m) is a grave measure that courts do not undertake lightly.  In this Circuit, courts only dismiss cases under Rule 4(m) if a party acted with "deviousness or willfulness" in failing to comply with Rule 4(m). *Lemoge v. U.S.* 587 F.3d 1188, 1197 (9th Cir. 2009).   Even negligence or carelessness is not sufficient to warrant dismissal under Rule 4(m).  *Id.*

Here, Plaintiffs have acted with nothing but good faith in attempting to serve Li. Plaintiffs believed Li was a PRC national residing in China.  This understanding was corroborated by the Form-3 that Li filed with the SEC on May 18, 2010, where she used what appears to be Keyuan's headquarters in the PRC as her own address. Further RJN, Ex. 1.  To facilitate service on Li, Plaintiffs moved the Court to lift the PLSRA discovery stay so that Plaintiffs may serve interrogatories on Keyuan to request Li's "Chinese Governmental Identity Numbers." Dkt. # 42, at 4; *see, also,* Kim Decl., ¶¶2-3.  Plaintiffs' motion made it clear that Plaintiffs understood Li to be a PRC national residing in China.  Yet, in opposition, Keyuan *never bothered* to correct this misunderstanding.  Dkt. # 47; Kim Decl.,   It was not until Plaintiffs finally received Keyuan's responses to Plaintiffs' interrogatories, on January 11, 2013, that Plaintiffs discovered Li had a North Carolina residential address.  *See* Kim Decl., ¶3, Ex. 3.  Plaintiffs then *immediately* proceeded to serve Li, with service successfully completed on January 14, 2013.[10]  *See* dkt. #66.

It is, therefore, hardly "inexplicable" that Li was not served within 120-days

---

[10]  Li was successfully served with process less than two months after Plaintiff's Second Amended Complaint was filed.  Moreover, given Li's senior position at the Company, it is inconceivable that she remained unaware of the lawsuit after Plaintiff's initial complaint.

of the filing of the initial complaint. Indeed, Plaintiffs had no reason whatsoever to avoid effecting service on Li, and had every intention of prosecuting this case against Li.  Perhaps the only thing "inexplicable" is why Li used a PRC address on her Form-3, and why Keyuan went along with the charade by not disclosing her true residence until January 11, 2013, despite numerous opportunities to do so.

## VIII. VENUE IS PROPER IN THE CENTRAL DISTRICT

Li's challenge to venue is without merit.  <u>First</u>, named Plaintiff Rodney Omanoff was residing in California when he reviewed Keyuan's Offering Documents, including the March 22, 2010 private placement memorandum, in connection with his purchase of Keyuan securities, which also occurred in California.  *See* Declaration of Rodney Omanoff attached as Ex. 1 to the Kim Declaration ("Omanoff Decl."), ¶¶3-4.  He continues to maintain a residence in California.  *Id.*, at ¶2.  Keyuan's Offering Documents were made available to him in California. *Id.* ¶ 3.  These facts *alone* render venue proper in this district.  *See, e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) (a plaintiff's choice of venue "should rarely be disturbed"); *In re Laidlaw Sec. Litig.*, 1991 WL 170837, at *2 (E.D. Pa. Aug. 27, 1991) ("Plaintiffs' choice of forum is particularly preferred in federal securities actions. The Act permits a case to be brought in 'any district where any act or transaction constituting the violation occurred.' 15 U.S.C. §78aa. The Act's venue provision is designed to serve the policy of providing plaintiffs with the broadest possible forum choices.'").

<u>Second</u>, Keyuan has issued numerous press releases over various national newswires, such as *PR Newswire*, *Business Wire*, *GlobeNewswire*, etc., all of which reached a national audience.[11]  A company's dissemination of press releases on a national newswire constitutes nationwide transmittal of information, and is sufficient to make venue proper nationwide.  *See, e.g., In re AES Corp. Sec. Litig.,*

---

[11] For a partial list of Keyuan's press releases in recent years, see http://finance.boston.com/boston/quote/news?CurrentPage=1&Limit=30&Symbol=365%3A11391319&ChannelType=PRESSRELEASES

240 F. Supp. 2d 557, 561 (E.D. Va. 2003) (explaining that in as securities fraud case, venue is proper nationwide under 15. U.S.C. §78aa if a company issued misleading press releases on a national newswire, because such press release are "intended to be read and relied upon by people even outside of the judicial district where [they are] issued") (internal citations omitted).

Third, because venue is proper for Keyuan and the other Defendants - indeed, *none* of the other Defendants have challenged venue in this district - venue is also proper for Li. Courts recognize the value of trying complex, multi-party securities cases coherently in a <u>single</u> venue. Towards that end, courts have widely adopted the "co-conspirator" theory for determining proper venue for securities suits involving multiple defendants. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) ("Under the co-conspirator venue theory, where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of securities statutes, so long as venue is established for any of the defendants in the forum district, venue is proper as to all defendants. This is true even in the absence of any contact by some of the defendants in the forum district.") Indeed, economy and policy considerations favor the litigation of related claims in the same venue. Moreover, Plaintiffs allege that Li made false statements and was also a control person of Keyuan; therefore, the action against her should remain in the same district as those against Keyuan and the other Defendants.

Even if the Court should decide that the facts set forth above are not sufficient for adjudicating whether venue is proper in this district, the Court should still not dismiss this action. Instead, the Court should permit Plaintiffs to conduct venue discovery for the purpose of ascertaining venue. The Supreme Court has held that "where issues arise as to jurisdiction or *venue, discovery is available* to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (emphasis added).

## IX.    CONCLUSION

For the foregoing reasons Defendant's motion should be denied in its entirety.  If the Court finds the Complaint insufficient or disagrees for any reason with Plaintiff's arguments in this memorandum, Plaintiff respectfully seeks leave to amend. Leave to amend a complaint should be freely given, unless the Court is convinced that it could not be saved by any amendment. *See Eminence Capital*, 316 F.3d at 1053.

Dated:        April 1, 2013            Respectfully submitted,

                                     **THE ROSEN LAW FIRM, P.A.**

                                    /s/ Laurence Rosen
                                    Laurence M. Rosen, Esq. (SBN 219683)
                                    355 South Grand Avenue, Suite 2450
                                    Los Angeles, CA 90071
                                    Telephone: (213) 785-2610
                                    Facsimile: (213) 226-4684
                                    Email: lrosen@rosenlegal.com

                                    Lead Counsel for Lead Plaintiff and Class

1
2

# CERTIFICATE OF SERVICE

3
4

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

5

I am the managing attorney of the Rosen Law Firm, P.A., with offices at 355

6

South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of

7

eighteen.

8

On April 1, 2013, I electronically filed the following PLAINTIFFS'

9

OPPOSITION TO DEFENDANT AICHUN LI'S MOTION TO DISMISS with the

10

Clerk of the Court using the CM/ECF system which sent notification of such filing

11

to counsel of record.

12

Executed on April 1, 2013.

13
14

/s/ Laurence Rosen

15

Laurence M. Rosen

16
17
18
19
20
21
22
23
24
25
26
27
28